# EXHIBIT 1

RECEIVED IN CRIMINAL DOCKETING

NOEM

F I L E D
Clerk of the Superior Court

FEB 2 0 2007

By: Y. BRENNAN, Deputy

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

# COUNTY OF SAN DIEGO, EAST COUNTY DIVISION

IN THE MATTER OF THE APPLICATION OF:          )
                                               )          EHC 550
                                               )
JESSE HERNANDEZ,                               )          SCE 167745
                                               )
                                               )          ORDER DENYING
              PETITIONER.                      )          PETITION FOR WRIT
                                               )          OF HABEAS CORPUS
_____)

THIS COURT HAVING READ THE PETITION FOR WRIT OF HABEAS CORPUS AND THE FILE IN THE ABOVE CAPTIONED MATTER FINDS AS FOLLOWS:

On July 17, 1996, after a jury trial presided over by the Honorable Louis R. Hanoian, Petitioner was found guilty of attempted premeditated murder in violation of Penal Code § 664\187(a)\189, being in possession of a destructive device in violation of Penal Code § 12303.2, attempt to burn in violation of Penal Code § 455, two counts of vandalism less than $1,000 in violation of Penal Code § 594(a)(b)(4), and stalking in violation of Penal Code § 646.9(a). The jury also found that Petitioner had personally used a deadly and dangerous weapon within the meaning of Penal Code § 12022(b) with regards to the attempted murder charge. On September 9, 1996, Petitioner was sentenced to life with the possibility of parole plus five years and four months in state prison.

Petitioner, Jesse Hernandez, CDC No. K-21116, is currently housed at the

1

1  Correctional Training Facility in Soledad, California. On March 26, 2006, a Life Term Parole

2  Consideration Hearing was held. At the conclusion of the hearing, the California Board of

3  Parole Hearings denied parole for two years. The decision was made final on July 24, 2006.

4      On January 2, 2007, Petitioner filed the present petition. Petitioner contends that he

5  was improperly denied parole for the following reasons:

6      (1)  The Board used a factor of non-applicable circumstance of unsuitability. One of

7  the reasons parole was denied was that there were multiple victims in separate incidents.

8  However, the Board only has jurisdiction over indeterminate sentences. The indeterminate

9  sentence arose from the attempted murder charge in which there was only one victim.

10     (2)  The Board claimed that they did not have a clear understanding of the motive for

11 the crime. The Petitioner does not admit guilt and is not required to explain any motive for

12 the crime. The Board never pointed to any factor from the offense, which made the Petitioner

13 unsuitable for parole.

14     (3)  The Board failed to point to any lack of program that makes Petitioner an

15 unreasonable risk to society if released. Petitioner has never received any disciplinary action

16 while in prison during his commitment for this offense.

17     (4)  The Board's unsuitability rationale that the record showed Petitioner had not

18 participated in beneficial self-help programs is an abuse of power by being arbitrary. The

19 records shows Petitioner did participate in programs as available.

20     (5)  The use of an eight year old prison disciplinary act is beyond the scope of the

21 Board's authority. The serious discipline for mutual combat in February 1998 occurred during

22 the Petitioner's determinate term, prior to his indeterminate term. Petitioner received all lost

23 credits back for this disciplinary action.

24     (6)  Petitioner's due process rights were violated when the Board relied on an

25 inaccurate psychological report. Also, the Board acknowledged that there were inaccuracies

26 in the report, but took the report in consideration in their decision to deny parole. Further, the

27 Board failed to correct the record after the report was amended.

28     (7)  The Board's use of Petitioner's prior alcohol and substance abuse is a violation of

due process. These are unchanging factors and there was no evidence that Petitioner is presently addicted or using alcohol or drugs.

(8) Petitioner's due process rights were violated when the Board concluded that Petitioner denies any responsibility for his crime. Petitioner does not have to admit guilt. Further, "soul-searching" is vague and is not an unsuitability/suitability circumstance.

(9) Petitioner was denied an impartial panel when they claimed Petitioner's gains were recent and he had to demonstrate his ability to maintain gains over an extended period of time.

(10) Petitioner's due process rights were violated by the Board's decision to impose a multi-year denial, as it was based on the reasons set forth above.

A petitioner in habeas corpus bears the burden of proving the facts upon which he or she bases his or her claim for relief. (*In re Riddle* (1962) 57 Cal.2d 848, 852.) Every petitioner, even one filing in pro per, must set forth a prima facie statement of facts which would entitle him or her to habeas corpus relief under existing law. (*In re Bower* (1985) 38 Cal.3d 865, 872; *In re Hochberg* (1970) 2 Cal.3d 870, 875 fn. 4.)

