# EXHIBIT 2
# Part 2 of 2

31

1   any aspect --

2       DEPUTY COMMISSIONER SMITH:  Your brother-

3   in-law is Jim Jackie (sic).

4       INMATE HERNANDEZ:  Jim Jarcki, yes sir.

5       DEPUTY COMMISSIONER SMITH:  Jim Jarcki.

6       INMATE HERNANDEZ:  In any possibility

7   that is necessary.  I mean, I have a great deal

8   to offer from the floor covering standpoint.  He

9   is a general contractor and as such provides all

10  aspects of the building of a home from the

11  ground up.  So it could be in just about any,

12  any of the fields that he would be responsible

13  for.

14      DEPUTY COMMISSIONER SMITH:  Okay, thank

15  you.  You have numerous letters and I am going

16  to do a kind of a summary overview of the

17  letters.

18      INMATE HERNANDEZ:  Okay.

19      DEPUTY COMMISSIONER SMITH:  In the Board

20  packet there are some letters that had been

21  placed in the packet several times so obviously

22  I'm going to try and avoid the duplication.

23  There are also numerous letters that are dated

24  ten years old and over.  A number of them back

25  in at least 1996.  And I am not going to review

26  those letters.  One, obviously the letters are

27  at least ten years old and secondly they are

32

1    from a lot of the same individuals that we have

2    more current letters from.  However, if there is

3    some particular letter that you want to make

4    sure, even if it's somewhat dated, that you want

5    to make sure we get on the record I'd be happy

6    to do that, okay.  A letter from Rebecca

7    Palensky, P-A-L-E-N-S-K-Y.  She is your step-

8    niece.  Is that right?

9        INMATE HERNANDEZ:  No, she would be my

10   niece.

11       DEPUTY COMMISSIONER SMITH:  Okay.

12   Because she says she is writing on behalf of her

13   step-uncle so I just made the assumption that

14   she was a step-niece.  But you consider --

15       INMATE HERNANDEZ:  Yeah.  Her father and

16   I grew up, you know, together as children and I

17   never really consider him a stepbrother.

18       DEPUTY COMMISSIONER SMITH:  Okay.  You

19   don't consider her your step-niece.

20       INMATE HERNANDEZ:  I don't, I don't sir.

21       DEPUTY COMMISSIONER SMITH:  Okay, okay.

22   She writes a very positive letter and she

23   supports your being granted parole at this

24   hearing.  A letter from Susan and Jim Jarcki.

25   I'm pronouncing that right this time?

26       INMATE HERNANDEZ:  Yes sir you are.

27       DEPUTY COMMISSIONER SMITH:  J-A-R-C-K-I.

33

1          INMATE HERNANDEZ:   Yes sir.

2          DEPUTY COMMISSIONER SMITH:   And she is

3    your sister.   And in the letter they said they'd

4    provide you with a full time job as a laborer.

5    That you would be paid $17 an hour for a 40 hour

6    week and that they would also provide you with a

7    place to live in their home where they currently

8    have three empty bedrooms.   It goes on to

9    discuss their involvement in the church in the

10   area and strongly support you being granted

11   parole.   There's a letter that's copied that's

12   from an individual whose signature was removed.

13   It's dated September 2005.   It says, Jesse grew

14   up next door to me and my wife until his late

15   teens.   When he moved his mother and other

16   children were my neighbors for 30 years.   The

17   person's home will be open to you until you get

18   your life back in order.   And it looks like

19   maybe a Peterson (phonetic).

20          INMATE HERNANDEZ:   Yes sir.   That would

21   be Pete Peterson.   He was our neighbor for many

22   years growing up.

23          DEPUTY COMMISSIONER SMITH:   Okay.   I was

24   guessing at the Peterson part because I only had

25   the top half.

26          INMATE HERNANDEZ:   That was a good guess

27   sir.

34

1       **DEPUTY COMMISSIONER SMITH:**  A letter from

2    Linda Cabral, C-A-B-R-A-L, who is an ex-spouse.

3       **INMATE HERNANDEZ:**  Yes sir

4       **DEPUTY COMMISSIONER SMITH:**  And she

5    writes.  And she indicates that she would not

6    hesitate in opening her home to you for a place

7    to live and help you in any way that she could

8    in assisting you with employment.  A letter from

9    a Nicole Parker, P-A-R-K-E-R, who lives in

10   Montana.  Indicates that she has known you for

11   some 25 years and has always known you to be

12   soft-spoken and a kindhearted individual and

13   supports you being granted parole at this time.

14   There's another letter from Susan Jarcki that is

15   primarily a transmittal letter and it includes a

16   number of other letters with it.  One is

17   September of 2002 from a Myrna Lawson, L-A-W-S-

18   O-N, who is also a sister.

19       **INMATE HERNANDEZ:**  Yes sir.

20       **DEPUTY COMMISSIONER SMITH:**  And she

21   indicates that she is writing on behalf of her

22   brother.  She talks about, you know, the trial

23   and the shock that they felt regarding the

24   outcome and ask that you be strongly considered

25   for parole at this time.  And then we get into

26   letters from 1996, again from your sister, from

27   a William and Rae Weidner (phonetic), from a

35

1  Janice Hernandez.  From, it appears to be a

2  Rhonda Hendry perhaps.

3          INMATE HERNANDEZ:  That would be Rhonda

4  Hernandez.  That's my, an ex-wife.

5          DEPUTY COMMISSIONER SMITH:  Okay.

6          INMATE HERNANDEZ:  And for the record her

7  last name was Draggo.  We spoke about that

8  earlier.

9          DEPUTY COMMISSIONER SMITH:  Okay.  You

10  want to spell that?

11          INMATE HERNANDEZ:  Actually I think it

12  was D-R-A-G-G-O.

13          DEPUTY COMMISSIONER SMITH:  Okay, thank

14  you.  A letter from Candice Hernandez.  And

15  again most of these letters or all these letters

16  are all back from 1996.  And unless there's one

17  that is specific that you would like to have

18  identified for the record, because of the fact

19  that it's ten years old.  But obviously we're

20  more concerned with a current letter of support

21  than the history.  I'm not going to go into

22  those.  Anything that you would like to add

23  regarding your parole plans before I go to your

24  adjustment?

25          INMATE HERNANDEZ:  Not at this time.

26          DEPUTY COMMISSIONER SMITH:  Okay.  If you

27  or counsel should think of something and want to

36

1  make mention as the hearing goes on we'll

2  certainly give you that opportunity.

3        INMATE HERNANDEZ:  Thank you very much.

4        DEPUTY COMMISSIONER SMITH:  According to

5  the C File you were received by the Department

6  of Corrections on September 19, 1996.  Received

7  here at CTF on October 6 of 2004.  You have a

8  classification score of 19, which is the lowest

9  classification score a life inmate can attain.

10  This is your initial hearing.  It's already been

11  commented on.  You have had an exceptional

12  disciplinary history.  Since you have been in

13  custody you have had no CDC 128(a)s and only one

14  CDC 115.  That was in February of 1998 for

15  mutual combat.  And this panel recognizes how

16  difficult it is to establish a positive or an

17  exceptional disciplinary history.  It's often

18  very easy to get a write-up through not

19  necessarily any individual's own fault or

20  actions but on occasion just simply being in the

21  wrong place at the wrong time.  But certainly

22  your having only one 115 in nearly ten years is

23  something that you're to be congratulated for.

24  And we don't say that in any kind of a mild way,

25  we're sincere.

26        INMATE HERNANDEZ:  Thank you sir.

27        DEPUTY COMMISSIONER SMITH:  You received

37

1    eight laudatory chronos.  In May of 1999 for
2    your being a valuable asset to the vocational
3    assignment that you were in and I'll address
4    that assignment in just a moment.  Another one
5    in October of '99 regarding your excellent work
6    habits in your work assignment.  Another one in
7    September of 2004 also having to do with your
8    positive work in your work assignment.  August
9    2005 for your work assignment as a clerk.
10   September of 2005 your completion of a 12 week
11   program in a Christian Basic class.
12          INMATE HERNANDEZ:  Yes.
13          DEPUTY COMMISSIONER SMITH:  What's the
14   Christian Basic class.  I have seen a lot of
15   various programs at different institutions but
16   I'm not familiar with that one.
17          INMATE HERNANDEZ:  This was an
18   established 12 week course that unfortunately
19   took 23 weeks to complete due to circumstances
20   beyond our control concerning institutional
21   security and things of that nature.  However, it
22   focused on memorizing certain, certain ideas in
23   the Bible as in regards to understanding our
24   anger, our reaction and forgiveness most of all.
25   It was a -- It was a very interesting course
26   that was provided and I have since signed up and
27   am waiting to attend the next version of that

38

1   same course.

2        DEPUTY COMMISSIONER SMITH:  So you're on

3   the waiting list then for that?

4        INMATE HERNANDEZ:  I am.  Actually I've

5   received two ducats for Thursday evening which

6   incorporates anger management and --

7   Unfortunately the first course has not taken

8   place.

9        ATTORNEY PHILLIPS:  Date?

10       INMATE HERNANDEZ:  Yeah, the first date

11  hasn't taken place just because of the lock down

12  of the institution.

13       DEPUTY COMMISSIONER SMITH:  Okay.  And we

14  certainly understand the difficulty in

15  attending, you know, some programs for any

16  number of reasons.

17       INMATE HERNANDEZ:  Yes sir.

18       DEPUTY COMMISSIONER SMITH:  A laudatory

19  chrono also December 2005 for your work in the

20  culinary in providing Thanksgiving meals.  One

21  in July of 2000 for your work in the small

22  engine repair program, basically as a lead man,

23  mentor, tutor, right?

24       INMATE HERNANDEZ:  Yes sir, that's

25  correct.

26       DEPUTY COMMISSIONER SMITH:  And then most

27  recently January of this year for your work

39

1  effort in your current work assignment, which is

2  as a general education clerk.

3       INMATE HERNANDEZ:  Yes sir.

4       DEPUTY COMMISSIONER SMITH:  And you've

5  also been assigned to business education and as

6  an R&R clerk.

7       INMATE HERNANDEZ:  For two years, yes

8  sir.

9       DEPUTY COMMISSIONER SMITH:  You completed

10  the small engine repair vocation.  That was in

11  January of '99.  You completed, you received a

12  certificate of completion in clerk training

13  March of 2002.  And the Board report indicates

14  that you have been in treatment under CCCMS

15  since '96, is that right?  Because the

16  psychological evaluation says it was more recent

17  as the result of your mother's passing.  Has it

18  been off and on?

19       INMATE HERNANDEZ:  That's correct, that's

20  correct.  I really have not been on any

21  psychological meds in quite some time.  It was

22  an antidepressant and again, that was quite a

23  while ago.

24       DEPUTY COMMISSIONER SMITH:  Let me turn

25  the tapes.

26            (The tape was turned over.)

27       DEPUTY COMMISSIONER SMITH:  We're on side

40

1  two of the tape.  One tape was running faster

2  than the other.  And the one I kept glancing at

3  to make sure we had plenty of time wasn't the

4  one that ran out, it was the other one.

5      INMATE HERNANDEZ:  Yes sir.

6      ATTORNEY PHILLIPS:  We were just talking

7  about that last question that you asked him.  He

8  indicates that he thinks that he hasn't been

9  taking any antidepressants since about October

10  of 2004.

11      DEPUTY COMMISSIONER SMITH:  Okay.  So

12  you're thinking that's probably the most recent?

13      INMATE HERNANDEZ:  That was the most

14  recent.  It was a very mild, the smallest amount

15  possible in the antidepressant category.

16      DEPUTY COMMISSIONER SMITH:  Now since

17  you've been incarcerated you completed the 12

18  week Christian Basic class and you're on the

19  waiting list now.  Have you been involved in any

20  other self-help programs other than that that I

21  overlooked?

22      INMATE HERNANDEZ:  In Salinas Valley in

23  '97 and '98 I participated in a Success After

24  Parole program, which I received a chrono for.

25  I also took a video course of anger management,

26  which I also received a chrono for.

27      DEPUTY COMMISSIONER SMITH:  And when was

41

1    that?

2          INMATE HERNANDEZ:    That was also I

3    believe in '97 and '98.

4          DEPUTY COMMISSIONER SMITH:    Is there

5    anything more current than that?

6          INMATE HERNANDEZ:    No sir.

7          DEPUTY COMMISSIONER SMITH:    Is there a

8    reason why nothing more current?    Keeping in

9    mind, of course, that you're on, you've gotten

10   on the waiting list.

11         INMATE HERNANDEZ:    Which is what, yeah,

12   I'm on a waiting list.    I mean, I basically have

13   participated when it's been available.    And as

14   you've indicated earlier, due to circumstances

15   beyond our control sometimes those courses are

16   deleted or delayed for one thing or another.

17         DEPUTY COMMISSIONER SMITH:    Any other

18   things that we should be aware of regarding your

19   adjustment that I haven't addressed?

20         INMATE HERNANDEZ:    Not that I can think

21   of at this time.

22         DEPUTY COMMISSIONER SMITH:    As I

23   indicated earlier with parole plans, if

24   something comes to mind during the course of the

25   hearing please let me know so that we can get

26   that on the record.

27         INMATE HERNANDEZ:    Okay sir.

42

1      **DEPUTY COMMISSIONER SMITH:**   Okay.   I'm
2   going to review the psychological evaluation.
3   And as I indicated I'll certainly give your
4   counsel an opportunity to make any comments
5   regarding the evaluation that counsel would like
6   to.   I'm going to provide just kind of an
7   overview.   The evaluation is dated January of
8   2006, it was prepared by Dr. Laura Petracek, P-
9   E-T-R-A-C-E-K.   And moving to page three, since
10   page one and two basically goes into the history
11   that either establishes the purpose of the
12   evaluation or goes into Mr. Hernandez's personal
13   history, which has already been addressed and
14   I'm not going to revisit any of that.   But
15   again, certainly if there is anything in there
16   that you'd like to bring back up for the record
17   you'll have that opportunity.   Under substance
18   abuse history the doctor writes that in late
19   1991 until he was incarcerated he had a history
20   of methamphetamine abuse.   That he had been
21   involved in CCCMS since August of 2005.   That
22   appears to be in contradiction to the Board
23   report.   And from our earlier conversation it
24   appears that the 2005 is a more accurate date.
25   Under current mental status and treatment needs
26   the doctor writes Mr. Hernandez's major style of
27   coping with events and his own shortcomings

43

1   appears to be to deny any responsibility and to

2   project blame onto others. Under diagnosis

3   under Axis I the doctor writes that there is

4   methamphetamine abuse by history that's in

5   institutional remission. Under Axis IV,

6   psychosocial stressors as a result of

7   incarceration. That tends to be a standard

8   diagnosis. And then the GAF score, the Global

9   Assessment of Functioning, based on a scale of 0

10  to 100 is 75, which is relatively high. Under

11  assessment of dangerousness on page four the

12  doctor writes that within a controlled setting

13  Mr. Hernandez's risk is minimal compared to the

14  average inmate. If released to the community

15  his violence risk is slightly higher compared to

16  the average citizen. And significant risk

17  factors and precursors to violence would be his

18  past alcohol and substance abuse. And a relapse

19  would increase his risk of violence and undo the

20  gains he has made. Counsel?