The court in *In re Ramirez* (2001) 94 Cal.App.4th 549, 564, states, "Judicial oversight must be extensive enough to protect the limited right of parole applicants 'to be free from an arbitrary parole decision...and to something more than mere pro forma consideration.' (*Sturm, supra,* 11 Cal.3d at p. 268.) The courts may properly determine whether the Board's handling of parole applications is consistent with the parole policies established by the Legislature. (Citation omitted.) While courts must give great weight to the Board's interpretation of the parole statutes and regulations, final responsibility for interpreting the law rests with the courts. (Citation omitted.) Courts must not second-guess the Board's evidentiary findings. (Citation omitted.) However, it is the proper function of judicial review to ensure that the Board has honored in a "practical sense" the applicant's right to 'due consideration.' (Citation omitted.) This function is best served by examining the Board's parole suitability rulings under a deferential abuse of discretion standard. The Board's decision should not be disturbed unless it has acted arbitrarily or capriciously. Particular

3

1  deference must be accorded to the Board's factual determinations, which need only be

2  supported by some evidence."

3       In the present petition, Petitioner has failed to state a prima facie case for relief.

4  Based upon the documents and records provided by the Petitioner, this Court finds that the

5  Board's determination that Petitioner would pose an unreasonable risk of danger to society or

6  a threat to public safety if released from prison is supported by "some evidence" and there is

7  no showing the Board acted arbitrarily or capriciously.

8       Title 15 California Code of Regulations § 2401(c) sets forth the circumstances tending

9  to show unsuitability for release on parole.   The subsection states, "The following

10 circumstances each tend to indicate unsuitability for release.  These circumstances are set

11 forth as general guidelines; the importance attached to any circumstance or combination of

12 circumstances in a particular case is left to the judgment of the panel.  Circumstances tending

13 to indicate unsuitability include:

14       (1)    Commitment Offense. The prisoner committed the offense in an especially
              heinous, atrocious or cruel manner. The factors to be considered include:

15            (A)   Multiple victims were attacked, injured or killed in the same or separate
                   incidents.

16            (B)   The offense was carried out in a dispassionate and calculated manner,
                   such as an execution-style murder.

17            (C)   The victim was abused, defiled or mutilated during or after the offense.

18            (D)   The offense was carried out in a manner which demonstrates an
                   exceptionally callous disregard for human suffering.

19            (E)   The motive for the crime is inexplicable or very trivial in relation to the
                   offense.

20       (2)    Previous Record of Violence.  The prisoner on previous occasions inflicted or
              attempted to inflict serious injury on a victim, particularly if the prisoner

21            demonstrated serious assaultive behavior at an early age.

22       (3)    Unstable Social History.  The prisoner has a history of unstable or tumultuous
              relationships with others.

23       (4)    Sadistic Sexual Offenses.   The prisoner has previously sexually assaulted
              another in a manner calculated to inflict unusual pain or fear upon the victim.

24       (5)    Psychological Factors.  The prisoner has a lengthy history of severe mental
              problems related to the offense.

25       (6)    Institutional Behavior.  The prisoner has engaged in serious misconduct in
              prison or jail."

26

27

28

In this case, there is no indication in the record that the Board made a finding that the Petitioner's offense was in an especially heinous, atrocious or cruel manner pursuant to 15 CCR § 2402(c)(1) and limited itself to findings made under this subsection.  In addition to some of the factors set forth in 15 CCR § 2402(c), the Board took into consideration other permissible factors, as allowed in the Code of Regulations.

Title 15 CCR §§ 2402(b) and (d) sets forth additional factors that are to be considered by the Board in determining parole eligibility.  15 CCR § 2402(b) states, "All relevant, reliable information available to the panel shall be considered in determining suitability for parole.  Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release.  Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability."

Title 15 CCR § 2402(d) states, "The following circumstances each tend to show that the prisoner is suitable for release.  The circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel.  Circumstances tending to indicate suitability include:

(1)    No Juvenile Record.  The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

(2)    Stable Social History.    The prisoner has experienced reasonably stable relationships with others.

(3)    Signs of Remorse.  The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4)    Motivation for Crime.  The prisoner committed his crime as the result of significant stress in his life, especially if the stress has built over a long period of time.

(5)    Battered Woman Syndrome.  At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section

2000(b), and it appears the criminal behavior was the result of that victimization.
(6)   Lack of Criminal History.  The prisoner lacks any significant history of violent crime.
(7)   Age.  The prisoner's present age reduces the probability of recidivism.
(8)   Understanding and Plans for Future.  The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.
(9)   Institutional Behavior.  Institutional activities indicate an enhanced ability to function within the law upon release."

In reviewing the transcript of the Board of Parole Hearing, this Court finds that the Board did properly consider the factors which were relied upon to deny parole.  In the present case, the offenses for which the Petitioner was committed to state prison did involve multiple victims in separate incidents.  Petitioner has not submitted any authority indicating that the Board of Prison Terms is limited to the offense carrying the life sentence when considering the circumstances underlying a Petitioner's incarceration.  Title 15 CCR § 2402(b) specifically allows the Board to consider "the base and other commitment offenses, including behavior before, during and after the crime."  Petitioner's commitment to state prison was based on the attempted murder charge against the 12-year-old victim T. Tolle; the explosive device charge was against victim Dan Tolle, as the device was found on his property; attempt to burn and vandalism charges against victims James and Julie Sutton; and the stalking charge against victim Christine Wolfe.  These offenses are all part of Petitioner's present commitment to state prison.  Therefore, the Board has the right to take into consideration all of the persons that were victimized by the activities of the Petitioner, which underlie the current basis for his incarceration.  Thus, the multiple victims in separate instances factor was properly considered by the Board.