21      ATTORNEY PHILLIPS: We do have a number

22  of things that we'd like to address regarding

23  this mental health evaluation. And one of the

24  things that I'll talk about is contained in a

25  letter that I wrote to Dr. Bill Zika. But

26  before I hand that to you I would just note that

27  there -- Our main problem is that there are a

44

1    number of inaccuracies in the small detail as

2    well as the background that the doctor gathered

3    here, or apparently gathered here.  Because the

4    inaccuracies exist we wonder just exactly how

5    much weight can be given to the mental health

6    evaluation.  And of course I think in the

7    position that the Board is in right now you

8    probably need to put quite a bit of weight on

9    this sort of thing.  This is a document that

10   should be as accurate and as objective as

11   possible.  And let's just sort of start through

12   here.  There are -- There are a number of things

13   that are purported to be gathered from

14   Mr. Hernandez that he says were not gathered

15   from him and in fact are not correct.  In III,

16   Education and Vocational it says that he

17   completed vocational training in a couple of

18   different areas there.  He has not received

19   vocational training nor has he ever claimed to

20   have had vocational training in the areas of

21   electrician or drywall installer.  We're not

22   really sure where that came from.

23        **DEPUTY COMMISSIONER SMITH:**  Counsel, let

24   me note that I've already mentioned that he has

25   completed one vocation and that's in small

26   engine repair.

27        **ATTORNEY PHILLIPS:**  Yes.

45

1          **DEPUTY COMMISSIONER SMITH:** So we're --
2     That's why I didn't go into a lot of the
3     history. Because based on the Board report and
4     the conversation we have we feel that over and
5     above whatever may be in the psychological
6     evaluation we have a pretty clear and complete
7     picture of Mr. Hernandez's background and
8     adjustment. Would you concur, Commissioner?

9          **PRESIDING COMMISSIONER DAVIS:** Yes. But
10    I think your point is that you're pointing out
11    areas of mistakes leading to what you believe to
12    be a larger issue of the overall accuracy of the
13    document.

14         **ATTORNEY PHILLIPS:** That's correct.

15         **PRESIDING COMMISSIONER DAVIS:** Okay.

16         **ATTORNEY PHILLIPS:** I will add that he
17    did have a contractor's license in that floor
18    covering area but he did claim to have
19    electrician or drywall installer experience.
20    Under IV, Family History it says, Inmate
21    Hernandez claims that he is the oldest of seven
22    children born to his parents in Mexico. That's
23    incorrect and he'll see that it doesn't go along
24    with what has already been said in II, Inmate
25    Hernandez was born in San Antonio, Texas. He
26    did not say that he was one of seven born in
27    Mexico nor that they ever lived in Mexico.

46

1    Going on in that same subdivision under Family
2    History.  The primary language spoken at home
3    was Spanish but since that he's learned English.
4    That also is not correct nor was it provided by
5    Mr. Hernandez.  He was not a native speaker of
6    Spanish at home.  Under VI it says that he
7    states that he had become a workaholic, and it
8    ends that sentence with, and there was one
9    incidence of domestic violence with Rhonda.  He
10   says that did not come from him.  He never
11   claimed or provided information of domestic
12   violence with Rhonda.  Under VII it says none,
13   but as you've already noted in fact he was in
14   the 82nd Airborne and was injured in one of his
15   jumps.  Under X you've already noted the
16   difference in that date there, the August 2005
17   date.  Perhaps the psychologist here is using
18   some other criteria for denoting whether someone
19   is on CCCMS but he says to the best of his
20   recollection the last medication he received
21   there was in about October of 2004.  And then on
22   the front page of -- Let's me see if that's --
23   On the front page it describes him as a 48-year-
24   old Hispanic.  Of course his name is Hispanic.
25   He does not -- He does not consider himself of
26   Hispanic culture and he's never, he's never been
27   raised in a Hispanic culture.  But if one is

47

1    looking only at the name I suppose that would,

2    that would be a conclusion that one would draw.

3    And then the last -- The letter that I'm going

4    to present is the result of some conversations

5    that I had with Dr. Bill Zika the supervising

6    psychologist, and also my attempts to contact

7    psychologist Petracek.

8        **DEPUTY COMMISSIONER SMITH:** Counsel, let

9    me comment if I can.

10       **ATTORNEY PHILLIPS:** Yes.

11       **DEPUTY COMMISSIONER SMITH:** We'll review

12   this letter when we go into deliberation.

13       **ATTORNEY PHILLIPS:** Okay.

14       **DEPUTY COMMISSIONER SMITH:** All right?

15       **ATTORNEY PHILLIPS:** All right. But based

16   upon the inaccuracies here I'm wondering about

17   the total conclusions that have been brought.

18   And one thing that the letter will show you is

19   that there were actually two Hernandez that were

20   evaluated on the same day by the same person

21   within about an hour-and-a-half of each other.

22   And so I am objecting to her comment number two

23   under Comments and Recommendations based upon

24   the fact that it appears she may have --

25       **DEPUTY COMMISSIONER SMITH:** Confused?

26       **ATTORNEY PHILLIPS:** Confused or crossed

27   over some of her information. And so that's,

48

1   that's as much as I wanted to comment there.

2          **DEPUTY COMMISSIONER SMITH:** As I

3   indicated we'll read your letter in detail

4   during deliberation.

5          **ATTORNEY PHILLIPS:** Okay, thank you.

6          **DEPUTY COMMISSIONER SMITH:** We'll

7   certainly take it into consideration.

8          **ATTORNEY PHILLIPS:** All right, thanks.

9          **DEPUTY COMMISSIONER SMITH:** We also send

10  out what are known as 3042 notices.  Those are

11  letters that go out to the various criminal

12  justice agencies that were involved in your

13  commitment.  We have a representative here from

14  the San Diego District Attorney's Office via the

15  video and has already been identified and she'll

16  be participating in the hearing in a short time.

17  We also have a letter that's dated March 9 of

18  2006 by Supervising Deputy District Attorney

19  Richard Sachs, S-H-C-S (sic).  And for procedure

20  I'm going to read that letter into the record.

21  It says:

22          "We are in receipt of a notice of

23          hearing for the above inmate's

24          parole suitability hearing

25          scheduled for February 2, 2006.  A

26          deputy district attorney from our

27          office will appear at the hearing

49

1    and orally represent our views in

2    opposition to a finding of parole

3    suitability.  Jesse Hernandez

4    stalked his ex-girlfriend,

5    Christine Wolf, after their

6    breakup.  The illegal acts

7    committed by Mr. Hernandez include

8    death threats, setting fires,

9    setting explosive devices at

10   various residences and shooting

11   crossbow arrows at his neighbors

12   and family members of Christine's

13   new boyfriend.  Hernandez's

14   behavior is as unsettling as it is

15   dangerous and in light of the

16   above we assert that Jesse

17   Hernandez represents an

18   unquestionable risk of harm to

19   society.  Accordingly, the People

20   of the State of California

21   respectively yet strongly oppose

22   parole.  Thank you for your

23   consideration of this letter."

24   And with that I'll return to Commissioner Davis.

25        PRESIDING COMMISSIONER DAVIS:

26   Mr. Hernandez, I noticed you came into the

27   system in late 1996, correct?

50

1      INMATE HERNANDEZ:  That's correct.

2      PRESIDING COMMISSIONER DAVIS:  Okay.  And

3  then you completed your Success After Parole and

4  Anger Management in '97, '98, both roughly in

5  the same time period.

6      INMATE HERNANDEZ:  That's correct.

7      PRESIDING COMMISSIONER DAVIS:  Then what

8  did you do between '98 and 2005 when you

9  completed your Christian Basic 12 course?

10      INMATE HERNANDEZ:  I participated just in

11  my job assignments at the time and tried to

12  focus in providing the best possible service

13  that I could.  And that was my focus in that

14  time period.

15      PRESIDING COMMISSIONER DAVIS:  Okay.  Is

16  the 12 week course, the Christian Basic course,

17  is that similar to the 12 step program for AA?

18      INMATE HERNANDEZ:  I would imagine not

19  because I'm not familiar with the AA 12 step

20  program.

21      PRESIDING COMMISSIONER DAVIS:  Can you

22  tell me with a little bit more specificity what

23  are some of the things.  You said part of it was

24  memorizing some parts of the program.  What

25  kinds of things were you required to memorize?

26  For example, it's 12 weeks.  Are there 12 steps

27  to this?

51

1      **INMATE HERNANDEZ:**  There wasn't.  There

2  was basically just study, open book study in

3  regards to different text.  And it was an

4  overall group setting to discuss, as I've stated

5  before, forgiveness and understanding of

6  reaction and growing as a productive individual.

7      **PRESIDING COMMISSIONER DAVIS:**  What did

8  you take away from it personally?

9      **INMATE HERNANDEZ:**  Personally was to

10  allow the past to be such as the past and live

11  each day with an understanding that we can all

12  contribute in one way or another and try to do

13  that in as best possible way as possible.  Which

14  is how I would like to believe my work ethics

15  show in the last ten years.

16      **PRESIDING COMMISSIONER DAVIS:**  Okay.

17  Commissioner Smith, do you have anything else?

18  Any other questions?

19      **DEPUTY COMMISSIONER SMITH:**  No, I don't

20  have any questions, thank you.

21      **PRESIDING COMMISSIONER DAVIS:**  District

22  Attorney Gust, do you have any questions that

23  you would like to ask through the panel?

24      **DEPUTY DISTRICT ATTORNEY GUST:**  Yes.

25  Would you please ask the prisoner when he

26  realized that he had shot a crossbow at the head

27  of a child?

52

1        PRESIDING COMMISSIONER DAVIS:  Well you

2   heard the question.  Are you willing to talk

3   about that, since you've already stated you're

4   not going to talk about anything to do with the

5   crime?

6        ATTORNEY PHILLIPS:  No, that would be a

7   little counterproductive to answer the question

8   after we've already elected not to discuss the

9   crime.

10        PRESIDING COMMISSIONER DAVIS:  All right.

11        DEPUTY DISTRICT ATTORNEY GUST:  Well, all

12   of my questions are fact-specific that evidently

13   the defendant is not going to be addressing so

14   I'll decline any further questioning through the

15   Board, thank you.

16        DEPUTY COMMISSIONER SMITH:  Thank you.

17        PRESIDING COMMISSIONER DAVIS:

18   Mr. Phillips, do you have any questions?

19        ATTORNEY PHILLIPS:  Questions

20   specifically of Mr. Hernandez?

21        PRESIDING COMMISSIONER DAVIS:  Of your,

22   yes.

23        DEPUTY COMMISSIONER SMITH:  Correct.

24        ATTORNEY PHILLIPS:  Well, I would like to

25   ask Mr. Hernandez to state for the Board, have

26   you tried to avail yourself, Mr. Hernandez, of

27   the programs that you could attend while you've

53

1  been incarcerated?

2      INMATE HERNANDEZ:  I believe I have as

3  much as possible.  We're all not absolutely

4  perfect in our abilities to access what might be

5  available.  However, the times that I did seek

6  that avenue I thought I was well-suited in my

7  attempts.

8      ATTORNEY PHILLIPS:  I think one of the

9  concerns, well the huge concern is going to be

10  exactly what kind of a danger you are to the

11  people that were the described victims in this

12  case and also to society in general.  Do you

13  expect to be able to have any relationship with

14  any of the people that were named in the case

15  for which you were convicted?

16      INMATE HERNANDEZ:  I have no intention of

17  contacting or seeking out any of the individuals

18  that were involved in the convictions that I

19  received.  I wholeheartedly believe that the

20  environment that my sister and my brother-in-law

21  can provide with a nurturing church environment

22  and the programs that they have will be a very

23  positive reinstatement into my life out there.

24  I just -- I would like to put this behind me.  I

25  have no animosity and I would just like to

26  reenter society and become productive.  And as

27  I've stated, you know, I'm a workaholic.  I

54

1   enjoy the idea of being helpful.  And not

2   necessarily the money but just to stay busy and

3   help, like I say, as I have in the past.

4        ATTORNEY PHILLIPS:  What kind of plans do

5   you have to incorporate counseling into your

6   life once you are released?

7        INMATE HERNANDEZ:  It's my understanding

8   through my sister that the church, Carlton Hills

9   Baptist Church, has programs that will re-

10  introduce me into a very productive life and

11  mentoring if called upon.  They have a very

12  structured program in regards to serving on

13  different organizations for organizing softball,

14  study groups and Sunday schools.  I think that

15  would be a very active -- I intend on being a

16  very active participant of those, those types of

17  programs and just to reconnect with my family.

18       ATTORNEY PHILLIPS:  How about alcohol and

19  drug counseling?

20       INMATE HERNANDEZ:  Drug counseling and

21  alcohol are also offered in this church group

22  and I intend on participating in any programs

23  that will help continue my sobriety if allowed

24  to be paroled.

25       ATTORNEY PHILLIPS:  That's all the

26  questions I had.