As to the motive for the offense, the court in In re Scott (2004) 119 Cal.App.4th 871, 893, stated, "[a]n 'inexplicable' motive, as we understand it, is one that is unexplained or unintelligible, as where the commitment offense does not appear to be related to the conduct of the victim and has no other discernible purpose.  A person whose motive for a criminal act cannot be explained or is unintelligible is therefore unusually unpredictable and dangerous."  In the present case, there is no showing that the crime resulted from some provocation on the

part of the victim. The victim was 12 years old and was watering roses at her grandparents' home when the Petitioner shot an arrow, which narrowly missed her. In the probation report, it was surmised that the victim looked similar to the Petitioner's ex-girlfriend, who he was convicted of stalking. No matter which person was the intended victim of Petitioner's actions, there is no showing that the shooting of the arrow was related to the conduct of the victim or had any discernible purpose. Thus, the Board had the ability to find that the motive for the crime is inexplicable. Moreover, the Board had the right to consider motivation for the crime under 15 CCR § 2402(d)(4) and did not have to make a finding that the crime was committed in an especially heinous, atrocious, or cruel manner in order to consider the motive for the crime.

The Board also had the ability to consider the fact the Petitioner had failed to participate in beneficial self-help programs while in custody. The Board's decision does show that in making its determination the Board did weigh the Petitioner's participation in programming in 1997 and 1998. However, the Board also determined that Petitioner's decision to wait until 2005 until he engaged in additional programming weighed against his suitability for parole. The only explanation provided by the Petitioner for failing to participate in any additional self-help programs was that he was just participating in his job assignments and was trying to focus on providing the best possible service he could. Petitioner did not show, as he contends, that he programmed as assigned and as available. In addition, Petitioner reliance on 15 CCR § 2410 is inapplicable, as it relates to the awarding of postconviction credit, not the factors the Board can consider in determining parole suitability. Thus, the Board was justified in considering the fact Petitioner failed to participate in any meaningful self-help programs over the course of his incarceration to deny parole.

Further, the Board also had the ability to consider the disciplinary action for mutual combat against the Petitioner while he has been incarcerated. The fact that Petitioner may have had his good time credits restored does not preclude the Board from considering misconduct while in prison. The Board did state that Petitioner had an exceptional disciplinary history, however, the Board did have a right to consider the disciplinary

1  proceedings taken against Petitioner while incarcerated, as is permitted by 15 CCR §

2  2401(c)(6).  Therefore, it was a factor properly considered when the Board was weighing the

3  suitability factors.

4       As pointed out in the present petition, there is no disputing that there are some factors

5  which are favorable to Petitioner's suitability for parole.  However, the Board determined that

6  the positive factors do not outweigh the unsuitability factors outlined in its decision and as set

7  forth above.   Petitioner has failed to show that the Board neglected to engage in an

8  individualized consideration of his suitability for parole.  The importance to attach to any

9  circumstance or combination of circumstances in a particular case is left to the judgment of

10 the panel.  The court in *In re Powell* (1988) 45 Cal.3d 894, 904, stated, "a parole rescission

11 was an abuse of discretion only when the authority acted 'without information, fraudulently, or

12 on mere personal caprice."  There is no showing that the Board abused its discretion in the

13 present case and acted in an arbitrary manner in finding Petitioner presently unsuitable for

14 parole and determining that it was not reasonable to expect that parole would be granted at a

15 hearing during the following two years.  Without a showing of abuse of discretion or violation

16 of due process, this Court cannot set aside the Board's decision.

17       Based on the foregoing, the petition for a writ of habeas corpus is hereby DENIED.

18       The clerk's office is directed to serve a copy of this Order on: (1) the Petitioner; (2) the

19 Office of the San Diego County District Attorney - Appellate Division; and (3) the Office of the

20 California Attorney General.

21 **IT IS SO ORDERED.**

22

23 DATED: FEB 2 0 2007                    _____

24                                        HERBERT J. EXARHOS
                                          JUDGE OF THE SUPERIOR COURT
25

26

27

28

                                    8

ATTORNEY GENERAL
SAN DIEGO

2007 FEB 26 AM 9:36

Y. BRENNAN

By _____ Deputy
... the County of San Diego.
...he Superior Court of the State ...
FEB 22 2007
... of the original on file in this office.
The foregoing instrument is a full, true and correct

SAN DIEGO COUNTY • CA • SUPERIOR COURT