27       DEPUTY COMMISSIONER SMITH:  Thank you.

55

1        **PRESIDING COMMISSIONER DAVIS:**   All right,
2    moving to closing statements, District Attorney
3    Gust.
4        **DEPUTY DISTRICT ATTORNEY GUST:**   Thank
5    you.  As you have recited in the record our
6    office is opposed to the parole of this
7    defendant or this prisoner based on both the
8    nature of the offense, the degree of violence
9    and the overriding concern for public safety
10   that we believe this inmate poses if released
11   into the public.  With respect to the nature of
12   the offense itself, the acts in this case
13   involve acts of violence on particularly
14   vulnerable victims, including children and the
15   elderly.  Even though the targeted victim was an
16   adult woman the actual victim was a young girl.
17   The inmate used a crossbow as a deadly weapon
18   and flammable materials as accelerants in his
19   arsons and putting the gas jug on the Sutton
20   residence.  With respect to the danger to the
21   community that we feel this inmate places upon
22   the public are the numerous criminal acts of
23   stalking, arson, vandalism and the life crime of
24   attempted murder.  For a period of months this
25   defendant -- sorry I keep calling him a
26   defendant -- the inmate, he stalked Christine
27   Wolf and anyone and everyone who came in his

56

1    path between him and her ultimately became a

2    victim.   Ms. Wolf's elderly grandmother had her

3    house, her doorstep set on fire.   Her neighbor's

4    -- The inmate's neighbors the Suttons had

5    crossbow bolts put through the bedroom of their

6    three-year-old.   And not only that within their

7    home was a completely disabled five-year-old

8    child with gas from the jug going down the

9    gutters outside that child's bedroom after the

10   inmate had placed the flammable liquid on the

11   roof.   The life offense involves a 12-year-old

12   girl who happened to be at her grandfather's

13   tending roses when a crossbow bolt narrowly,

14   very narrowly missed her head.   She probably

15   doesn't even realize how close she came to dying

16   that day.   This defendant engaged in a lengthy

17   course of criminal conduct.   He fixated and

18   obsessed on Ms. Wolf and targeted anyone who was

19   in his path between her and him.   And he has no

20   apparent insight into his criminality.   And

21   unfortunately our building is being evacuated

22   due to a fire drill so I'll conclude my comments

23   there.   I'm going to have to bow out of the

24   proceedings at this point, I'm sorry.   I have an

25   investigator standing here making me leave.

26           **PRESIDING COMMISSIONER DAVIS:**   All right,

27   thank you.

57

1          **DEPUTY DISTRICT ATTORNEY GUST:**  All

2    right, thank you.

3          **DEPUTY COMMISSIONER SMITH:**  Good luck

4    with the drill.

5          **DEPUTY DISTRICT ATTORNEY GUST:**  Thank

6    you.

7          **PRESIDING COMMISSIONER DAVIS:**  Okay,

8    Mr. Phillips.

9          **ATTORNEY PHILLIPS:**  Well, certainly when

10   you talk about the commitment offense, offenses,

11   we can't take exception to how serious the kind

12   of conduct that's described in those offenses

13   is, and we don't wish to.  The Board has to

14   accept those convictions for what they are.

15   They are convictions and Mr. Hernandez stands

16   convicted of those particular crimes.  So I

17   can't tell you that anything that Ms. Gust has

18   said should be discounted or taken lightly.  It

19   certainly should not.  I think what the Board

20   can look to, though, is the fact that those

21   events took place during a relatively short

22   period of time of very high volatility in the

23   relationship between Mr. Hernandez and Ms. Wolf.

24   He has stated in some of the records that were

25   already read into this record that he did not do

26   the things that she describes of him and that

27   there was some misdoing on her part or on the

58

1   part of some of the people that she knew.   In

2   any case, that was ten years ago.   It was

3   actually a little more than ten years ago.   And

4   Mr. Hernandez was taken into custody in January

5   of 1996, if I have that day correct, and has

6   been in custody since that date.   Over the term

7   of those ten years he has changed and he has

8   attempted to atone for whatever situation there

9   was back in 1995.   He's attempted to adjust to

10  the very best of his ability to the prison

11  system and he's done that in at least three

12  different institutions that have been talked

13  about here today.   He does have in his future

14  plans a decent living arrangement.   He has a

15  supportive family, a sister and a brother-in-

16  law.   He has some extended family who are very

17  interested in his welfare, as evidenced by the

18  letter from his niece and some of the other

19  friends and people that have known him for many,

20  many years.   His brother-in-law has a

21  contractor's license and is able to put him to

22  work.   He will be able to do things that he

23  already has some experience with, in fact a

24  significant amount of experience with.   He'll be

25  able to make a living and capitalize not only on

26  the training he had before he came into the

27  system but also on the training that he's

59

```
 1   received while he's been in the system.  He's
 2   completed the business education clerical class,
 3   the small engine repair class.  He's volunteered
 4   for counseling in a number of different areas
 5   including anger management.  He's taken the -- I
 6   don't recall the name of it now but I'll call it
 7   the religious class.  The 12 week class that he
 8   said it took him 23 weeks to do because of
 9   difficulties in having the meetings.  But he did
10   those things and he has learned from them.  He
11   has no desire whatsoever to have any
12   relationship with any of the people that made
13   these allegations in the first place.  He has no
14   desire to have any negative effect on any life
15   that's out there.  And he only wants to have
16   positive effects on all the people he knows.  I
17   would ask that you take a look at the
18   difficulties we had with the mental health
19   evaluation.  And I will tell you that he did
20   submit a 602 very early on that to try to get it
21   corrected, was unable to get it corrected.  I
22   made several phone calls trying to track down
23   the doctor who did the mental health and was
24   unable to do that and finally spoke with
25   Dr. Zika.  So I wrote that letter as a result of
26   my conversation with Dr. Zika.  Dr. Zika's last
27   words to me were that he was going to try to get
```

60

1  the thing corrected because he said that he

2  could see the difficulties with it also.  And

3  I'll just close by saying that realizing that

4  the commitment offense is a very serious one and

5  realizing the emphasis that's placed these days

6  on safety in the home and the community and

7  elimination of these kinds of offenses.  Because

8  they are a sort of a domestic violence kind of

9  thing, even though I don't think I remember

10  seeing those exact words in the transcripts.

11  And realizing that there are a number of

12  difficulties with an inmate who is before the

13  Board for the very first time we'd ask that you

14  take a long hard look at the mental health

15  evaluation and realize that the ten years have

16  really meant something to Mr. Hernandez.  He

17  does want to make this or any chance that the

18  Board is willing to give him, he wants to make a

19  clean and fresh start.  Thank you.

20      DEPUTY COMMISSIONER SMITH:  Thank you.

21      PRESIDING COMMISSIONER DAVIS:  Okay,

22  Mr. Hernandez, this is your opportunity now to

23  address the panel directly and to tell us why --

24      DEPUTY DISTRICT ATTORNEY GUST:  Excuse

25  me, if I could just -- Could I just let you know

26  that I'm back?

27      PRESIDING COMMISSIONER DAVIS:  Welcome

61

1   back.

2       **DEPUTY DISTRICT ATTORNEY GUST:**  I got

3   back about five minutes ago.

4       **PRESIDING COMMISSIONER DAVIS:**  Okay, very

5   good.  I'm glad you could rejoin us.

6       **DEPUTY DISTRICT ATTORNEY GUST:**  Thank

7   you.

8       **PRESIDING COMMISSIONER DAVIS:**  Once

9   again, Mr. Hernandez, this is your opportunity

10  to address the panel directly to tell us why you

11  believe you are suitable for parole.

12      **INMATE HERNANDEZ:**  Commissioner Davis and

13  Commissioner Smith, the following statements are

14  presented to this panel in furtherance to a

15  supplemental persuasion in having this panel

16  make a parole suitability determination at

17  today's hearing.  First, I have been convicted

18  of attempt murder with a greater penalty

19  provision of life with the possibility of

20  parole.  This crime is not separated into

21  degrees.  Secondly, the incarceration record

22  currently before this panel is believed to be

23  significantly relevant as I have not only been

24  in prison six years prior to the statutory

25  minimum eligibility date.  I have been

26  incarcerated ten years three months for the

27  charges of which I have been convicted.  I

62

1   recognize that the Board of Parole Hearings has

2   no obligation to apply time served on prior

3   determinate sentences to the life term.

4   However, the Board does receive the benefit of

5   observing the prison programming that is

6   behavior and expected reaffirmation that the BPT

7   may have otherwise needed a denial period to

8   further observe the evaluation.  I am imprisoned

9   and currently subject to the findings.  You

10  advised me of my rights to go to the court as

11  you don't have an appeal process governing

12  review.  Further, Mr. Chester Phillips is only

13  retained for this hearing.  At any time to go to

14  court I will take away from other expected

15  programs.  During the forthcoming reflection of

16  these proceedings I also hope you will consider

17  that in the six years six months of this

18  indeterminate sentence I have never received

19  from either the California Department of

20  Corrections and Rehabilitation or the Board of

21  Prison Hearings (sic) any advisement of what

22  other activities, programs or accomplishments I

23  should have completed in order to have a parole

24  base term set today.  For the limited purposes

25  of this hearing and the transcript's review I

26  present that the State of California case

27  against me can be barely analyzed to infer that

63

1    my allegations -- my allegated (phonetic)

2    actions caused a projectile to stick into a

3    house near a victim.  This was the minimum

4    element necessary to occur in which to convict

5    me.  Third, guilt or innocence today is not the

6    question.  The continuation of the American

7    justice system is the purpose.  As this panel

8    has stated, this hearing is being held under

9    regulations governing the hearing.  Punishment

10   for this crime is beyond the scope of just a

11   term of imprisonment being set.  I am

12   stigmatized by the conviction.  If I am

13   fortunate enough to become paroled I will have

14   numerous other restrictions and rights non-

15   felons enjoy as liberties.  Four,

16   notwithstanding this panel's use of the Penal

17   Code Section 3042, 3041 and 3041.5 to conduct

18   this hearing I also ask that this panel decide

19   -- decision reflect Penal Code 5078.3.  I would

20   like to believe that there is some significance

21   of a new attempt murder matrix.  The repeal of

22   the Title 15 language where BPT's have the term

23   of a life sentence offense itself seems

24   relevant.  If I'm given the opportunity to have

25   my term of imprisonment determined to a time in

26   the future the State of California and Ms. Tolle

27   should believe that a just punishment has been

64

1   imposed against the allegedly guilty.  It is

2   respectfully requested that in this panel's

3   forthcoming decision that every conceivable

4   reason be considered so that rehabilitation not

5   be -- repetition not occur.  I further ask that

6   this case go to the en banc review before

7   transcript finality date.  If it were proven

8   that I am not guilty tomorrow I would never be

9   made whole again.  I hold no anger, no animosity

10  towards any victim.  And I would just -- I would

11  just ask that you see that for what it is and

12  give me an opportunity to reenter into society

13  as a productive individual.  Thank you.

14          **DEPUTY COMMISSIONER SMITH:**  Thank you.

15          **PRESIDING COMMISSIONER DAVIS:**  All right.

16  We'll recess, it's three o'clock, for our

17  deliberation.

18                      R E C E S S

19                      --oOo--

20

21

22

23

24

25

26

27

65

1        CALIFORNIA BOARD OF PAROLE HEARINGS

2               D E C I S I O N

3        **DEPUTY COMMISSIONER SMITH:**  We're back on

4  the record.  Everyone previously identified is

5  back in the hearing room.

6        **PRESIDING COMMISSIONER DAVIS:**  This is

7  the matter of Jesse Hernandez, CDC number

8  K-21116.  The panel reviewed all the information

9  received from the public and relied on the

10  following circumstances in concluding the

11  prisoner is not suitable for parole and would

12  pose an unreasonable risk of danger to society

13  or a threat to public safety if released from

14  prison.  That is, first there are multiple

15  victims in separate incidences.  Christine Wolf,

16  James and Julie Sutton, Dan and Gary Tolle, and

17  finally T. Tolle, a 12-year-old victim, were all

18  victims of Mr. Hernandez.  The motive of this

19  crime remains inexplicable in that we still

20  don't have a clear understanding of why these

21  crimes occurred, except for Mr. Hernandez's

22  desire to control Ms. Wolf.  The prisoner has,

23  in terms of institutional behavior, programmed

24  in a limited manner while incarcerated.  In that

25  while you participated in programming in '97 and

26  '98 there was no significant or no indication of

27  **JESSE HERNANDEZ K-21116 DECISION PAGE 1 03/26/06**

66

1   any programming until 2005.  There is not --
2   That you have not participated in beneficial
3   self-help programs.  There was one serious
4   disciplinary action, a 115, in February of 1998
5   for mutual combat.  The psychiatrist's report
6   dated 1/20/06 by Laura Petracek is not totally
7   supportive in that it indicates that within a
8   controlled setting his risk is minimal compared
9   to the average inmate.  If released into the
10  community his violence risk is slightly higher
11  compared to the average citizen.  And
12  significant risk factors and precursors to
13  violence are his past alcohol and substance
14  abuse and a relapse would increase his risk of
15  violence or undo gains he has made.  Although he
16  has been disciplinary-free since his
17  incarceration he still denies any responsibility
18  for his crime and this evaluator feels that the
19  inmate needs to do some soul-searching before
20  being considered for release.  We also note that
21  in response to the 3042 letters that the
22  District Attorney is represented.  A
23  representative representing San Diego County has
24  appeared by teleconference and opposed the
25  prisoner's release.  In terms of remarks this
26  panel makes the following findings: The
27  **JESSE HERNANDEZ K-21116 DECISION PAGE 2 03/26/06**

67

1   prisoner's gains are recent and he must

2   demonstrate the ability to maintain gains over

3   an extended period of time.  Nevertheless we do

4   want to commend you, Mr. Hernandez, for being

5   disciplinary-free since 1998, for completion of

6   the Christian 12 week Basic course and the eight

7   laudatory chronos for exceptional work.  In a

8   separate decision the hearing panel finds it is

9   not reasonable to expect that parole would be

10   granted at a hearing during the following two

11   years.  The specific reasons are as follows.

12   That there are multiple victims from separate

13   instances, Christine Wolf, James and Julie

14   Sutton, Dan and Gary Tolle and T. Tolle, who was

15   a 12-year-old victim, were all victims of

16   Mr. Hernandez.  The motive for this crime

17   remains inexplicable in that we still do not

18   have a clear picture of the motive except for

19   Mr. Hernandez's desire to control Ms. Wolf.  The

20   prisoner has programmed in a limited manner in

21   that after participating in programs in '97 and

22   '98 he did not participate in programs again

23   until 2005.  There is one serious disciplinary

24   action in February of 1998 for mutual combat,

25   and that you have not sufficiently participated

26   in self-help programs.  We also note that the

27   **JESSE HERNANDEZ K-21116 DECISION PAGE 3 03/26/06**

68

1  psychiatrist's report dated 1/20/06 prepared by

2  Laura Petracek is not totally supportive in that

3  within a controlled setting he has a risk of

4  minimal -- the risk is minimal compared to that

5  of the average inmate.  If released into the

6  community his violence risk is slightly higher

7  compared to the average citizen.  Significant

8  risk factors and precursors to violence are his

9  past alcohol and substance abuse.  And a relapse

10  would increase his risk of violence and undo the

11  gains he has made.  Although he has been

12  disciplinary-free since his incarceration he

13  still denies any responsibility for his crime.

14  This evaluator feels that the inmate needs to do

15  some soul-searching before he is eligible for

16  release.  And that the release is opposed by the

17  District Attorney from San Diego County.  Under

18  remarks, the prisoner's gains are recent and he

19  must demonstrate the ability to maintain those

20  gains over an extended period of time.  The

21  panel recommends that Mr. Hernandez remain

22  disciplinary-free, that if available that you

23  participate in self-help programs.  If for some

24  reason the institution is locked down and those

25  programs aren't available, certainly the panel

26  looks favorably on any individual reading that

27  **JESSE HERNANDEZ K-21116 DECISION PAGE 4 03/26/06**

69

1   you would do.  And prepare book reports or

2   something that would show us that you have a

3   strong understanding of how those self-help

4   books have helped you prepare for release.  That

5   you cooperate with clinicians in any clinical

6   evaluation and that you continue to maintain and

7   update your vocational programming.  Counsel did

8   note errors in the psychological report.  The

9   panel has taken note of those errors and has

10  asked for a new psychological evaluation to

11  clear up any inconsistencies that might be

12  there.  And with that I want to wish you the

13  best of luck in your continued endeavors.

14  Commissioner Smith, do you have anything you'd

15  like to add?

16      **DEPUTY COMMISSIONER SMITH:**  Good luck,

17  Mr. Hernandez.  You're certainly on the right

18  track, going in the right direction.  Stay on

19  that track and you're going to be a much

20  stronger candidate as time goes on.  Good luck,

21  sir.

22      **INMATE HERNANDEZ:**  Commissioner Davis and

23  Deputy Commissioner Smith, thank you very much

24  for your time in my hearing.  I appreciate all

25  of your efforts.

26      **DEPUTY COMMISSIONER SMITH:**  You're very

27  **JESSE HERNANDEZ K-21116 DECISION PAGE 5 03/26/06**

70

1  welcome.  Thank you for the presentation that

2  you made, it was obviously well thought out.

3  And counsel, thank you.

4      ATTORNEY PHILLIPS:  You're welcome.  I

5  notice that you gave the letter back that I

6  provided to you regarding our specific

7  difficulties with the psychological evaluation.

8      DEPUTY COMMISSIONER SMITH:  Counsel, I'm

9  going to go off the record.  I know where you're

10  going and I'll answer your question.

11      ATTORNEY PHILLIPS:  Okay.

12      DEPUTY COMMISSIONER SMITH:  We just don't

13  need to have that on the record.

14      ATTORNEY PHILLIPS:  And --

15      DEPUTY COMMISSIONER SMITH:  Unless you'd

16  like it to.

17      ATTORNEY PHILLIPS:  I'd like to make the

18  one objection that I was going to make

19  specifically to the comment under II of the

20  psychologist's recommendations  I wanted to make

21  an objection there based upon the fact that I

22  think that the so-called soul searching that she

23  requires is tantamount to admission, really.

24  That's what we're really looking at here, to

25  call it as it is.  I think that's in violation

26  of Penal Code 5011.  So I'd make that objection

27  **JESSE HERNANDEZ K-21116 DECISION PAGE 6 03/26/06**

71

1    that she should expect that of him.   And then I

2    offer this to stay with the findings of the

3    Board as --

4        DEPUTY COMMISSIONER SMITH:   Let me change

5    the tapes.

6        PRESIDING COMMISSIONER DAVIS:   Before we

7    go off record I just want to --

8        DEPUTY COMMISSIONER SMITH:   Actually I

9    need to put in new tapes.

10       PRESIDING COMMISSIONER DAVIS:   Okay, hang

11   on.

12       (Tape one was changed to tape two.)

13       DEPUTY COMMISSIONER SMITH:   Continuation

14   of the record, we never went off.

15       PRESIDING COMMISSIONER DAVIS:   Just in

16   terms of your objection.   It is noted, however I

17   am not going to sustain it.   But I will tell you

18   that even absent the psychologist's report that

19   our finding would have been the same.   That

20   information was read into the record simply

21   because it is on the psychologist's report.   We

22   don't know to what extent there may be errors in

23   there, if that was in fact her judgment or not

24   as to your client.   But I can tell you that the

25   panel is clear that even absent that that our

26   finding would still have been the same.

27   JESSE HERNANDEZ K-21116 DECISION PAGE 7 03/26/06

72

1       ATTORNEY PHILLIPS:  Okay.

2       PRESIDING COMMISSIONER DAVIS:  Now with

3   regard to the letter, was there a procedural

4   issue you want to deal with?

5       DEPUTY COMMISSIONER SMITH:  Yes.  We can

6   certainly put one of the copies in the folder

7   but I'm not sure that that's going to land

8   anywhere permanently.  And we don't have the

9   authority to put anything into the C File, only

10  Mr. Hernandez can do that through his counselor.

11  And I would certainly recommend that that letter

12  be provided to your counselor with your request

13  that it be included in the C File because that

14  then becomes a permanent record.  If I could do

15  it I would but I can't.

16      ATTORNEY PHILLIPS:  No, that's fine.

17      PRESIDING COMMISSIONER DAVIS:  Okay.  And

18  with that --

19      DEPUTY COMMISSIONER SMITH:  So that's why

20  -- I knew where you were going with that and I

21  wanted to address that.  And again, if you want

22  to give me one of the copies I'll be happy to

23  put it in the envelope with the other documents.

24  I just can't guarantee that that will go forward

25  as far as the permanent record.

26      INMATE HERNANDEZ:  I will (overlapping).

27  JESSE HERNANDEZ K-21116 DECISION PAGE 8 03/26/06

73

1          PRESIDING COMMISSIONER DAVIS:  And with

2     that we are going to adjourn.  It is 15 minutes

3     before four and we are going off the record.

4          ATTORNEY PHILLIPS:  Thank you.

5                    --oOo--

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23     PAROLE DENIED TWO YEARS          JUL 2 4 2006

24     THIS DECISION WILL BE FINAL ON:_____

25     YOU WILL BE PROMPTLY NOTIFIED, IF PRIOR TO THAT

26     DATE, THE DECISION IS MODIFIED.

27     JESSE HERNANDEZ K-21116 DECISION PAGE 9 03/26/06

74

## CERTIFICATE AND
## DECLARATION OF TRANSCRIBER

I, RAMONA COTA, a duly designated transcriber, PETERS SHORTHAND REPORTING, do hereby declare and certify under penalty of perjury that I have transcribed tape(s) which total two in number and cover a total of pages numbered 1 - 73, and which recording was duly recorded at CORRECTIONAL TRAINING FACILITY, SOLEDAD, CALIFORNIA, in the matter of the INITIAL PAROLE CONSIDERATION HEARING of JESSE HERNANDEZ, CDC NO. K-21116, on MARCH 26, 2006, and that the foregoing pages constitute a true, complete, and accurate transcription of the aforementioned tape to the best of my ability.

I hereby certify that I am a disinterested party in the above-mentioned matter and have no interest in the outcome of the hearing.

Dated April 16, 2006, at Sacramento County, California.

RAMONA COTA
TRANSCRIBER
**PETERS SHORTHAND REPORTING**

# EXHIBIT "B"

SUMMARYB BPT 1005 (b) dated 3/27/06
(Minimal Recommendations disproving
   Limited Program )

EXH "B" — COVER

BOARD OF PRISON TERMS                STATE OF CALIFORNIA
LIFE PRISONER: PAROLE CONSIDERATION PROPOSED DECISION:
DENY PAROLE

---

[✓] PAROLE DENIED FOR:        1    ②    3    4    5        YEARS

Place the prisoner on the ___2008___ calendar for his next subsequent hearing.

If this decision is final, you WILL NOT get paroled. The Board will send you a copy of the decision. It will indicate the reasons you did not get paroled. If this decision is not final, the Board will set up another hearing. You can read the laws about your hearing. You can find the laws at California Code of Regulations, Title 15, section 2041.

## RECOMMENDATIONS

**The Board Recommends:**

[ ] No more 115's or 128A's              [ ] Learn a trade*
[ ] Work to reduce custody level         [ ] Get therapy*
[✓] Get self-help*                        [✓] Earn positive chronos ( continue )
[✓] Stay discipline free                  [ ] Get a GED*

[ ] Recommend transfer to _____
[✓] Other ___NEW Psyche Eval IN PREP FOR___
___NEXT HEARING___

* These programs are recommended if they are offered at your prison and you are eligible/able to participate.

## HEARING PANEL

Name _____        Date _____
Name _____        Date _____
Name _____        Date _____

---

| NAME | CDC# | PRISON | DATE |
|------|------|--------|------|
| HERNANDEZ, JESSE | K21116 | CTF-Soledad | 3/27/06 |

**BPT 1005(b)**
**(REV 04/04)**

Distribution. White-C File
Canary-BPT
Pink-Prisoner

# EXHIBIT "C"



SUMMARY: Positive Chrono(s) About Program
Participation Since Incarceration

EXH "C" - COVER

NAME and NUMBER   **HERNANDEZ   K-21116   B4-111**                    CDC-128-B Rev. 4/74

Inmate Hernandez arrived at Salinas Valley State Prison in 1996.  I have supervised Inmate Hernandez in Facility B Building #4 for the past twenty-two months.  Inmate Hernandez has been a valuable asset many times.  Before he was assigned a vocational job on B Yard, he devoted many hours to the upkeep and cleanliness of the unit.  When Inmate Hernandez was assigned a job in Vocations, he continued to devote his off time to assist all floor officers 2nd and 3rd watch with any task that was asked to him, to include acting as a mediator with other inmates assigned to his housing unit.  This type of mediation often led to defusing situations before they could occur.  Inmate Hernandez has earned the respect of fellow inmates, as well as correctional staff members and for these deeds, he should be recognized.

Orig:   C-File
cc:      CCII
          CCI
          Writer
          Inmate

R. FRITZ
Correctional Officer
Salinas Valley State Prison

DATE     5/13/99                                                     **GENERAL CHRONO**

---

NAME and NUMBER   **HERNANDEZ         K-21116              B4-111L**        CDC-128-B Rev. 4/74

From June 15, 1997, through October 11, 1999, Inmate Hernandez , K-21116, while housed in Facility "B", Building #4, Cell #111L, has taken on various tasks such as cleaning, laundry and other general jobs when or when not asked.  His initiative and attention to detail to certain building tasks is just an example of what other inmates could base their own achievement and/or accomplishments from.  This 128-C Laudatory Chrono serves as a thanks to Inmate Hernandez from the B-4 Correctional Staff.

ORIG:   CENTRAL FILE
CC:      PROGRAM FILE
CC:      COUNSELOR
CC:      WRITER
CC:      INMATE

J.J. TORRES, CORRECTIONAL OFFICER
FACILITY "B"       THIRD WATCH
SALINAS VALLEY STATE PRISON

DATE    10-11-99              (LAUDATORY CHRONO)              **GENERAL CHRONO**

C:1/4

NAME and NUMBER    I/M Hernandez  J.    C.D.C # K21116

| CDC> 128B | LAUDATORY CHRONO |
|---|---|

I/M Hernandez, CDC# K21116, was assigned to Voc. Small Engine Class on 5-9-1998.
Hernandez repaired lawn mowers, riding tractors, chainsaws, motorcycles, mini-bikes, with
outstanding quality workmanship. Due to his success in the class, I advanced Hernandez to a pay
position as teachers Aid. He helps the students on the floor, with technical demonstrations, and
repairs on student projects. Hernandez completed the Small Engine Repair Class receiving a
certificate of completion. Hernandez has excellent attendance, positive attitude, helped others in
the class, and been a role model person in the Small Engine Class. With Hernandez's help, he has
aided in  the success of the Small Engine Repair Class.

C - File
Ed File
CC I
Inmate
Supervisor

DATE : July 3, 2000

LAUDATORY
COUNSELING CHRONO

---

NAME and NUMBER    HERNANDEZ, JESSE    K-21116    RM:    6305    CDC-128-B(Rev. 4/74)

I/M HERNANDEZ, JESSE, K-21116, is currently assigned as 3/W CLERK in East R&R, Position CLK%T.026.  It is
requested that I/M HERNANDEZ be considered a critical worker in this position and be retained at CMC-East.  I/M
HERNANDEZ is the only inmate assigned to Receiving & Release who is cross-trained in all inmate work positions and
is knowledgable in all areas of Receiving & Release operations. Receiving & Release is a sensitive area and a vital hub
of operations at CMC-East.  The experience and knowledge I/M HERNANDEZ is able to apply helps this area run
efficiently.  He currently is in the process of training a newly-hired inmate worker in the property room and has reliably
trained several inmate workers during his tenure at R&R.  Due to his knowledge of all the inmate work positions, he
frequently is called upon to fill in for other workers when they are unavailable.  This proves valuable to Receiving &
Release because it allows the flow of work to continue without interruption. HERNANDEZ has displayed exceptional
organizational skills since being assigned to this position and has made important contributions in helping this area
function smoothly.  I/M HERNANDEZ consistently displays an excellent work ethic, positive attitude, and professionalism
in his assigned duties.  For the above-stated reasons, it is requested all possible consideration be given to retaining I/M
HERNANDEZ at CMC-East so he may remain in this work assignment.

Original    C-File
cc:    C-Quad CC-II
    C-Quad CC-I        R.A. DAMEROW, Correctional Sergeant
    R&R File        Receiving & Release
    Inmate        CMC-East Facility

DATE    6/30/04    Informative / Request for Retention    CMC-E    GENERAL  CHRONO

C 52/4

| NAME and NUMBER | HERNANDEZ, JESSE | K-21116 | RM: | 6305 | CDC-128-B(Rev. 4/74) |

I/M HERNANDEZ, JESSE, K-21116, is currently assigned as a clerk in Receiving & Release, working in a variety of areas within this department. During the time I have supervised this inmate I have found him to be an extremely conscientious worker who consistently displays maximum effort . He takes the initiative in required tasks and shows a willingness to help others wherever needed, working well both independently and within a team concept. He displays excellent work habits and a good attitude toward both staff and inmates. His efforts while assigned to this job have helped this area run smoothly and efficiently and he has been considered an asset to this operation. This documentation should be considered both an acknowledgement of an excellent work record and a positive recommendation to prospective employers/supervisors.

Original       C-File
cc:            R&R
               Inmate

W. CASTRO, Correctional Officer
Receiving & Release
CMC-East Facility

DATE    9/30/04                  **Informative / Laudatory**          CMC-E    **GENERAL  CHRONO**

---

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS
**CDC128 B**

**HERNANDEZ, J.**    **K21116**    **G-120**

Inmate **HERNANDEZ** is to be commended for the excellent job he has done as an education clerk. He is very organized and self motivated. Recently, he had to deal with serious family issues, yet he remained very responsible to his job assignment. He has helped to make my transition from teaching ABE-II to GED manageable. Thank you!

S. Wise
S. WISE
ABE II CENTRAL EDUC.
EXT.  4952

CC:     C-File
        Education File
        Inmate
        Writer
        CCI

**DATE:  August 30, 2005**                          **LAUDATORY CHRONO**

C:3/4

AME and NUMBER      HERNANDEZ   K-21116   GW-104U            CDC-128-B (Rev. 4/74)

This student has successfully completed 12 weeks of prescribed
studies in the CTF-Central Chapel Discipleship Program:
Christian Basics Class (C.B.C.). In this class he learned
practical biblical application dealing with the Christian
lifestyle. He has effectively acquired a practical knowledge the
Christian role plays in today's society, as well as assimulating
execellent methods in making moral life-choices while in prison
or on parole. This student is to be commended for his efforts,
participation, self-sacrifice, sincere dedication, and personal
commitment displayed in this class.

Original:      C-file
               Chapel File
               Inmate

                                          Rev. Judge C. Lindsey
                                          Protestant Chaplain
                                          CTF-Central

.TE      September 11, 2005                            GENERAL CHRONO

                         (Laudatory Chrono)

---

STATE OF CALIFORNIA                DEPARTMENT OF CORRECTIONS & REHABILITATION
                                                    CDC128 B

HERNANDEZ, J.   K21116      G-120

Inmate **HERNANDEZ** continues to do an outstanding job as a GED education clerk. He is
very conscientious, responsible, and reliable. He is always concerned with the importance of
doing what is right and following correct procedures. He is also willing to do the tasks that
need to be done when others are reluctant. Thank you!

S. WISE
**GED INSTRUCTOR, CENTRAL EDUC.**
   EXT. 4952

      CC:     C-File
              Education File
              Inmate
              Writer
              CCI

                                                    **LAUDATORY CHRONO**

      DATE: January 19, 2006

                                        — OF CORRECTIONS & REHABILITATION

                         c:4/4



SUMMARY: Positive Work Reports Since Incarceration

EXH "D" — COVER

STATE OF CALIFORNIA
CDC-101 (Automated)
**WORK SUPERVISOR'S REPORT**
DEPARTMENT OF CORRECTIONS

| GRADES | GRADE | | | GRADE | |
|---|---|---|---|---|---|
| 1=EXCEPTIONAL | 1 | A. DEMONSTRATED SKILL AND KNOWLEDGE | | 1 | F. TEAMWORK AND PARTICIPATION |
| 2=ABOVE AVERAGE | 1 | B. ATTITUDE TOWARD FELLOW INMATES AND WORKER | | 1 | G. LEARNING ABILITY |
| 3=SATISFACTORY | 1 | C. ATTITUDE TO SUPERVISORS AND STAFF | | 1 | H. USE OF TOOLS AND EQUIPMENT |
| 4=BELOW AVERAGE | 1 | D. INTEREST IN ASSIGNED WORK | | 1 | I. QUALITY OF WORK |
| 5=UNSATISFACTORY | 1 | E. EFFORT DISPLAYED IN ASSIGNED WORK | | 1 | J. QUANTITY OF WORK |

| PAY STATUS     FROM: $   $0.30   TO: $ | FROM: JOB NO.  CLK%.C406 | TO: JOB NO |
|---|---|---|

Total # Hours Assigned:  40 hours per week          Total # Hours Worked:    40 hours per week

| SUBJECT ASSIGNED TO | DATE ASSIGNED | ACTUAL WORK CONSISTS OF | PERIOD COVERED BY REPORT |
|---|---|---|---|
| AHS1 | 4/4/2006 | Clerk | 4/4/2006 to 4/24/2006 |

RECOMMEND FOR: ☐ REASSIGNMENT    ☑ RETAIN    ☐ PAY INCREASE    ☐ PAY DECREASE    INMATE'S INITIALS

| COMMENTS (IF MORE SPACE REQUIRED, USE REVERSE SIDE) | CODE OF SAFE PRACTICES REVIEWED |
|---|---|
| I can always count on Mr. Hernandez to do whatever is needed.  He is responsible, productive, and self-motivated. He does and excellent job  Thank you! | SUPV'S INITIALS          INMATE'S INITIALS   *S.W.* |

| SUPERVISOR | LENGTH OF SUPERVISION | WORK DETAIL | ETHNICITY |
|---|---|---|---|
| S. Wise    *S. Wise* | 0 month | Education | OTH   J.H |
| INMATE'S NAME | CDC NUMBER | INSTITUTION | DATE |
| Hernandez, J.          G-104L | K21116 | CTF | 4/24/2006 |

STATE OF CALIFORNIA
CDC-101 (Automated)
**WORK SUPERVISOR'S REPORT**
DEPARTMENT OF CORRECTIONS

| GRADES | GRADE | | | GRADE | |
|---|---|---|---|---|---|
| 1=EXCEPTIONAL | 1 | A. DEMONSTRATED SKILL AND KNOWLEDGE | | 1 | F. TEAMWORK AND PARTICIPATION |
| 2=ABOVE AVERAGE | 1 | B. ATTITUDE TOWARD FELLOW INMATES AND WORKER | | 1 | G. LEARNING ABILITY |
| 3=SATISFACTORY | 1 | C. ATTITUDE TO SUPERVISORS AND STAFF | | 1 | H. USE OF TOOLS AND EQUIPMENT |
| 4=BELOW AVERAGE | 1 | D. INTEREST IN ASSIGNED WORK | | 1 | I. QUALITY OF WORK |
| 5=UNSATISFACTORY | 1 | E. EFFORT DISPLAYED IN ASSIGNED WORK | | 1 | J. QUANTITY OF WORK |

| PAY STATUS     FROM: $   $0.30   TO: $ | FROM: JOB NO.  CLK%.C406 | TO: JOB NO |
|---|---|---|

Total # Hours Assigned:  40 hours per week          Total # Hours Worked:    40 hours per week

| SUBJECT ASSIGNED TO | DATE ASSIGNED | ACTUAL WORK CONSISTS OF | PERIOD COVERED BY REPORT |
|---|---|---|---|
| AHS1 | 4/4/2006 | Clerk | 4/24/2006 to 8/24/2006 |

RECOMMEND FOR: ☐ REASSIGNMENT    ☑ RETAIN    ☐ PAY INCREASE    ☐ PAY DECREASE    INMATE'S INITIALS

| COMMENTS (IF MORE SPACE REQUIRED, USE REVERSE SIDE) | CODE OF SAFE PRACTICES REVIEWED |
|---|---|
| Mr. Hernandez continues to be very willing to do whatever is required.  Thank you! | SUPV'S INITIALS          INMATE'S INITIALS |

| SUPERVISOR | LENGTH OF SUPERVISION | WORK DETAIL | ETHNICITY |
|---|---|---|---|
| S. Wise    *S. Wise* | 4 months | Education | OTH   J.H |
| INMATE'S NAME | CDC NUMBER | INSTITUTION | DATE |
| Hernandez, J.          G-104U | K21116 | CTF | 8/24/2006 |

D: 1/15

```
Assignment Ducat/Ac      y Card
CDC#: K21116  HERNANDEZ, JESSE
EFF : 04/04/2006
BED#: CFGWT1 104L
LOC : GED
RDO : S  SU H
JOB#: CLK%C.406  GED  FILE CLERK
HRS: 0800-1130 1230-1530

AUTHORIZED BY:
```

```
Assignment Ducat/Activity Card
CDC#: K21116  HERNANDEZ, JESSE
EFF : 09/30/2005
BED#: CFGWT1 104U
LOC : GED
RDO : S  SU H
JOB#: CLK%C.111  GED  CLERK
HRS: 0800-1130 1230-1530

AUTHORIZED BY:
```

STATE OF CALIFORNIA
CDC-101 (Automated)

## WORK SUPERVISOR'S REPORT

DEPARTMENT OF CORRECTIONS

| GRADES | GRADE | | GRADE | |
|---|---|---|---|---|
| 1=EXCEPTIONAL | 1 | A. DEMONSTRATED SKILL AND KNOWLEDGE | 1 | F. TEAMWORK AND PARTICIPATION |
| 2=ABOVE AVERAGE | 1 | B. ATTITUDE TOWARD FELLOW INMATES AND WORKER | 1 | G. LEARNING ABILITY |
| 3=SATISFACTORY | 1 | C. ATTITUDE TO SUPERVISORS AND STAFF | 1 | H. USE OF TOOLS AND EQUIPMENT |
| 4=BELOW AVERAGE | 1 | D. INTEREST IN ASSIGNED WORK | 1 | I. QUALITY OF WORK |
| 5=UNSATISFACTORY | 1 | E. EFFORT DISPLAYED IN ASSIGNED WORK | 1 | J. QUANTITY OF WORK |

| PAY STATUS   FROM: $ $0.23  TO: $ | FROM: JOB NO. CLK%C.407 | TO: JOB NO CLK%C. 111 |
|---|---|---|

Total # Hours Assigned: 40 hours per week    Total # Hours Worked: 40 hours per week

| SUBJECT ASSIGNED TO A2-2 | DATE ASSIGNED 3/11/2005 | ACTUAL WORK CONSISTS OF Clerk | PERIOD COVERED BY REPORT 3/11/2005 to 9/27/2005 |
|---|---|---|---|

RECOMMEND FOR: ☐ REASSIGNMENT   ☑ RETAIN   ☐ PAY INCREASE   ☐ PAY DECREASE      INMATE'S INITIALS

COMMENTS (IF MORE SPACE REQUIRED, USE REVERSE SIDE)
Mr. Hernandez does an excellent job at whatever he is assigned. He takes initiative and is a productive worker. Thank you!

CODE OF SAFE PRACTICES REVIEWED
SUPV'S INITIALS  S.W.      INMATE'S INITIALS  J.H

| SUPERVISOR S. Wise      S. Wise | LENGTH OF SUPERVISION 6 months | WORK DETAIL Education | ETHNICITY OTH |
|---|---|---|---|
| INMATE'S NAME Hernandez, J.          G-104U | CDC NUMBER K21116 | INSTITUTION CTF | DATE 9/27/2005 |

STATE OF CALIFORNIA
CDC-101 (Automated)

## WORK SUPERVISOR'S REPORT

DEPARTMENT OF CORRECTIONS

| GRADES | GRADE | | GRADE | |
|---|---|---|---|---|
| 1=EXCEPTIONAL | 1 | A. DEMONSTRATED SKILL AND KNOWLEDGE | 1 | F. TEAMWORK AND PARTICIPATION |
| 2=ABOVE AVERAGE | 1 | B. ATTITUDE TOWARD FELLOW INMATES AND WORKER | 1 | G. LEARNING ABILITY |
| 3=SATISFACTORY | 1 | C. ATTITUDE TO SUPERVISORS AND STAFF | 1 | H. USE OF TOOLS AND EQUIPMENT |
| 4=BELOW AVERAGE | 1 | D. INTEREST IN ASSIGNED WORK | 1 | I. QUALITY OF WORK |
| 5=UNSATISFACTORY | 1 | E. EFFORT DISPLAYED IN ASSIGNED WORK | 1 | J. QUANTITY OF WORK |

| PAY STATUS   FROM: $ $0.23  TO: $ | FROM: JOB NO. CLK%C.111 | TO: JOB NO |
|---|---|---|

Total # Hours Assigned: 40 hours per week    Total # Hours Worked: 40 hours per week

| SUBJECT ASSIGNED TO AHS1 | DATE ASSIGNED 9/30/2005 | ACTUAL WORK CONSISTS OF Clerk | PERIOD COVERED BY REPORT 9/30/2005 to 1/10/2006 |
|---|---|---|---|

RECOMMEND FOR: ☐ REASSIGNMENT   ☑ RETAIN   ☐ PAY INCREASE   ☐ PAY DECREASE      INMATE'S INITIALS

COMMENTS (IF MORE SPACE REQUIRED, USE REVERSE SIDE)
Mr Hernandez does an outstanding job at whatever task he is given. He is always accomodating and very patient. Thank you. You are very much appreciated.

CODE OF SAFE PRACTICES REVIEWED
SUPV'S INITIALS      INMATE'S INITIALS  J.H

| SUPERVISOR S. Wise      S. Wise | LENGTH OF SUPERVISION 4 months | WORK DETAIL Education | ETHNICITY OTH |
|---|---|---|---|
| INMATE'S NAME Hernandez, J.          G-104U | CDC NUMBER K21116 | INSTITUTION CTF | DATE 1/10/2006 |

D: 2/15

STATE OF CALIFORNIA                                      **WORK SUPERVISOR'S REPORT**                              DEPARTMENT OF CORRECTIONS
CDC-101 (1/92)

| GRADES | GRADE | | GRADE | |
|---|---|---|---|---|
| 1 = EXCEPTIONAL | 3 | A. DEMONSTRATED SKILL AND KNOWLEDGE | 2 | F. TEAMWORK AND PARTICIPATION |
| 2 = ABOVE AVERAGE | 2 | B. ATTITUDE TOWARD FELLOW INMATES AND WORKERS | 2 | G. LEARNING ABILITY |
| 3 = SATISFACTORY | 2 | C. ATTITUDE TOWARD SUPERVISORS AND STAFF | 2 | H. USE OF TOOLS AND EQUIPMENT |
| 4 = BELOW AVERAGE | 2 | D. INTEREST IN ASSIGNED WORK | 2 | I. QUALITY OF WORK |
| 5 = UNSATISFACTORY | 2 | E. EFFORT DISPLAYED IN ASSIGNED WORK | 2 | J. QUANTITY OF WORK |

| PAY STATUS: FROM:$ | TO:$ | FROM: JOB NO. | TO: JOB NO. |
|---|---|---|---|

| TOTAL # Hours Assigned: | TOTAL # Hours Worked: |
|---|---|

| INMATE ASSIGNED TO CLK-T.024 (P04) | DATE ASSIGNED 05-22-2002 | ACTUAL WORK CONSISTS OF Clerk - Typing / filing. | PERIOD COVERED BY REPORT PROBATIONARY |
|---|---|---|---|

RECOMMENDED FOR: ☐ REASSIGNMENT ☑ RETAIN ☐ PAY INCREASE ☐ PAY DECREASE     INMATE'S INITIALS H.J.

| COMMENTS (IF MORE SPACE IS NEEDED, USE REVERSE SIDE) Good worker - | CODE OF SAFE PRACTICES REVIEWED SUPV'S INITIALS AB | INMATE'S INITIALS H.J. |
|---|---|---|

| SUPERVISOR G. Ashba | LENGTH OF SUPERVISION 1 month | WORK DETAIL R&R CLK | ETHNICITY OTH |
|---|---|---|---|

| INMATE'S NAME HERNANDEZ, JESSE | Cell: 5379 | CDC NUMBER K-21116 | INSTITUTION CMC-East | DATE 06-03-2002 |
|---|---|---|---|---|

---

STATE OF CALIFORNIA                                      **WORK SUPERVISOR'S REPORT**                              DEPARTMENT OF CORRECTIONS
CDC-101 (1/92)

| GRADES | GRADE | | GRADE | |
|---|---|---|---|---|
| 1 = EXCEPTIONAL | 2 | A. DEMONSTRATED SKILL AND KNOWLEDGE | 1 | F. TEAMWORK AND PARTICIPATION |
| 2 = ABOVE AVERAGE | 1 | B. ATTITUDE TOWARD FELLOW INMATES AND WORKERS | 2 | G. LEARNING ABILITY |
| 3 = SATISFACTORY | 1 | C. ATTITUDE TOWARD SUPERVISORS AND STAFF | 1 | H. USE OF TOOLS AND EQUIPMENT |
| 4 = BELOW AVERAGE | 1 | D. INTEREST IN ASSIGNED WORK | 2 | I. QUALITY OF WORK |
| 5 = UNSATISFACTORY | 2 | E. EFFORT DISPLAYED IN ASSIGNED WORK | 2 | J. QUANTITY OF WORK |

| PAY STATUS: FROM:$ 34.00 | TO:$ 42.00 | FROM JOB NO. CLK-T.024 | TO: JOB NO. CLK-T.026 |
|---|---|---|---|

| TOTAL # Hours Assigned: 35 hours weekly | TOTAL # Hours Worked: 55 hours weekly |
|---|---|

| INMATE ASSIGNED TO CLK-T.026 (P04) | DATE ASSIGNED 07-19-2002 | ACTUAL WORK CONSISTS OF 3RD WATCH CLERK-TYPIST - Misc Clerical & Computer | PERIOD COVERED BY REPORT PROBATIONARY JULY 2002 |
|---|---|---|---|

RECOMMENDED FOR: ☐ REASSIGNMENT ☒ RETAIN ☐ PAY INCREASE ☐ PAY DECREASE     INMATE'S INITIALS J.H

| COMMENTS (IF MORE SPACE IS NEEDED, USE REVERSE SIDE) Original hire in May 2002; Recent Promotion within R&R | CODE OF SAFE PRACTICES REVIEWED SUPV'S INITIALS dlm | INMATE'S INITIALS J.H |
|---|---|---|

| SUPERVISOR D. L. Meyer, OA | LENGTH OF SUPERVISION 3 Months | WORK DETAIL R&R CLERK 3/W | ETHNICITY OTH |
|---|---|---|---|

| INMATE'S NAME HERNANDEZ, JESSE | Cell: 5379 | CDC NUMBER K-21116 | INSTITUTION CMC-East | DATE 08-01-2002 |
|---|---|---|---|---|

D:3/15

STATE OF CALIFORNIA
CDC 128-E (Rev.10/98)

**QUARTERLY CHRONO**

DEPARTMENT OF CORRECTIONS

## EDUCATION PROGRESS REPORT

| BEHAVIOR/ASSESSMENT | | | CERTIFICATION UNITS IN COURSE | TOTAL | COMPLETED PRIOR TO THIS QUARTER |
|---|---|---|---|---|---|
| Adaptability | S | U | Vocational Title: _____ | _____ | _____ |
| Conduct | S | U | Academic Title: _____ | | |
| Cooperation | S | U | Adult High School Title BUS. ED. | 5 | 5 |
| Dependability | S | U | General Education Development: _____ | _____ | _____ |
| Initiative | S | U | | | |

LIST SPECIFIC CERTIFICATION UNITS COMPLETED THIS QUARTER BY NAME:

| DATE INMATE ENROLLED | DATE INMATE TERMINATED | TERMINATION CODE | REASON FOR TERMINATION |
|---|---|---|---|
| 03/07/01 | | | |

COMMENTS SPECIFIC TO COURSE:/M Hernandez, Jesse, (CDC # K-21116) has completed 0 Certification Units this quarter and 5 Certification Units to date. Mr. Hernandez's classroom behavior and attitude towards learning are excellent. Mr. Hernandez made good progress with typing and Business Math Using Calculators. He completed three parts of Business Math Using Calculators with 94%. He completed 27 out of 29 typing lessons. Mr. Hernandez is at the point of taking Typing Test 4. Mr. Hernandez needs to continue working on Keeping Financial Records For Business. Mr. Hernandez is a steady helper with classroom cleaning and maintenance. During quarter break he helped with major sorting and cleaning. **(Continued on Chrono 2)**

Grade Period: 1/1/02 through 3/31/02

## VOCATIONAL EVALUATION OF EMPLOYABILITY

| (X) | OCCUPATIONAL JOB TITLE | DOT CODE NUMBER | (X) | OCCUPATIONAL JOB TITLE | DOT CODE NUMBER |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| DATE OF REPORT | QUARTER GRADE | INSTRUCTOR/TEACHER (PRINT NAME AND SIGN) | | SUPERVISOR REVIEW |
|---|---|---|---|---|
| 3/31/02 | A- | J. FOSS | INITIALS | |

| INMATE NAME (LAST, FIRST, MI) | | CDC NUMBER | INSTITUTION |
|---|---|---|---|
| Hernandez, Jesse | ROOM # 5379x | K-21116 | CMC-EAST |

CMC-VE-002 (8/00) 918    **DISTRIBUTION:** White-Central File, Canary-Education, Pink-Originator, Goldenrod-Inmate

**QUARTERLY CHRONO**

D: 4/15

CALIFORNIA
128-E (Rev.10/98)

**QUARTERLY CHRONO**

DEPARTMENT OF CORRECTIONS

**EDUCATION PROGRESS REPORT**

| BEHAVIOR/ASSESSMENT | | | CERTIFICATION UNITS IN COURSE | TOTAL | COMPLETED PRIOR TO THIS QUARTER |
|---|---|---|---|---|---|
| Adaptability | S | U | Vocational Title: _____ | _____ | _____ |
| Conduct | S | U | Academic Title: _____ | _____ | _____ |
| Cooperation | S | U | Adult High School Title BUS. ED. | 15 | 5 |
| Dependability | S | U | General Education Development: | _____ | _____ |
| Initiative | S | U | | | |

LIST SPECIFIC CERTIFICATION UNITS COMPLETED THIS QUARTER BY NAME:

| DATE INMATE ENROLLED | DATE INMATE TERMINATED | TERMINATION CODE | REASON FOR TERMINATION |
|---|---|---|---|
| 03/07/01 | | | |

COMMENTS SPECIFIC TO COURSE I/M Hernandez, Jesse, (CDC # K-21116) **(Continuation ....Chrono 2)** Attendance is perfect.
Business Math Using Calculators – A,  Beginning Typing – A,  Keeping Financial Records for Business – N/G

**VOCATIONAL EVALUATION OF EMPLOYABILITY**

Grade Period: 1/1/02 through 3/31/02

| (X) | OCCUPATIONAL JOB TITLE | DOT CODE NUMBER | (X) | OCCUPATIONAL JOB TITLE | DOT CODE NUMBER |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

| DATE OF REPORT | QUARTER GRADE | INSTRUCTOR/TEACHER (PRINT NAME AND SIGN) | | SUPERVISOR REVIEW |
|---|---|---|---|---|
| 3/31/02 | A- | J. FOSS | INITIALS | |

| INMATE NAME (LAST, FIRST, MI) | | CDC NUMBER | INSTITUTION |
|---|---|---|---|
| Hernandez, Jesse | ROOM # 5379x | K-21116 | CMC-EAST |

CMC-VE-002 (8/00) 918    **DISTRIBUTION: White QUARTERLY CHRONO** Pink-Originator; Goldenrod-Inmate

D: 5/15

STATE OF CALIFORNIA
CDC 128-E (Rev.1096)

**QUARTERLY CHRONO**

DEPARTMENT OF CORRECTIONS

**EDUCATION PROGRESS REPORT**

| BEHAVIOR/ASSESSMENT | | CERTIFICATION UNITS IN COURSE | | TOTAL | COMPLETED PRIOR TO THIS QUARTER | COMPLETED THIS QUARTER |
|---|---|---|---|---|---|---|
| Adaptability | S   U | Vocational Title: | | | | |
| Conduct | S   U | Academic Title: | | | | |
| Cooperation | S   U | Adult High School Title: __BUS ED__ | | | | |
| Dependability | S   U | General Education Development: | | | | |
| Initiative | S   U | | | | __K-21116__ | |

LIST SPECIFIC CERTIFICATION UNITS COMPLETED THIS QUARTER BY NAME:
ELECTRONIC PRINTING CALCULATOR

| DATE INMATE ENROLLED | DATE INMATE TERMINATED | TERMINATION CODE | REASON FOR TERMINATION |
|---|---|---|---|
| 01/07/01 | | | |

COMMENTS SPECIFIC TO COURSE: I/M Hernandez, Jesse (K-21116) has completed 1(Certification Unit(s) this quarter and 5 Certification Unit(s) to date. Mr. Hernandez is maintaining steady progress with his studies. He completed 42 Beginning Typing lessons, corrections need to be made on Performance Test 2, Unit 9 and the Video Center were completed in Keeping Financial Records for Business with 95 percent. Mr. Hernandez earned a Certificate of Achievement for completing the Electronic Printing Calculator. Mr. Hernandez continue to be cooperative and helpful, he regularly assists with weekly cleanup. ELECTRONIC PRINTING CALCULATOR-A, BEGINNING TYPING-A, KEEPING FINANCIAL RECORDS FOR BUSINESS-A

VOCATIONAL EVALUATION OF EMPLOYABILITY

| OCCUPATIONAL JOB TITLE | DOT CODE NUMBER | (X) | OCCUPATIONAL JOB TITLE | DOT CODE NUMBER |
|---|---|---|---|---|
| | | X | | |
| | | X | | |
| | | X | | |
| | | X | | |
| | | X | | |

| DATE OF REPORT | QUARTER GRADE | INSTRUCTOR/TEACHER (PRINT NAME AND SIGN) | CDC NUMBER | INITIALS | SUPERVISOR REVIEW |
|---|---|---|---|---|---|
| 12/31/01 | A | T. FOSS   ROOM # 5376 | K-21116 | | |

INMATE NAME (LAST, FIRST, MI)
HERNANDEZ   JESSE   918

INSTITUTION
CMC-EAST

CMC-VE-002(8/00)  **DISTRIBUTION:** White-C-File Yellow-Education Jacket Pink-Originator Goldenrod-Inmate

TERMINATION CHRONO

STATE OF CALIFORNIA
CDC 128-E (Rev.10/98)

DEPARTMENT OF CORRECTIONS

## EDUCATION PROGRESS REPORT

| BEHAVIOR/ASSESSMENT | CERTIFICATION UNITS IN COURSE | TOTAL | COMPLETED PRIOR TO THIS QUARTER |
|---|---|---|---|
| Adaptability        S—U | Vocational Title: _____ | | |
| Conduct             S—U | Academic Title: _____ | | |
| Cooperation         S—U | Adult High School Title: __BUS. ED.__ | 15 | 5 |
| Dependability       S—U | General Education Development: _____ | | |
| Initiative          S—U | | | |

LIST SPECIFIC CERTIFICATION UNITS COMPLETED THIS QUARTER BY NAME:

**Beginning Typing**

| DATE INMATE ENROLLED | DATE INMATE TERMINATED | TERMINATION CODE | REASON FOR TERMINATION |
|---|---|---|---|
| 3/7/01 | 5/11/02 | 8 | TRANSFER TO PROJECT CHAN |

COMMENTS SPECIFIC TO COURSE:     I/M Hernandez (K-21116) has completed 1 Certification Units this quarter and 6 Certification Units to date. Mr. Hernandez has been a dependable, cooperative, helpful student. He has made good progress. During this quarter Mr. Hernandez completed Part 4 of Business Math Using Calculators with 100 percent and Units 10 and 11 of Keeping Financial Records for Business with 99 percent. He earned a Certificate of Achievement for completing Beginning Typing. Attendance is perfect. Beginning Typing _A_ , Keeping Financial Records for Business: _A_ , Business Math Using Calculators: _A_ .

| Grade Period: 4/1/02 through 5/1/02 | | | VOCATIONAL EVALUATION OF EMPLOYABILITY | | |
|---|---|---|---|---|---|
| (X) | OCCUPATIONAL JOB TITLE | DOT CODE NUMBER | (X) | OCCUPATIONAL JOB TITLE | DOT CODE NUMBER |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| DATE OF REPORT | QUARTER GRADE | INSTRUCTOR/TEACHER (PRINT NAME AND SIGN) | | SUPERVISOR REVIEW |
|---|---|---|---|---|
| 5/20/02 | A | J. FOSS | INITIALS | |

| INMATE NAME (LAST, FIRST, MI) | | CDC NUMBER | INSTITUTION |
|---|---|---|---|
| Hernandez, Jesse | 5379x | K-21116 | CMC-EAST |

CMC-VE-002 (8/00) 918     **DISTRIBUTION:** White-Central File; Canary-Education File; Pink-Originator; Goldenrod-Inmate

D: 7/15

STATE OF CALIFORNIA
CDC 128-E (Rev. 10/90)

## QUARTERLY CHRONO

## EDUCATION PROGRESS REPORT

DEPARTMENT OF CORRECTIONS

**BEHAVIOR/ASSESSMENT**

| | | CERTIFICATION UNITS IN COURSE | TOTAL | COMPLETED PRIOR TO THIS QUARTER |
|---|---|---|---|---|
| Adaptability | S U | Vocational Title: | | |
| Conduct | S U | Academic Title: Bus. Ed. | | |
| Cooperation | S U | Adult High School Title: | 15 | 2 |
| Dependability | S U | General Education Development: | | |
| Initiative | S U | | | |

LIST SPECIFIC CERTIFICATION UNITS COMPLETED THIS QUARTER BY NAME
FILING, FAMILY FINANCIAL MANAGEMENT

| DATE INMATE ENROLLED | DATE INMATE TERMINATED | TERMINATION CODE | REASON FOR TERMINATION |
|---|---|---|---|
| 03/07/01 | | | |

**COMMENTS SPECIFIC TO COURSE:**   IM Hernandez, Jesse, (CDC # K-21110) has completed a 2 Certification Unit(s) this quarter and 4 Certification Unit(s) to date. Mr. Hernandez is a helpful, dependable student and has a good attitude toward his class work. He received Certificates of Achievement for completing Filing with 93 percent and Family Financial Management with 91 percent. Mr. Hernandez started Keeping Financial Records for Business and completed the first 3 units with 94 percent. He has also started working on the Electronic Printing Calculator. Mr. Hernandez has completed 20 typing lessons out of 35 expected. He should do one typing lesson each day. Attendance is perfect. Filing: A; Family Financial Management: A; Record Keeping: A; Electronic Calculator: N/G; Typing: C.
Grade Period: 04/01/01 through 06/30/01

| | | VOCATIONAL EVALUATION OF EMPLOYABILITY | | | |
|---|---|---|---|---|---|
| (X) | OCCUPATIONAL JOB TITLE | DOT CODE NUMBER | (X) | OCCUPATIONAL JOB TITLE | DOT CODE NUMBER |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| DATE OF REPORT | QUARTER GRADE | INSTRUCTOR/TEACHER (PRINT NAME AND SIGN) | | | SUPERVISOR REVIEW |
|---|---|---|---|---|---|
| 07/01/01 | B | J FOSS | | INITIALS | |

| INMATE NAME (LAST, FIRST, MI) | | CDC NUMBER | INSTITUTION |
|---|---|---|---|
| Hernandez, Jesse | ROOM #3379X | K-21110 | CMC-EAST |

CMC-VE-002 18/00/ 918    **DISTRIBUTION:** White-Central File, Canary-Education File, Pink-Counselor, Goldenrod-Inmate

D: 8/15

STATE OF CALIFORNIA
CDC-128E (Rev.1906)

## EDUCATION PROGRESS REPORT

DEPARTMENT OF CORRECTIONS

QUARTERLY CHECK-O

| CERTIFICATION UNITS IN COURSE | TOTAL | COMPLETED PRIOR TO THIS QUARTER |
|---|---|---|
| Vocational Title: | | |
| Academic Title: | | |
| Adult High School Title: | | |
| General Education Development: | | |

BEHAVIOR/ASSESSMENT
| | |
|---|---|
| Adaptability | S U |
| Conduct | S U |
| Cooperation | S U |
| Dependability | S U |
| Initiative | S U |

LIST SPECIFIC CERTIFICATION UNITS COMPLETED THIS QUARTER BY NAME:

REFERENCE SOURCES, ORIENTATION

| DATE INMATE ENROLLED | DATE INMATE TERMINATED | TERMINATION CODE | REASON FOR TERMINATION |
|---|---|---|---|

COMMENTS SPECIFIC TO COURSE:

FAMILY FINANCIAL MANAGEMENT", B. PRINC—P. DECIMALS, FRACTIONS & PERCENTAGES—B

VOCATIONAL EVALUATION OF EMPLOYABILITY

| (X) | OCCUPATIONAL JOB TITLE | DOT CODE NUMBER | (X) | OCCUPATIONAL JOB TITLE | DOT CODE NUMBER |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| DATE OF REPORT | QUARTER GRADE | INMATE NAME (LAST, FIRST, MI) | INSTRUCTOR/TEACHER (PRINT NAME AND SIGN) | CDC NUMBER | INITIALS | SUPERVISOR REVIEW |
|---|---|---|---|---|---|---|
| | B | | | | | INSTITUTION |

D:9/15

STATE OF CALIFORNIA
CDC 128-E (Rev.10/98)

### QUARTERLY CHRONO PAGE 2 OF 2

DEPARTMENT OF CORRECTIONS

## EDUCATION PROGRESS REPORT

| BEHAVIOR/ASSESSMENT | | CERTIFICATION UNITS IN COURSE | TOTAL | COMPLETED PRIOR TO THIS QUARTER |
|---|---|---|---|---|
| Adaptability | U | Vocational Title: _____ | | |
| Conduct | U | Academic Title: _____ | | |
| Cooperation | U | Adult High School Title: BUS. ED. | 13 | 4 |
| Dependability | U | General Education Development: | | |
| Initiative | U | | | |

LIST SPECIFIC CERTIFICATION UNITS COMPLETED THIS QUARTER BY NAME:

| DATE INMATE ENROLLED | DATE INMATE TERMINATED | TERMINATION CODE | REASON FOR TERMINATION |
|---|---|---|---|
| 03/07/01 | | | |

COMMENTS SPECIFIC TO COURSE:    Mr. Hernandez was absent one day for a visit.

FRACTIONS, DECIMALS & PERCENTAGES: B; ELECTRONIC PRINTING CALCULATOR: A; BEGINNING BUSINESS TYPING: B; KEEPING FINANCIAL RECORDS FOR BUSINESS: A.

### VOCATIONAL EVALUATION OF EMPLOYABILITY

Grade Period 07/01/01 through 09/30/01

| (X) | OCCUPATIONAL JOB TITLE | DOT CODE NUMBER | (X) | OCCUPATIONAL JOB TITLE | DOT CODE NUMBER |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

| DATE OF REPORT | QUARTER GRADE | INSTRUCTOR/TEACHER (PRINT NAME AND SIGN) | | SUPERVISOR REVIEW |
|---|---|---|---|---|
| 10/01/01 | B | J. FOSS | INITIALS | |

| INMATE NAME (LAST, FIRST, MI) | | CDC NUMBER | INSTITUTION |
|---|---|---|---|
| Hernandez, Jesse | ROOM # 5375X | K-21116 | |

CMC-VE-002 (8/00) 918    **DISTRIBUTION:** White-Central File; Canary-Education File; Pink-Originator; Goldenrod-Inmate

D: 10/15

STATE OF CALIFORNIA
CDC 101 (5/98)

WORK SUPERVISOR'S REPORT

DEPARTMENT OF CORRECTIONS

| GRADES | GRADES | GRADES |
|---|---|---|

| | | | |
|---|---|---|---|
| 1. EXCEPTIONAL | / | A. DEMONSTRATED SKILL AND KNOWLEDGE | / | F. TEAMWORK AND PARTICIPATION |
| 2 ABOVE AVERAGE | / | B. ATTITUEDE TOWARD FELLOW INMATES AND WORKERS | / | G. LEARNING ABILITY |
| 3. SATISFACTORY | / | C ATTITUDE TOWARD SUPERVISORS AND STAFF | / | H. USE OF TOOLS AND EQUIPMENT |
| 4. BELOW AVERAGE | / | D. INTEREST IN ASSIGNED WORK | / | I. QUALITY OF WORK |
| 5.UNSATISFACTORY | / | E. EFFORT DISPLAYED IN ASSIGNED WORK | / | J. QUANTITY OF WORK |

PAY STATUS : FROM : $ .24cents TO : $ .24cents Hour    FROM . JOB NO .    TO : JOB NO .

TOTAL # Hours Assigned :    Total # Hours Worked

| I / M POSITION # SER B.031 | DATE ASSIGNED 3-23-99 | ACTUAL WORK CONSISTS OF | PERIOD COVERED BY REPORT ( C 9 Apri - June 99 |
|---|---|---|---|

RECOMMENDED FOR :   ☐ REASSIGNMENT   ☒ RETAIN   ☐ PAY INCREASE   ☐ PAY DECREASE   INMATE'S INITIALS  x JH

COMMENTS ( IF MORE SPACE REQUIRED , USE REVERSE SIDE )

| SUPERVISOR NAME & SIGNATURE M. Train Voc Inst. | LENGTH OF SUPERVISION | LOCATION CODE BVSF | ETHNICITY other |
|---|---|---|---|
| INMATE'S NAME Hernandez | CDC NUMBER K21116 | INSTITUTION S.V.S.P. | DATE 8-4-1999 |

WHITE = I / M ASSIGNMENTS  /  YELLOW = SUPERVISOR /  PINK = INMATE

D: 11/15

STATE OF CALIFORNIA                                                                                      DEPARTMENT OF CORRECTIONS

**GRADE**
S = SATISFACTORY
U = UNSATISFACTORY

| ATTITUDE | | TOTAL CERTIFICATION UNITS IN COURSE: | |
|---|---|---|---|
| ADAPTABILITY | S | VOCATION (VOC) | 19 |
| CONDUCT | S | ADULT BASIC EDUCATION (ABE) | |
| COOPERATION | S | GENERAL EDUCATION DEVELOPMENT (GED) | |
| DEPENDABILITY | S | HIGH SCHOOL (H. SCH) | |
| INITIATIVE | S | ENGLISH SECOND LANGUAGE (ESL) | |

**TOTAL CERTIFICATION UNITS PRIOR TO THIS QUARTER:** 8

LIST SPECIFIC CERTIFICATION UNITS COMPLETED
V07.06.09 ROUTINE MAINTENANCE

| DATE STUDENT ENROLLED | DATE STUDENT TERMINATED | REASON FOR TERMINATION |
|---|---|---|
| 5-9-1998 | 3-23-1999 | assigned to teacher aid position in small engine |

COMMENTS.

~~DROP CHRONO~~
------------------------------

I/M HERNANDEZ WAS AN EXCELLENT STUDENT IN THE SMALL ENGINE PROGRAM. HE HAD A
POSITIVE ATTITUDE, AND COMPLETED LAB PROJECTS WITH GREAT PRIDE AND A JOB WELL
DONE. HERNANDEZ WAS UNASSIGNED AS A STUDENT AND PLACED AS A TEACHER AID
POSITION IN THE VOCATONAL SMALL ENGINE REPAIR CLASS. HERNANDEZ HAS BEEN A
ROLE MODEL FOR OTHER PEER STUDENTS IN THE CLASS.

| DATE OF CHRONO 3-23-99 | COURSE | | GRADE | INSTRUCTOR |
|---|---|---|---|---|
| ~~4-8-1998~~ | ~~VOC SMALL ENGINE REPAIR~~ | | A+ | MR. TRAINA |
| CDC NUMBER | NAME (LAST, FIRST) | DOB | INSTITUTION | CELL |
| K21116 | HERNANDEZ | S | S.V.S.P. | B4-111U |

**EDUCATION PROGRESS REPORT**                                          CDC 128-E (7/1

D:12/15

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS

**GRADE**
S = SATISFACTORY
U = UNSATISFACTORY

| ATTITUDE | | TOTAL CERTIFICATION UNITS IN COURSE: | |
|---|---|---|---|
| ADAPTABILITY | S | VOCATION (VOC) | 19 |
| CONDUCT | S | ADULT BASIC EDUCATION (ABE) | |
| COOPERATION | S | GENERAL EDUCATION DEVELOPMENT (GED) | |
| DEPENDABILITY | S | HIGH SCHOOL (H. SCH) | |
| INITIATIVE | S | ENGLISH SECOND LANGUAGE (ESL) | |

**TOTAL CERTIFICATION UNITS PRIOR TO THIS QUARTER:** 6

LIST SPECIFIC CERTIFICATION UNITS COMPLETED

V07.06.08                    08 IGNITION SYSTEMS

| DATE STUDENT ENROLLED | DATE STUDENT TERMINATED | REASON FOR TERMINATION |
|---|---|---|
| 5-9-1998 | | |

COMMENTS

    INMATE HERNANDEZ HAS BEEN SUCCESSFUL IN THE SMALL ENGINE REPAIR TRADE. HE HAS
COMPLETED ALL ASSIGNED TEXT BOOK ASSIGNMENTS ON TIME. HE HAS COMPLETED SEVERAL LAB
PROJECTS, SUCH AS, A GO-CART, ROTOR TILLER ENGINE REBUILD. HE HAS ASSISTED WITH BUILDING
SHOP TABLES AND HELPS OTHER STUDENTS. MR. HERNANDEZ IS AN OUTSTANDING STUDENT AND HAS A
POSITIVE ATTITUDE AND IS A POSITIVE ROLE MODEL FOR HIS PEERS.

| DATE OF CHRONO | COURSE | GRADE | INSTRUCTOR |
|---|---|---|---|
| 1-4-1999 | VOCATIONAL SMALL ENGINE REPAIR | S | MR. TRAINA |
| CDC NUMBER | NAME (LAST, FIRST) | D.O B | INSTITUTION | CELL |
| K-21116 | HERNANDEZ, J | | S.V.S.P. | B4-111-U |

**EDUCATION PROGRESS REPORT**                                        CDC 128-E (7/1

D:13/15

17

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**GRADE**
S = SATISFACTORY
U = UNSATISFACTORY

**ATTITUDE**

| | | **TOTAL CERTIFICATION UNITS IN COURSE:** | |
|---|---|---|---|
| ADAPTABILITY | S | VOCATION (VOC) | 19 |
| CONDUCT | S | ADULT BASIC EDUCATION (ABE) | |
| COOPERATION | S | GENERAL EDUCATION DEVELOPMENT (GED) | |
| DEPENDABILITY | S | HIGH SCHOOL (H. SCH) | |
| INITIATIVE | S | ENGLISH SECOND LANGUAGE (ESL) | |

**TOTAL CERTIFICATION UNITS PRIOR TO THIS QUARTER:** 03

LIST SPECIFIC CERTIFICATION UNITS COMPLETED

~~XXXX06XXKX0XX0XXXX~~ V07.06.04 , .05, .06, .07

| DATE STUDENT ENROLLED | DATE STUDENT TERMINATED | REASON FOR TERMINATION |
|---|---|---|
| 5-9-1998 | | |

COMMENTS.

Inmate Hernandez has successfully completed book assignments and Small Engine lab projects. He has done an outstanding job working on a minibike and Go Cart rebuilding projects. He is very helpful and assits other students with projects. He has good attendence and completes all assigned task.

| DATE OF CHRONO | COURSE | | GRADE | INSTRUCTOR | |
|---|---|---|---|---|---|
| 9-30-98 | Voc. Small Engine Repair | | SAT | Mr. Traina *M.T.* | Jc |
| CDC NUMBER | NAME (LAST, FIRST) | D.O.B | INSTITUTION | | CELL |
| K-21116 | Hernandez. J | | S.V.S.P | | B4-111-U |

**EDUCATION PROGRESS REPORT**

CDC 128-E (7/89)

D: 14/15

TE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS

**GRADE**
S = SATISFACTORY
U = UNSATISFACTORY

| **ATTITUDE** | | **TOTAL CERTIFICATION UNITS IN COURSE:** | |
|---|---|---|---|
| ADAPTABILITY | S | VOCATION (VOC) | 19 |
| CONDUCT | S | ADULT BASIC EDUCATION (ABE) | |
| COOPERATION | S | GENERAL EDUCATION DEVELOPMENT (GED) | **TOTAL CERTIFICATION** |
| 'EPENDABILITY | S | HIGH SCHOOL (H. SCH) | **UNITS PRIOR TO THIS** |
| INITIATIVE | S | ENGLISH SECOND LANGUAGE (ESL) | **QUARTER:** 0 |

.T SPECIFIC CERTIFICATION UNITS COMPLETED
    V07.06.01,  .02, .03.

| TE STUDENT ENROLLED | DATE STUDENT TERMINATED | REASON FOR TERMINATION |
|---|---|---|
| 5-9-1998 | | |

MMENTS
    I/M HERNANDEZ HAS SUCCESSFULLY COMPLETED BOOK ASSIGNMENTS, AND
SMALL ENGINE LAB PROJECTS . HE HAS DONE AN OUTSTANDING WORKING ON A
RIDING LAWNMOWER PROJECT WITH ANOTHER STUDENT. HERNANDEZ HAS A POSITIVE
ATTITUDE AND WORKS WELL WITH OTHERS. HE HAS GOOD ATTENDANCE AND COMPLETES
ASSIGNED TASKS ON TIME.

| ATE OF CHRONO | COURSE | | GRADE | INSTRUCTOR | |
|---|---|---|---|---|---|
| 6-30 1998 | VOC. SMALL ENGINE REPAIR | | S | MR. TRAINA | |
| DC NUMBER | NAME (LAST, FIRST) | D.O.B | INSTITUTION | | CELL |
| K21116 | HERNANDEZ, J | | S.V.S.P. | | B4-111u |

**EDUCATION PROGRESS REPORT**                          CDC 128-E (7/89)

D: 15/15



SUMMARY8 Cover Page of 1998 CDC 115 w/
Notation of Restored Credits.

EXH "E" — COVER

STATE OF CALIFORNIA                                                                 DEPARTMENT OF CORRECTIONS

# RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | RELEASE/BOARD DATE | INST | HOUSING NO | LOG NO. |
|---|---|---|---|---|---|
| K-21116 | HERNANDEZ | HGPP 9-16-2006 | S.V.S.P. | B4-111 | FB-98-02-02 |

| VIOLATED RULE NO(S) | SPECIFIC ACTS | LOCATION | DATE | TIME |
|---|---|---|---|---|
| 3005(c) | Mutual Combat | Fac. B Yard | 02-14-98 | 1930 |

CIRCUMSTANCES On Saturday, February 14, 1998, at approximately 1930 hours, while performing my duties as Facility B S
& E #1, I was outside Building #4 supervising the evening meal release of only White, Hispanic and Other inmates due
to controlled feeding and observed two (2) inmates, identified as Inmate Hernandez (K-21116, B4-111) and Inmate McDonald
(C-46512, B4-213) striking each other in the upper body and head area with their fists. I immediately yelled, "Get
down!" and ran to the area of the altercation. As I approached I again ordered the combatants to get down, the inmates
did not comply. I then unholstered my Oleoresin Capsicum spray and warned the combatants that O.C. would be utilized,
the combatants continued their actions. I then applied two (2), one (1) second bursts of O.C. pepper spray to the nose
and lower facial area of Inmate McDonald. I then applied one (1), one (1) second burst of O.C. pepper spray to the
nose and facial area of Inmate Hernandez. I proceeded to pull the two (2) inmates apart and placed Inmate Hernandez
in handcuffs. Correctional Officer R.E. Council responded and placed Inmate McDonald in handcuffs. Correctional Officer
R. McGowan escorted Inmate Hernandez to the Facility B Medical Clinic for evaluation and decontamination from exposure
of O.C. pepper spray. Officer Council escorted Inmate McDonald to the Facility B Program Office holding cell. Subject
is aware of this report.

| REPORTING EMPLOYEE (Typed Name and Signature) | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|
| ▶ J. ROMO, Correctional Officer | 2/17/98 | Fac. B S & E #1 | S/M |

| REVIEWING SUPERVISOR'S SIGNATURE | DATE | ☐ INMATE SEGREGATED PENDING HEARING | | |
|---|---|---|---|---|
| ▶ G. LEWIS, Sergeant | 2-16-98 | DATE N/A | LOC N/A | |

| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO |
|---|---|---|---|---|
| ☐ ADMINISTRATIVE | D-61-98 | 2/17/98 | A B FERNANDEZ | ☐ HO ☐ SHO ☐ SC ☐ FC |
| ☒ SERIOUS | | | | |

COPIES GIVEN INMATE BEFORE HEARING

| ☒ CDC 115 | BY: (STAFF'S SIGNATURE) | DATE 2/19/98 | TIME 1032 | TITLE OF SUPPLEMENT CDC 7219 MEDICAL REPORT |
|---|---|---|---|---|
| ☒ INCIDENT REPORT LOG NUMBER SVP-FBY 98-02-0082 | BY: (STAFF'S SIGNATURE) | DATE 2/19/98 | TIME 1032 | BY: (STAFF'S SIGNATURE) / DATE 2/19/98 / TIME 1032 |

HEARING The purpose of this hearing was explained to Inmate Hernandez, who states his health is good. He was advised he
will receive a complete copy of the CDC 115 upon final audit of the Chief Disciplinary Officer. He was also advised of
his right to appeal, the methods of appealing and credit restoration procedures. Inmate Hernandez was not assigned a
Staff Assistant. Inmate Hernandez waived assignment of the Investigative Employee, as documented on the CDC 115A, by his
signature in the appropriate areas. Inmate Hernandez did not request any additional materials/evidence to be present at
his hearing, nor did he request any staff or inmate witnesses to be called upon. Inmate Hernandez acknowledges receiving
copies of all relevant documents more than 24 hours to his hearing. The charges have been read aloud, with Inmate
Hernandez acknowledging his understanding of said charges.

Plea: Inmate Hernandez plead Not Guilty and made the following statement, "I shook hands with Inmate McDonald and I
tripped and fell."

Findings: This SHO finds Inmate Hernandez Guilty of CCR, Section 3005(c), specifically, "Mutual Combat." This finding
is based on the preponderance of evidence which substantiates the charge. (Findings Continued on Supplemental page 2)

Disposition: Inmate Hernandez is assessed 90 days of credit forfeiture in accordance with a Division "D" offense.
Counseled, warned and reprimanded.

REFERRED TO ☐ CLASSIFICATION   ☐ BPT/NAEA

| ACTION BY: (TYPED NAME) | SIGNATURE | DATE | TIME |
|---|---|---|---|
| S.S. SHIPMAN, Correctional Lieutenant | ▶ 3-6-98 | 3/6/98 | 12:00 |

| REVIEWED BY: (TYPED NAME) | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE | DATE |
|---|---|---|---|
| J.M. MATTINGLY, Facility Captain | 03-09-98 | ▶ E.E. TINGEY, Associate Warden | 3/9/98 |

| ☒ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | BY: (STAFF'S SIGNATURE) ▶ | DATE 3/10/98 | TIME |
|---|---|---|---|

CDC 115 (7/88)

E:1/1



EXHIBIT "F"

SUMMARY: Amended Psych Report

EXH "F"—COVER

INMATE COPY

## AN ADDENDUM
## TO A PSYCHOLOGICAL EVALUATION
### DATED 1/18/06

NAME:              **HERNANDEZ, JESSE**
CDC#:              **K-21116**
DATE:              **4/26/06**

Mr. Hernandez appealed the psychological evaluation by Dr. Laura Petracek, because it had several errors in it. His appeal was granted. As a result, he was given a new interview to correct those errors. He was interviewed for 90 minutes.

I.    **IDENTIFYING INFORMATION:**

Mr. Hernandez noted several errors under "Identifying Information." He is 47 years of age. He is not Hispanic, but he has an Italian and Indian background. He is listed as "other." He is not a Catholic, but is a Christian. The Psychological Evaluation, dated 1/18/06, was his initial evaluation, and as a result, there were no prior board reports to which to refer.

**VOCATIONAL:**

Mr. Hernandez is a skilled floor contractor. However, he has not been trained as an electrician and as a dry wall installer. This information was in error.

**FAMILY HISTORY:**

It is not true that he was born in Mexico. It is not true that the primary language spoken at home was Spanish, and that since then he has learned English.

**MARITAL HISTORY:**

It is not true that there is one incident of domestic violence with Rhonda. There was no domestic violence.

**MILITARY HISTORY:**

He served in the Army Airborne in 1977. He injured his back, and he was given a medical discharge. He received an honorable discharge.

F:1/4

K-21116
4/26/06
PAGE 2

### SUBSTANCE ABUSE HISTORY:

Mr. Hernandez used methamphetamines from 1991 to 1992, when he was dating victim Christine Wolf. She has a history of methamphetamine use. He stopped and has never used since. He disagrees with the description of substance abuse, because he stated that he never really abused methamphetamines, but he did use them.

### CURRENT DIAGNOSTIC IMPRESSION

Mr. Hernandez disagrees with the diagnosis of "Methamphetamine Abuse by History, in institutional remission."

**XII.    REVIEW OF LIFE CRIME**

Mr. Hernandez stated that he is innocent of the charges. He stated that he was falsely accused. He is anxious to prove his innocence. He is willing to take a polygraph examination.

**XIII.    ASSESSMENT OF DANGEROUSNESS**

Mr. Hernandez disagrees with the assessment that violence risk is slightly higher than the average citizen. He notes that he has no criminal record, and he has no disciplinaries. I agree, based upon his record, he does not appear to impose any more risk to society than the average citizen.

M. Macomber, Ph.D.
Correctional Psychologist
Correctional Training Facility, Soledad


B. Zika, Ph.D.
Senior Psychologist
Correctional Training Facility, Soledad

D:    4/26/06
T:    4/27/06

F:2/4

INMATE COPY

NAME : Hernandez                          CDC # K Z1116          CDC 128-B

**In preparation for the Schedule Board of Prison Terms Lifer Prisoner Hearing:**

☐   No accommodation is required per the Armstrong II Remedial Plan.

☐   Accommodation to effectively communicate is required per Armstrong II Remedial Plan and was accomplished by _____

☒   I have received a copy of the Life Prisoner Hearing Psychiatric Report

Date 5/1/06   _____              MARTHA E. GLEASON, Ph.D.
              Inmate Signature / CDC #            CTF-STAFF PSYCHOLOGIST
                                                  Staff Signature P.O. BOX 686
              Institution: CTF – Soledad          128-B General Chrono SOLEDAD, CA 93960



F: 3 /4

Correctional Training Facility*** CTF  C  ***
The Master Ducat list for *Monday, May 01, 2006*
Please Release the Following Inmates to the Destination(s) Indicat

# Priority Ducats

## 2ND FLOOR INFIRMARY

*Requested by: DAVILA M*          4188

| PHIFER | E66539 | WOODS | CW / | 206L | CWG2 | 0730 |
|--------|--------|-------|------|------|------|------|
| SHOULD | F03575 | WOODS | DW / | 02L | BRCI | 0800 |
| ELLIS | H23217 | WOODS | EW / | 121L | EWG3 | 0800 |
| PHENGM | T75883 | WILCOX M | GD / | 009U | PKIT | 0800 |
| HERRER | H21026 | WILCOX M | GW / | 323U | ESL2 | 0900 |
| MOSLEY | P66115 | WOODS | YW / | 307U | PCUL | 1000 |
| MORGA | D28633 | WILCOX M | GD / | 041U | DH2S | 1000 |
| SANDER | D02433 | WOODS | FW / | 104L | AIC | 1000 |
| WHEATO | D61508 | WOODS | EW / | 128L | GED | 1000 |
| ANDERS | C39221 | WILCOX M | FW / | 218L | PAI | 1100 |

## 2ND FLOOR INFIRMARY

*Requested by: HANSON J*          4179

| WOODS | J04537 | KATZ | FW / | 343U | A3-1 | 0800 |
|-------|--------|------|------|------|------|------|
| WILEY | V41095 | TALBOTT | YW / | 239L | YWG3 | 0830 |
| MISITA | D40505 | TALBOTT | EW / | 202L | EDU1 | 0830 |
| HALL | V81901 | TALBOTT | CW / | 126U | BRCI | 0900 |
| AINSWO | H76014 | GLEASON, | DW / | 133L | A2-3 | 1300 |
| SIRAT | P78847 | KATZ | GW / | 110U | GYM3 | 1300 |
| MILLER | C13017 | KATZ | FW / | 230U | ATRA | 1330 |
| CLARK | E49365 | GLEASON, | ZW / | 115U | DH1S | 1430 |
| MITCHE | C41795 | KATZ | ED / | 026L | EDI | 1500 |
| WILLIA | H60006 | TALBOTT | GD / | 051U | GYM2 | 1530 |
| HERNAN | K21116 | GLEASON, | GW / | 104U | GED | 1530 |

## 2ND FLOOR INFIRMARY

*Requested by: TORRES R*          4340

| WRIGHT | V67191 | EVAL | FW / | 359A | ATRA | 0945 |
|--------|--------|------|------|------|------|------|
| HERRER | T20002 | EVAL | YW / | 130U | DH1S | 1015 |

## BPT COMPLEX RM

*Requested by: TORRES R*          4340

| PLAZA | H12371 | BPT HEARI | FW / | 338U | MCUT | 1200 |
|-------|--------|-----------|------|------|------|------|
| MORGA | H85828 | BPT HEARI | FW / | 216L | FWW2 | 1200 |
| JONES | E40401 | BPT HEARI | GW / | 319L | INMA | 1400 |
| LANG | C28866 | BPT HEARI | FW / | 242U | VPRF | 1400 |

F: 4/4

## PROOF OF SERVICE BY MAIL

(C.C.P.  §§1013A, 2015.5)

STATE OF CALIFORNIA )
                     ) SS.
COUNTY OF MONTEREY )

I, PAUL HERBE (P.04364) _____, am a resident of the State of California,

County of Monterey. I am over the age of 18 years and I ~~am~~/am not  a party to the within action.

My ~~business~~/residence  address is P.O. Box 689, Soledad, California, 93960-0689

On December 20TH _____, 20 06 _____. I served the foregoing:

Petition for Writ of Habeas Corpus (for party so designated as Petitioner)

on the parties listed below by placing a true copy thereof enclosed in a sealed envelope with postage

fully prepaid in the United States mail at Soledad, California, addressed as follows:

ATTN: Clerk of the Court          Bill Lockyer, Attorney General, et al
San Diego County Superior Court   c/o Office of the Attorney General
220 W. Broadway                   P.O. Box 85266
San Diego, CA 92112-2724          San Diego, CA 92186-5266
Mailed to P.O.Box 122724
San Diego CA 92112-2724

There is regular delivery service by the U.S. Postal Service between the place of mailing

and the places so addressed.

I declare under the penalty of perjury under the laws of the State of California that the

foregoing is true and correct.

Executed this 20TH day of December _____, 20 06 _____, at

Soledad, California.

/S/ Paul R. Herble