# EXHIBIT 3
# Part 3 of 3

40

1   two of the tape.  One tape was running faster

2   than the other.  And the one I kept glancing at

3   to make sure we had plenty of time wasn't the

4   one that ran out, it was the other one.

5          INMATE HERNANDEZ:  Yes sir.

6          ATTORNEY PHILLIPS:  We were just talking

7   about that last question that you asked him.  He

8   indicates that he thinks that he hasn't been

9   taking any antidepressants since about October

10  of 2004.

11         DEPUTY COMMISSIONER SMITH:  Okay.  So

12  you're thinking that's probably the most recent?

13         INMATE HERNANDEZ:  That was the most

14  recent.  It was a very mild, the smallest amount

15  possible in the antidepressant category.

16         DEPUTY COMMISSIONER SMITH:  Now since

17  you've been incarcerated you completed the 12

18  week Christian Basic class and you're on the

19  waiting list now.  Have you been involved in any

20  other self-help programs other than that that I

21  overlooked?

22         INMATE HERNANDEZ:  In Salinas Valley in

23  '97 and '98 I participated in a Success After

24  Parole program, which I received a chrono for.

25  I also took a video course of anger management,

26  which I also received a chrono for.

27         DEPUTY COMMISSIONER SMITH:  And when was

41

1   that?

2        INMATE HERNANDEZ:  That was also I

3   believe in '97 and '98.

4        DEPUTY COMMISSIONER SMITH:  Is there

5   anything more current than that?

6        INMATE HERNANDEZ:  No sir.

7        DEPUTY COMMISSIONER SMITH:  Is there a

8   reason why nothing more current?  Keeping in

9   mind, of course, that you're on, you've gotten

10  on the waiting list.

11       INMATE HERNANDEZ:  Which is what, yeah,

12  I'm on a waiting list.  I mean, I basically have

13  participated when it's been available.  And as

14  you've indicated earlier, due to circumstances

15  beyond our control sometimes those courses are

16  deleted or delayed for one thing or another.

17       DEPUTY COMMISSIONER SMITH:  Any other

18  things that we should be aware of regarding your

19  adjustment that I haven't addressed?

20       INMATE HERNANDEZ:  Not that I can think

21  of at this time.

22       DEPUTY COMMISSIONER SMITH:  As I

23  indicated earlier with parole plans, if

24  something comes to mind during the course of the

25  hearing please let me know so that we can get

26  that on the record.

27       INMATE HERNANDEZ:  Okay sir.

42

1    DEPUTY COMMISSIONER SMITH:  Okay.  I'm

2    going to review the psychological evaluation.

3    And as I indicated I'll certainly give your

4    counsel an opportunity to make any comments

5    regarding the evaluation that counsel would like

6    to.  I'm going to provide just kind of an

7    overview.  The evaluation is dated January of

8    2006, it was prepared by Dr. Laura Petracek, P-

9    E-T-R-A-C-E-K.  And moving to page three, since

10   page one and two basically goes into the history

11   that either establishes the purpose of the

12   evaluation or goes into Mr. Hernandez's personal

13   history, which has already been addressed and

14   I'm not going to revisit any of that.  But

15   again, certainly if there is anything in there

16   that you'd like to bring back up for the record

17   you'll have that opportunity.  Under substance

18   abuse history the doctor writes that in late

19   1991 until he was incarcerated he had a history

20   of methamphetamine abuse.  That he had been

21   involved in CCCMS since August of 2005.  That

22   appears to be in contradiction to the Board

23   report.  And from our earlier conversation it

24   appears that the 2005 is a more accurate date.

25   Under current mental status and treatment needs

26   the doctor writes Mr. Hernandez's major style of

27   coping with events and his own shortcomings

43

1   appears to be to deny any responsibility and to

2   project blame onto others. Under diagnosis

3   under Axis I the doctor writes that there is

4   methamphetamine abuse by history that's in

5   institutional remission. Under Axis IV,

6   psychosocial stressors as a result of

7   incarceration. That tends to be a standard

8   diagnosis. And then the GAF score, the Global

9   Assessment of Functioning, based on a scale of 0

10  to 100 is 75, which is relatively high. Under

11  assessment of dangerousness on page four the

12  doctor writes that within a controlled setting

13  Mr. Hernandez's risk is minimal compared to the

14  average inmate. If released to the community

15  his violence risk is slightly higher compared to

16  the average citizen. And significant risk

17  factors and precursors to violence would be his

18  past alcohol and substance abuse. And a relapse

19  would increase his risk of violence and undo the

20  gains he has made. Counsel?

21      ATTORNEY PHILLIPS: We do have a number

22  of things that we'd like to address regarding

23  this mental health evaluation. And one of the

24  things that I'll talk about is contained in a

25  letter that I wrote to Dr. Bill Zika. But

26  before I hand that to you I would just note that

27  there -- Our main problem is that there are a

44

1    number of inaccuracies in the small detail as

2    well as the background that the doctor gathered

3    here, or apparently gathered here.  Because the

4    inaccuracies exist we wonder just exactly how

5    much weight can be given to the mental health

6    evaluation.  And of course I think in the

7    position that the Board is in right now you

8    probably need to put quite a bit of weight on

9    this sort of thing.  This is a document that

10   should be as accurate and as objective as

11   possible.  And let's just sort of start through

12   here.  There are -- There are a number of things

13   that are purported to be gathered from

14   Mr. Hernandez that he says were not gathered

15   from him and in fact are not correct.  In III,

16   Education and Vocational it says that he

17   completed vocational training in a couple of

18   different areas there.  He has not received

19   vocational training nor has he ever claimed to

20   have had vocational training in the areas of

21   electrician or drywall installer.  We're not

22   really sure where that came from.

23        DEPUTY COMMISSIONER SMITH:  Counsel, let

24   me note that I've already mentioned that he has

25   completed one vocation and that's in small

26   engine repair.

27        ATTORNEY PHILLIPS:  Yes.

45

1          DEPUTY COMMISSIONER SMITH:  So we're --
2     That's why I didn't go into a lot of the
3     history.  Because based on the Board report and
4     the conversation we have we feel that over and
5     above whatever may be in the psychological
6     evaluation we have a pretty clear and complete
7     picture of Mr. Hernandez's background and
8     adjustment.  Would you concur, Commissioner?
9          PRESIDING COMMISSIONER DAVIS:  Yes.  But
10    I think your point is that you're pointing out
11    areas of mistakes leading to what you believe to
12    be a larger issue of the overall accuracy of the
13    document.
14         ATTORNEY PHILLIPS:  That's correct.
15         PRESIDING COMMISSIONER DAVIS:  Okay.
16         ATTORNEY PHILLIPS:  I will add that he
17    did have a contractor's license in that floor
18    covering area but he did claim to have
19    electrician or drywall installer experience.
20    Under IV, Family History it says, Inmate
21    Hernandez claims that he is the oldest of seven
22    children born to his parents in Mexico.  That's
23    incorrect and he'll see that it doesn't go along
24    with what has already been said in II, Inmate
25    Hernandez was born in San Antonio, Texas.  He
26    did not say that he was one of seven born in
27    Mexico nor that they ever lived in Mexico.

46

1    Going on in that same subdivision under Family
2    History.  The primary language spoken at home
3    was Spanish but since that he's learned English.
4    That also is not correct nor was it provided by
5    Mr. Hernandez.  He was not a native speaker of
6    Spanish at home.  Under VI it says that he
7    states that he had become a workaholic, and it
8    ends that sentence with, and there was one
9    incidence of domestic violence with Rhonda.  He
10   says that did not come from him.  He never
11   claimed or provided information of domestic
12   violence with Rhonda.  Under VII it says none,
13   but as you've already noted in fact he was in
14   the 82nd Airborne and was injured in one of his
15   jumps.  Under X you've already noted the
16   difference in that date there, the August 2005
17   date.  Perhaps the psychologist here is using
18   some other criteria for denoting whether someone
19   is on CCCMS but he says to the best of his
20   recollection the last medication he received
21   there was in about October of 2004.  And then on
22   the front page of -- Let's me see if that's --
23   On the front page it describes him as a 48-year-
24   old Hispanic.  Of course his name is Hispanic.
25   He does not -- He does not consider himself of
26   Hispanic culture and he's never, he's never been
27   raised in a Hispanic culture.  But if one is

47

1    looking only at the name I suppose that would,

2    that would be a conclusion that one would draw.

3    And then the last -- The letter that I'm going

4    to present is the result of some conversations

5    that I had with Dr. Bill Zika the supervising

6    psychologist, and also my attempts to contact

7    psychologist Petracek.

8         DEPUTY COMMISSIONER SMITH:   Counsel, let

9    me comment if I can.

10        ATTORNEY PHILLIPS:   Yes.

11        DEPUTY COMMISSIONER SMITH:   We'll review

12   this letter when we go into deliberation.

13        ATTORNEY PHILLIPS:   Okay.

14        DEPUTY COMMISSIONER SMITH:   All right?

15        ATTORNEY PHILLIPS:   All right.   But based

16   upon the inaccuracies here I'm wondering about

17   the total conclusions that have been brought.

18   And one thing that the letter will show you is

19   that there were actually two Hernandez that were

20   evaluated on the same day by the same person

21   within about an hour-and-a-half of each other.

22   And so I am objecting to her comment number two

23   under Comments and Recommendations based upon

24   the fact that it appears she may have --

25        DEPUTY COMMISSIONER SMITH:   Confused?

26        ATTORNEY PHILLIPS:   Confused or crossed

27   over some of her information.   And so that's,

48

1   that's as much as I wanted to comment there.

2       DEPUTY COMMISSIONER SMITH:  As I

3   indicated we'll read your letter in detail

4   during deliberation.

5       ATTORNEY PHILLIPS:  Okay, thank you.

6       DEPUTY COMMISSIONER SMITH:  We'll

7   certainly take it into consideration.

8       ATTORNEY PHILLIPS:  All right, thanks.

9       DEPUTY COMMISSIONER SMITH:  We also send

10  out what are known as 3042 notices.  Those are

11  letters that go out to the various criminal

12  justice agencies that were involved in your

13  commitment.  We have a representative here from

14  the San Diego District Attorney's Office via the

15  video and has already been identified and she'll

16  be participating in the hearing in a short time.

17  We also have a letter that's dated March 9 of

18  2006 by Supervising Deputy District Attorney

19  Richard Sachs, S-H-C-S (sic).  And for procedure

20  I'm going to read that letter into the record.

21  It says:

22          "We are in receipt of a notice of

23          hearing for the above inmate's

24          parole suitability hearing

25          scheduled for February 2, 2006.  A

26          deputy district attorney from our

27          office will appear at the hearing

49

```
1          and orally represent our views in

2          opposition to a finding of parole

3          suitability.  Jesse Hernandez

4          stalked his ex-girlfriend,

5          Christine Wolf, after their

6          breakup.  The illegal acts

7          committed by Mr. Hernandez include

8          death threats, setting fires,

9          setting explosive devices at

10         various residences and shooting

11         crossbow arrows at his neighbors

12         and family members of Christine's

13         new boyfriend.  Hernandez's

14         behavior is as unsettling as it is

15         dangerous and in light of the

16         above we assert that Jesse

17         Hernandez represents an

18         unquestionable risk of harm to

19         society.  Accordingly, the People

20         of the State of California

21         respectively yet strongly oppose

22         parole.  Thank you for your

23         consideration of this letter."

24    And with that I'll return to Commissioner Davis.

25         PRESIDING COMMISSIONER DAVIS:

26    Mr. Hernandez, I noticed you came into the

27    system in late 1996, correct?
```

50

1        INMATE HERNANDEZ:  That's correct.

2        PRESIDING COMMISSIONER DAVIS:  Okay.  And

3    then you completed your Success After Parole and

4    Anger Management in '97, '98, both roughly in

5    the same time period.

6        INMATE HERNANDEZ:  That's correct.

7        PRESIDING COMMISSIONER DAVIS:  Then what

8    did you do between '98 and 2005 when you

9    completed your Christian Basic 12 course?

10        INMATE HERNANDEZ:  I participated just in

11    my job assignments at the time and tried to

12    focus in providing the best possible service

13    that I could.  And that was my focus in that

14    time period.

15        PRESIDING COMMISSIONER DAVIS:  Okay.  Is

16    the 12 week course, the Christian Basic course,

17    is that similar to the 12 step program for AA?

18        INMATE HERNANDEZ:  I would imagine not

19    because I'm not familiar with the AA 12 step

20    program.

21        PRESIDING COMMISSIONER DAVIS:  Can you

22    tell me with a little bit more specificity what

23    are some of the things.  You said part of it was

24    memorizing some parts of the program.  What

25    kinds of things were you required to memorize?

26    For example, it's 12 weeks.  Are there 12 steps

27    to this?

51

1          INMATE HERNANDEZ:  There wasn't.  There

2    was basically just study, open book study in

3    regards to different text.  And it was an

4    overall group setting to discuss, as I've stated

5    before, forgiveness and understanding of

6    reaction and growing as a productive individual.

7          PRESIDING COMMISSIONER DAVIS:  What did

8    you take away from it personally?

9          INMATE HERNANDEZ:  Personally was to

10   allow the past to be such as the past and live

11   each day with an understanding that we can all

12   contribute in one way or another and try to do

13   that in as best possible way as possible.  Which

14   is how I would like to believe my work ethics

15   show in the last ten years.

16         PRESIDING COMMISSIONER DAVIS:  Okay.

17   Commissioner Smith, do you have anything else?

18   Any other questions?

19         DEPUTY COMMISSIONER SMITH:  No, I don't

20   have any questions, thank you.

21         PRESIDING COMMISSIONER DAVIS:  District

22   Attorney Gust, do you have any questions that

23   you would like to ask through the panel?

24         DEPUTY DISTRICT ATTORNEY GUST:  Yes.

25   Would you please ask the prisoner when he

26   realized that he had shot a crossbow at the head

27   of a child?

52

1          PRESIDING COMMISSIONER DAVIS:  Well you

2   heard the question.  Are you willing to talk

3   about that, since you've already stated you're

4   not going to talk about anything to do with the

5   crime?

6          ATTORNEY PHILLIPS:  No, that would be a

7   little counterproductive to answer the question

8   after we've already elected not to discuss the

9   crime.

10          PRESIDING COMMISSIONER DAVIS:  All right.

11          DEPUTY DISTRICT ATTORNEY GUST:  Well, all

12   of my questions are fact-specific that evidently

13   the defendant is not going to be addressing so

14   I'll decline any further questioning through the

15   Board, thank you.

16          DEPUTY COMMISSIONER SMITH:  Thank you.

17          PRESIDING COMMISSIONER DAVIS:

18   Mr. Phillips, do you have any questions?

19          ATTORNEY PHILLIPS:  Questions

20   specifically of Mr. Hernandez?

21          PRESIDING COMMISSIONER DAVIS:  Of your,

22   yes.

23          DEPUTY COMMISSIONER SMITH:  Correct.

24          ATTORNEY PHILLIPS:  Well, I would like to

25   ask Mr. Hernandez to state for the Board, have

26   you tried to avail yourself, Mr. Hernandez, of

27   the programs that you could attend while you've

53

1    been incarcerated?

2         INMATE HERNANDEZ:  I believe I have as

3    much as possible.  We're all not absolutely

4    perfect in our abilities to access what might be

5    available.  However, the times that I did seek

6    that avenue I thought I was well-suited in my

7    attempts.

8         ATTORNEY PHILLIPS:  I think one of the

9    concerns, well the huge concern is going to be

10   exactly what kind of a danger you are to the

11   people that were the described victims in this

12   case and also to society in general.  Do you

13   expect to be able to have any relationship with

14   any of the people that were named in the case

15   for which you were convicted?

16        INMATE HERNANDEZ:  I have no intention of

17   contacting or seeking out any of the individuals

18   that were involved in the convictions that I

19   received.  I wholeheartedly believe that the

20   environment that my sister and my brother-in-law

21   can provide with a nurturing church environment

22   and the programs that they have will be a very

23   positive reinstatement into my life out there.

24   I just -- I would like to put this behind me.  I

25   have no animosity and I would just like to

26   reenter society and become productive.  And as

27   I've stated, you know, I'm a workaholic.  I

54

1   enjoy the idea of being helpful.  And not

2   necessarily the money but just to stay busy and

3   help, like I say, as I have in the past.

4        ATTORNEY PHILLIPS:  What kind of plans do

5   you have to incorporate counseling into your

6   life once you are released?

7        INMATE HERNANDEZ:  It's my understanding

8   through my sister that the church, Carlton Hills

9   Baptist Church, has programs that will re-

10  introduce me into a very productive life and

11  mentoring if called upon.  They have a very

12  structured program in regards to serving on

13  different organizations for organizing softball,

14  study groups and Sunday schools.  I think that

15  would be a very active -- I intend on being a

16  very active participant of those, those types of

17  programs and just to reconnect with my family.

18       ATTORNEY PHILLIPS:  How about alcohol and

19  drug counseling?

20       INMATE HERNANDEZ:  Drug counseling and

21  alcohol are also offered in this church group

22  and I intend on participating in any programs

23  that will help continue my sobriety if allowed

24  to be paroled.

25       ATTORNEY PHILLIPS:  That's all the

26  questions I had.

27       DEPUTY COMMISSIONER SMITH:  Thank you.

55

1          PRESIDING COMMISSIONER DAVIS:  All right,
2     moving to closing statements, District Attorney
3     Gust.

4          DEPUTY DISTRICT ATTORNEY GUST:  Thank
5     you.  As you have recited in the record our
6     office is opposed to the parole of this
7     defendant or this prisoner based on both the
8     nature of the offense, the degree of violence
9     and the overriding concern for public safety
10    that we believe this inmate poses if released
11    into the public.  With respect to the nature of
12    the offense itself, the acts in this case
13    involve acts of violence on particularly
14    vulnerable victims, including children and the
15    elderly.  Even though the targeted victim was an
16    adult woman the actual victim was a young girl.
17    The inmate used a crossbow as a deadly weapon
18    and flammable materials as accelerants in his
19    arsons and putting the gas jug on the Sutton
20    residence.  With respect to the danger to the
21    community that we feel this inmate places upon
22    the public are the numerous criminal acts of
23    stalking, arson, vandalism and the life crime of
24    attempted murder.  For a period of months this
25    defendant -- sorry I keep calling him a
26    defendant -- the inmate, he stalked Christine
27    Wolf and anyone and everyone who came in his

56

1   path between him and her ultimately became a
2   victim.    Ms. Wolf's elderly grandmother had her
3   house, her doorstep set on fire.    Her neighbor's
4   -- The inmate's neighbors the Suttons had
5   crossbow bolts put through the bedroom of their
6   three-year-old.    And not only that within their
7   home was a completely disabled five-year-old
8   child with gas from the jug going down the
9   gutters outside that child's bedroom after the
10  inmate had placed the flammable liquid on the
11  roof.    The life offense involves a 12-year-old
12  girl who happened to be at her grandfather's
13  tending roses when a crossbow bolt narrowly,
14  very narrowly missed her head.    She probably
15  doesn't even realize how close she came to dying
16  that day.    This defendant engaged in a lengthy
17  course of criminal conduct.    He fixated and
18  obsessed on Ms. Wolf and targeted anyone who was
19  in his path between her and him.    And he has no
20  apparent insight into his criminality.    And
21  unfortunately our building is being evacuated
22  due to a fire drill so I'll conclude my comments
23  there.    I'm going to have to bow out of the
24  proceedings at this point, I'm sorry.    I have an
25  investigator standing here making me leave.
26          PRESIDING COMMISSIONER DAVIS:    All right,
27  thank you.

57

1          DEPUTY DISTRICT ATTORNEY GUST:   All

2    right, thank you.

3          DEPUTY COMMISSIONER SMITH:   Good luck

4    with the drill.

5          DEPUTY DISTRICT ATTORNEY GUST:   Thank

6    you.

7          PRESIDING COMMISSIONER DAVIS:   Okay,

8    Mr. Phillips.

9          ATTORNEY PHILLIPS:   Well, certainly when

10   you talk about the commitment offense, offenses,

11   we can't take exception to how serious the kind

12   of conduct that's described in those offenses

13   is, and we don't wish to.  The Board has to

14   accept those convictions for what they are.

15   They are convictions and Mr. Hernandez stands

16   convicted of those particular crimes.  So I

17   can't tell you that anything that Ms. Gust has

18   said should be discounted or taken lightly.  It

19   certainly should not.  I think what the Board

20   can look to, though, is the fact that those

21   events took place during a relatively short

22   period of time of very high volatility in the

23   relationship between Mr. Hernandez and Ms. Wolf.

24   He has stated in some of the records that were

25   already read into this record that he did not do

26   the things that she describes of him and that

27   there was some misdoing on her part or on the

58

1    part of some of the people that she knew.    In
2    any case, that was ten years ago.    It was
3    actually a little more than ten years ago.    And
4    Mr. Hernandez was taken into custody in January
5    of 1996, if I have that day correct, and has
6    been in custody since that date.    Over the term
7    of those ten years he has changed and he has
8    attempted to atone for whatever situation there
9    was back in 1995.    He's attempted to adjust to
10   the very best of his ability to the prison
11   system and he's done that in at least three
12   different institutions that have been talked
13   about here today.    He does have in his future
14   plans a decent living arrangement.    He has a
15   supportive family, a sister and a brother-in-
16   law.    He has some extended family who are very
17   interested in his welfare, as evidenced by the
18   letter from his niece and some of the other
19   friends and people that have known him for many,
20   many years.    His brother-in-law has a
21   contractor's license and is able to put him to
22   work.    He will be able to do things that he
23   already has some experience with, in fact a
24   significant amount of experience with.    He'll be
25   able to make a living and capitalize not only on
26   the training he had before he came into the
27   system but also on the training that he's

59

 1    received while he's been in the system.   He's
 2    completed the business education clerical class,
 3    the small engine repair class.   He's volunteered
 4    for counseling in a number of different areas
 5    including anger management.   He's taken the -- I
 6    don't recall the name of it now but I'll call it
 7    the religious class.   The 12 week class that he
 8    said it took him 23 weeks to do because of
 9    difficulties in having the meetings.   But he did
10    those things and he has learned from them.   He
11    has no desire whatsoever to have any
12    relationship with any of the people that made
13    these allegations in the first place.   He has no
14    desire to have any negative effect on any life
15    that's out there.   And he only wants to have
16    positive effects on all the people he knows.   I
17    would ask that you take a look at the
18    difficulties we had with the mental health
19    evaluation.   And I will tell you that he did
20    submit a 602 very early on that to try to get it
21    corrected, was unable to get it corrected.   I
22    made several phone calls trying to track down
23    the doctor who did the mental health and was
24    unable to do that and finally spoke with
25    Dr. Zika.   So I wrote that letter as a result of
26    my conversation with Dr. Zika.   Dr. Zika's last
27    words to me were that he was going to try to get

60

1   the thing corrected because he said that he
2   could see the difficulties with it also.  And
3   I'll just close by saying that realizing that
4   the commitment offense is a very serious one and
5   realizing the emphasis that's placed these days
6   on safety in the home and the community and
7   elimination of these kinds of offenses.  Because
8   they are a sort of a domestic violence kind of
9   thing, even though I don't think I remember
10  seeing those exact words in the transcripts.
11  And realizing that there are a number of
12  difficulties with an inmate who is before the
13  Board for the very first time we'd ask that you
14  take a long hard look at the mental health
15  evaluation and realize that the ten years have
16  really meant something to Mr. Hernandez.  He
17  does want to make this or any chance that the
18  Board is willing to give him, he wants to make a
19  clean and fresh start.  Thank you.
20        DEPUTY COMMISSIONER SMITH:  Thank you.
21        PRESIDING COMMISSIONER DAVIS:  Okay,
22  Mr. Hernandez, this is your opportunity now to
23  address the panel directly and to tell us why --
24        DEPUTY DISTRICT ATTORNEY GUST:  Excuse
25  me, if I could just -- Could I just let you know
26  that I'm back?
27        PRESIDING COMMISSIONER DAVIS:  Welcome

61

1    back.

2            **DEPUTY DISTRICT ATTORNEY GUST:**    I got

3    back about five minutes ago.

4            **PRESIDING COMMISSIONER DAVIS:**    Okay, very

5    good.    I'm glad you could rejoin us.

6            **DEPUTY DISTRICT ATTORNEY GUST:**    Thank

7    you.

8            **PRESIDING COMMISSIONER DAVIS:**    Once

9    again, Mr. Hernandez, this is your opportunity

10   to address the panel directly to tell us why you

11   believe you are suitable for parole.

12           **INMATE HERNANDEZ:**    Commissioner Davis and

13   Commissioner Smith, the following statements are

14   presented to this panel in furtherance to a

15   supplemental persuasion in having this panel

16   make a parole suitability determination at

17   today's hearing.    First, I have been convicted

18   of attempt murder with a greater penalty.

19   provision of life with the possibility of

20   parole.    This crime is not separated into

21   degrees.    Secondly, the incarceration record

22   currently before this panel is believed to be

23   significantly relevant as I have not only been

24   in prison six years prior to the statutory

25   minimum eligibility date.    I have been

26   incarcerated ten years three months for the

27   charges of which I have been convicted.    I

62

1   recognize that the Board of Parole Hearings has

2   no obligation to apply time served on prior

3   determinate sentences to the life term.

4   However, the Board does receive the benefit of

5   observing the prison programming that is

6   behavior and expected reaffirmation that the BPT

7   may have otherwise needed a denial period to

8   further observe the evaluation.  I am imprisoned

9   and currently subject to the findings.  You

10  advised me of my rights to go to the court as

11  you don't have an appeal process governing

12  review.  Further, Mr. Chester Phillips is only

13  retained for this hearing.  At any time to go to

14  court I will take away from other expected

15  programs.  During the forthcoming reflection of

16  these proceedings I also hope you will consider

17  that in the six years six months of this

18  indeterminate sentence I have never received

19  from either the California Department of

20  Corrections and Rehabilitation or the Board of

21  Prison Hearings (sic) any advisement of what

22  other activities, programs or accomplishments I

23  should have completed in order to have a parole

24  base term set today.  For the limited purposes

25  of this hearing and the transcript's review I

26  present that the State of California case

27  against me can be barely analyzed to infer that

63

1   my allegations -- my alleged (phonetic)
2   actions caused a projectile to stick into a
3   house near a victim.  This was the minimum
4   element necessary to occur in which to convict
5   me.  Third, guilt or innocence today is not the
6   question.  The continuation of the American
7   justice system is the purpose.  As this panel
8   has stated, this hearing is being held under
9   regulations governing the hearing.  Punishment
10  for this crime is beyond the scope of just a
11  term of imprisonment being set.  I am
12  stigmatized by the conviction.  If I am
13  fortunate enough to become paroled I will have
14  numerous other restrictions and rights non-
15  felons enjoy as liberties.  Four,
16  notwithstanding this panel's use of the Penal
17  Code Section 3042, 3041 and 3041.5 to conduct
18  this hearing I also ask that this panel decide
19  -- decision reflect Penal Code 5078.3.  I would
20  like to believe that there is some significance
21  of a new attempt murder matrix.  The repeal of
22  the Title 15 language where BPT's have the term
23  of a life sentence offense itself seems
24  relevant.  If I'm given the opportunity to have
25  my term of imprisonment determined to a time in
26  the future the State of California and Ms. Tolle
27  should believe that a just punishment has been

64

1   imposed against the allegedly guilty.  It is

2   respectfully requested that in this panel's

3   forthcoming decision that every conceivable

4   reason be considered so that rehabilitation not

5   be -- repetition not occur.  I further ask that

6   this case go to the en banc review before

7   transcript finality date.  If it were proven

8   that I am not guilty tomorrow I would never be

9   made whole again.  I hold no anger, no animosity

10  towards any victim.  And I would just -- I would

11  just ask that you see that for what it is and

12  give me an opportunity to reenter into society

13  as a productive individual.  Thank you.

14        DEPUTY COMMISSIONER SMITH:  Thank you.

15        PRESIDING COMMISSIONER DAVIS:  All right.

16  We'll recess, it's three o'clock, for our

17  deliberation.

18                    R E C E S S

19                    --oOo--

20

21

22

23

24

25

26

27

65

```
1          CALIFORNIA BOARD OF PAROLE HEARINGS
2                  D E C I S I O N
3          DEPUTY COMMISSIONER SMITH:  We're back on
4   the record.  Everyone previously identified is
5   back in the hearing room.
6          PRESIDING COMMISSIONER DAVIS:  This is
7   the matter of Jesse Hernandez, CDC number
8   K-21116.  The panel reviewed all the information
9   received from the public and relied on the
10  following circumstances in concluding the
11  prisoner is not suitable for parole and would
12  pose an unreasonable risk of danger to society
13  or a threat to public safety if released from
14  prison.  That is, first there are multiple
15  victims in separate incidences.  Christine Wolf,
16  James and Julie Sutton, Dan and Gary Tolle, and
17  finally T. Tolle, a 12-year-old victim, were all
18  victims of Mr. Hernandez.  The motive of this
19  crime remains inexplicable in that we still
20  don't have a clear understanding of why these
21  crimes occurred, except for Mr. Hernandez's
22  desire to control Ms. Wolf.  The prisoner has,
23  in terms of institutional behavior, programmed
24  in a limited manner while incarcerated.  In that
25  while you participated in programming in '97 and
26  '98 there was no significant or no indication of
27  JESSE HERNANDEZ K-21116 DECISION PAGE 1 03/26/06
```

66

1  any programming until 2005.  There is not --

2  That you have not participated in beneficial

3  self-help programs.  There was one serious

4  disciplinary action, a 115, in February of 1998

5  for mutual combat.  The psychiatrist's report

6  dated 1/20/06 by Laura Petracek is not totally

7  supportive in that it indicates that within a

8  controlled setting his risk is minimal compared

9  to the average inmate.  If released into the

10  community his violence risk is slightly higher

11  compared to the average citizen.  And

12  significant risk factors and precursors to

13  violence are his past alcohol and substance

14  abuse and a relapse would increase his risk of

15  violence or undo gains he has made.  Although he

16  has been disciplinary-free since his

17  incarceration he still denies any responsibility

18  for his crime and this evaluator feels that the

19  inmate needs to do some soul-searching before

20  being considered for release.  We also note that

21  in response to the 3042 letters that the

22  District Attorney is represented.  A

23  representative representing San Diego County has

24  appeared by teleconference and opposed the

25  prisoner's release.  In terms of remarks this

26  panel makes the following findings: The

27  JESSE HERNANDEZ K-21116 DECISION PAGE 2 03/26/06

67

1  prisoner's gains are recent and he must

2  demonstrate the ability to maintain gains over

3  an extended period of time.  Nevertheless we do

4  want to commend you, Mr. Hernandez, for being

5  disciplinary-free since 1998, for completion of

6  the Christian 12 week Basic course and the eight

7  laudatory chronos for exceptional work.  In a

8  separate decision the hearing panel finds it is

9  not reasonable to expect that parole would be

10  granted at a hearing during the following two

11  years.  The specific reasons are as follows.

12  That there are multiple victims from separate

13  instances, Christine Wolf, James and Julie

14  Sutton, Dan and Gary Tolle and T. Tolle, who was

15  a 12-year-old victim, were all victims of

16  Mr. Hernandez.  The motive for this crime

17  remains inexplicable in that we still do not

18  have a clear picture of the motive except for

19  Mr. Hernandez's desire to control Ms. Wolf.  The

20  prisoner has programmed in a limited manner in

21  that after participating in programs in '97 and

22  '98 he did not participate in programs again

23  until 2005.  There is one serious disciplinary

24  action in February of 1998 for mutual combat,

25  and that you have not sufficiently participated

26  in self-help programs.  We also note that the

27  **JESSE HERNANDEZ K-21116 DECISION PAGE 3 03/26/06**

68

1   psychiatrist's report dated 1/20/06 prepared by

2   Laura Petracek is not totally supportive in that

3   within a controlled setting he has a risk of

4   minimal -- the risk is minimal compared to that

5   of the average inmate.  If released into the

6   community his violence risk is slightly higher

7   compared to the average citizen.  Significant

8   risk factors and precursors to violence are his

9   past alcohol and substance abuse.  And a relapse

10  would increase his risk of violence and undo the

11  gains he has made.  Although he has been

12  disciplinary-free since his incarceration he

13  still denies any responsibility for his crime.

14  This evaluator feels that the inmate needs to do

15  some soul-searching before he is eligible for

16  release.  And that the release is opposed by the

17  District Attorney from San Diego County.  Under

18  remarks, the prisoner's gains are recent and he

19  must demonstrate the ability to maintain those

20  gains over an extended period of time.  The

21  panel recommends that Mr. Hernandez remain

22  disciplinary-free, that if available that you

23  participate in self-help programs.  If for some

24  reason the institution is locked down and those

25  programs aren't available, certainly the panel

26  looks favorably on any individual reading that

27  JESSE HERNANDEZ K-21116 DECISION PAGE 4 03/26/06

69

1  you would do.  And prepare book reports or

2  something that would show us that you have a

3  strong understanding of how those self-help

4  books have helped you prepare for release.  That

5  you cooperate with clinicians in any clinical

6  evaluation and that you continue to maintain and

7  update your vocational programming.  Counsel did

8  note errors in the psychological report.  The

9  panel has taken note of those errors and has

10  asked for a new psychological evaluation to

11  clear up any inconsistencies that might be

12  there.  And with that I want to wish you the

13  best of luck in your continued endeavors.

14  Commissioner Smith, do you have anything you'd

15  like to add?

16      DEPUTY COMMISSIONER SMITH:  Good luck,

17  Mr. Hernandez.  You're certainly on the right

18  track, going in the right direction.  Stay on

19  that track and you're going to be a much

20  stronger candidate as time goes on.  Good luck,

21  sir.

22      INMATE HERNANDEZ:  Commissioner Davis and

23  Deputy Commissioner Smith, thank you very much

24  for your time in my hearing.  I appreciate all

25  of your efforts.

26      DEPUTY COMMISSIONER SMITH:  You're very

27  JESSE HERNANDEZ K-21116 DECISION PAGE 5 03/26/06

70

1    welcome.  Thank you for the presentation that
2    you made, it was obviously well thought out.
3    And counsel, thank you.
4         ATTORNEY PHILLIPS:  You're welcome.  I
5    notice that you gave the letter back that I
6    provided to you regarding our specific
7    difficulties with the psychological evaluation.
8         DEPUTY COMMISSIONER SMITH:  Counsel, I'm
9    going to go off the record.  I know where you're
10   going and I'll answer your question.
11        ATTORNEY PHILLIPS:  Okay.
12        DEPUTY COMMISSIONER SMITH:  We just don't
13   need to have that on the record.
14        ATTORNEY PHILLIPS:  And --
15        DEPUTY COMMISSIONER SMITH:  Unless you'd
16   like it to.
17        ATTORNEY PHILLIPS:  I'd like to make the
18   one objection that I was going to make
19   specifically to the comment under II of the
20   psychologist's recommendations  I wanted to make
21   an objection there based upon the fact that I
22   think that the so-called soul searching that she
23   requires is tantamount to admission, really.
24   That's what we're really looking at here, to
25   call it as it is.  I think that's in violation
26   of Penal Code 5011.  So I'd make that objection
27   JESSE HERNANDEZ K-21116 DECISION PAGE 6 03/26/06

71

1    that she should expect that of him.  And then I

2    offer this to stay with the findings of the

3    Board as --

4         DEPUTY COMMISSIONER SMITH:  Let me change

5    the tapes.

6         PRESIDING COMMISSIONER DAVIS:  Before we

7    go off record I just want to --

8         DEPUTY COMMISSIONER SMITH:  Actually I

9    need to put in new tapes.

10        PRESIDING COMMISSIONER DAVIS:  Okay, hang

11   on.

12        (Tape one was changed to tape two.)

13        DEPUTY COMMISSIONER SMITH:  Continuation

14   of the record, we never went off.

15        PRESIDING COMMISSIONER DAVIS:  Just in

16   terms of your objection.  It is noted, however I

17   am not going to sustain it.  But I will tell you

18   that even absent the psychologist's report that

19   our finding would have been the same.  That

20   information was read into the record simply

21   because it is on the psychologist's report.  We

22   don't know to what extent there may be errors in

23   there, if that was in fact her judgment or not

24   as to your client.  But I can tell you that the

25   panel is clear that even absent that that our

26   finding would still have been the same.

27   JESSE HERNANDEZ K-21116 DECISION PAGE 7 03/26/06

72

1          ATTORNEY PHILLIPS:  Okay.

2          PRESIDING COMMISSIONER DAVIS:  Now with

3     regard to the letter, was there a procedural

4     issue you want to deal with?

5          DEPUTY COMMISSIONER SMITH:  Yes.  We can

6     certainly put one of the copies in the folder

7     but I'm not sure that that's going to land

8     anywhere permanently.  And we don't have the

9     authority to put anything into the C File, only

10    Mr. Hernandez can do that through his counselor.

11    And I would certainly recommend that that letter

12    be provided to your counselor with your request

13    that it be included in the C File because that

14    then becomes a permanent record.  If I could do

15    it I would but I can't.

16         ATTORNEY PHILLIPS:  No, that's fine.

17         PRESIDING COMMISSIONER DAVIS:  Okay.  And

18    with that --

19         DEPUTY COMMISSIONER SMITH:  So that's why

20    -- I knew where you were going with that and I

21    wanted to address that.  And again, if you want

22    to give me one of the copies I'll be happy to

23    put it in the envelope with the other documents.

24    I just can't guarantee that that will go forward

25    as far as the permanent record.

26         INMATE HERNANDEZ:  I will (overlapping).

27    JESSE HERNANDEZ K-21116 DECISION PAGE 8 03/26/06

73

1          PRESIDING COMMISSIONER DAVIS:    And with

2    that we are going to adjourn.    It is 15 minutes

3    before four and we are going off the record.

4          ATTORNEY PHILLIPS:    Thank you.

5                       --oOo--

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23    PAROLE DENIED TWO YEARS              JUL 2 4 2006

24    THIS DECISION WILL BE FINAL ON:_____

25    YOU WILL BE PROMPTLY NOTIFIED, IF PRIOR TO THAT

26    DATE, THE DECISION IS MODIFIED.

27    JESSE HERNANDEZ K-21116 DECISION PAGE 9 03/26/06

74

CERTIFICATE AND
DECLARATION OF TRANSCRIBER

I, RAMONA COTA, a duly designated

transcriber, PETERS SHORTHAND REPORTING, do

hereby declare and certify under penalty of

perjury that I have transcribed tape(s) which

total two in number and cover a total of pages

numbered 1 - 73, and which recording was duly

recorded at CORRECTIONAL TRAINING FACILITY,

SOLEDAD, CALIFORNIA, in the matter of the

INITIAL PAROLE CONSIDERATION HEARING of JESSE

HERNANDEZ, CDC NO. K-21116, on MARCH 26, 2006,

and that the foregoing pages constitute a true,

complete, and accurate transcription of the

aforementioned tape to the best of my ability.

I hereby certify that I am a

disinterested party in the above-mentioned

matter and have no interest in the outcome of

the hearing.

Dated April 16, 2006, at Sacramento

County, California.

RAMONA COTA
TRANSCRIBER
PETERS SHORTHAND REPORTING



SUMMARY OF BPT 1005 (b) dated 3/27/06
(Minimal Recommendations disproving
Limited Program)

BOARD OF PRISON TERMS                          STATE OF CALIFORNIA
LIFE PRISONER:  PAROLE CONSIDERATION PROPOSED DECISION:
DENY PAROLE

PAROLE DENIED FOR:        1    (2)    3    4    5    YEARS

Place the prisoner on the _2008_ calendar for his next subsequent hearing.

If this decision is final, you WILL NOT get paroled.  The Board will send you a copy of the decision.  It
will indicate the reasons you did not get paroled.  If this decision is not final, the Board will set up
another hearing.  You can read the laws about your hearing.  You can find the laws at California Code of
Regulations, Title 15, section 2041.

## RECOMMENDATIONS

**The Board Recommends:**
[  ] No more 115's or 128A's              [  ] Learn a trade*
[  ] Work to reduce custody level         [  ] Get therapy*
[✓] Get self-help*                        [✓] Earn positive chronos ( continue )
[✓] Stay discipline free                  [  ] Get a GED*

[  ] Recommend transfer to _____
[✓] Other
_____NEW Psyche Eval IN PREP FOR_____
_____NEXT HANG_____

*  These programs are recommended if they are offered at your prison and you are eligible/able to
participate.

## HEARING PANEL

Name _____   Date _____

Name _____DMCCC_____                    Date _____3/27/06_____

Name _____   Date _____

| NAME | CDC# | PRISON | DATE |
|------|------|--------|------|
| HERNANDEZ, JESSE | K21116 | CTF-Soledad | 3/27/06 |

BPT 1005(b)
(REV 04/04)

Distribution. White-C File
Canary-BPT
Pink-Prisoner



# E X H I B I T "C"

SUMMARY: Positive Chrono(s) About Program
Participation Since Incarceration

NAME and NUMBER     **HERNANDEZ     K-21116     B4-111**                              CDC-128-B Rev. 4/74

Inmate Hernandez arrived at Salinas Valley State Prison in 1996.  I have supervised Inmate Hernandez in Facility B Building #4 for the past twenty-two months.  Inmate Hernandez has been a valuable asset many times.  Before he was assigned a vocational job on B Yard, he devoted many hours to the upkeep and cleanliness of the unit.  When Inmate Hernandez was assigned a job in Vocations, he continued to devote his off time to assist all floor officers 2nd and 3rd watch with any task that was asked to him, to include acting as a mediator with other inmates assigned to his housing unit.  This type of mediation often led to defusing situations before they could occur.  Inmate Hernandez has earned the respect of fellow inmates, as well as correctional staff members and for these deeds, he should be recognized.

Orig:   C-File
cc:      CCII
          CCI
          Writer
          Inmate

                                                                  R. FRITZ
                                                                  Correctional Officer
                                                                  Salinas Valley State Prison

DATE     5/13/99                                                        GENERAL CHRONO

---

NAME and NUMBER     **HERNANDEZ          K-21116          B4-111L**          CDC-128-B Rev. 4/74

From June 15, 1997, through October 11, 1999, Inmate Hernandez , K-21116, while housed in Facility "B", Building #4, Cell #111L, has taken on various tasks such as cleaning, laundry and other general jobs when or when not asked. His initiative and attention to detail to certain building tasks is just an example of what other inmates could base their own achievement and/or accomplishments from.  This 12C-G Laudatory Chrono serves as a thanks to Inmate Hernandez from the B-4 Correctional Staff.

ORIG:   CENTRAL FILE
  CC:   PROGRAM FILE
  CC:   COUNSELOR
  CC:   WRITER
  CC:   INMATE

                                                                  J.J. TORRES, CORRECTIONAL OFFICER
                                                                  FACILITY "B"     THIRD WATCH
                                                                  SALINAS VALLEY STATE PRISON

DATE     10-11-99                    (LAUDATORY CHRONO)                    GENERAL CHRONO

NAME and NUMBER    I/M Hernandez J.    C.D.C # K21116

| CDC> 128B | LAUDATORY CHRONO |
|---|---|

I/M Hernandez, CDC# K21116, was assigned to Voc. Small Engine Class on 5-9-1998. Hernandez repaired lawn mowers, riding tractors, chainsaws, motorcycles, mini-bikes, with outstanding quality workmanship. Due to his success in the class, I advanced Hernandez to a pay position as teachers Aid. He helps the students on the floor, with technical demonstrations, and repairs on student projects. Hernandez completed the Small Engine Repair Class receiving a certificate of completion. Hernandez has excellent attendance, positive attitude, helped others in the class, and been a role model person in the Small Engine Class. With Hernandez's help, he has aided in the success of the Small Engine Repair Class.

C - File
Ed File
CC I
Inmate
Supervisor

DATE : July 3, 2000

LAUDATORY
COUNSELING CHRONO

---

NAME and NUMBER    HERNANDEZ, JESSE    K-21116    RM:    6305    CDC-128-B(Rev. 4/74)

I/M HERNANDEZ, JESSE, K-21116, is currently assigned as 3/W CLERK in East R&R, Position CLK%T.026. It is requested that I/M HERNANDEZ be considered a critical worker in this position and be retained at CMC-East. I/M HERNANDEZ is the only inmate assigned to Receiving & Release who is cross-trained in all inmate work positions and is knowledgable in all areas of Receiving & Release operations. Receiving & Release is a sensitive area and a vital hub of operations at CMC-East. The experience and knowledge I/M HERNANDEZ is able to apply helps this area run efficiently. He currently is in the process of training a newly-hired inmate worker in the property room and has reliably trained several inmate workers during his tenure at R&R. Due to his knowledge of all the inmate work positions, he frequently is called upon to fill in for other workers when they are unavailable. This proves valuable to Receiving & Release because it allows the flow of work to continue without interruption. HERNANDEZ has displayed exceptional organizational skills since being assigned to this position and has made important contributions in helping this area function smoothly. I/M HERNANDEZ consistently displays an excellent work ethic, positive attitude, and professionalism in his assigned duties. For the above-stated reasons, it is requested all possible consideration be given to retaining I/M HERNANDEZ at CMC-East so he may remain in this work assignment.

Original    C-File
cc:    C-Quad CC-II
    C-Quad CC-I
    R&R File
    Inmate

R.A. DAMEROW, Correctional Sergeant
Receiving & Release
CMC-East Facility

DATE    6/30/04    Informative / Request for Retention    CMC-E    GENERAL CHRONO

NAME and NUMBER        HERNANDEZ, JESSE        K-21116        RM:        6305        CDC-128-B(Rev. 4/74)

I/M HERNANDEZ, JESSE, K-21116, is currently assigned as a clerk in Receiving & Release, working in a variety of areas within this department. During the time I have supervised this inmate I have found him to be an extremely conscientious worker who consistently displays maximum effort . He takes the initiative in required tasks and shows a willingness to help others wherever needed, working well both independently and within a team concept. He displays excellent work habits and a good attitude toward both staff and inmates. His efforts while assigned to this job have helped this area run smoothly and efficiently and he has been considered an asset to this operation. This documentation should be considered both an acknowledgement of an excellent work record and a positive recommendation to prospective employers/supervisors.

Original        C-File
cc:             R&R
                ~~Inmate~~

W. CASTRO, Correctional Officer
Receiving & Release
CMC-East Facility

DATE    9/30/04                    Informative / Laudatory                CMC-E    GENERAL  CHRONO

---

STATE OF CALIFORNIA                          DEPARTMENT OF CORRECTIONS
                                                     CDC128 B

HERNANDEZ, J.    K21116    G-120

Inmate HERNANDEZ is to be commended for the excellent job he has done as an education clerk. He is very organized and self motivated. Recently, he had to deal with serious family issues, yet he remained very responsible to his job assignment. He has helped to make my transition from teaching ABE-II to GED manageable. Thank you!

S. Wise
S. WISE
ABE II CENTRAL EDUC.
EXT. 4952

CC:    C-File
       Education File
       Inmate
       Writer
       CCI

DATE: August 30, 2005                        LAUDATORY CHRONO

AME and NUMBER        HERNANDEZ    K-21116    GW-104U                    CDC-128-B (Rev. 4/74)

This student has successfully completed 12 weeks of prescribed
studies in the CTF-Central Chapel Discipleship Program:
Christian Basics Class (C.B.C.).  In this class he learned
practical biblical application dealing with the Christian
lifestyle.  He has effectively acquired a practical knowledge the
Christian role plays in today's society, as well as assimulating
execellent methods in making moral life-choices while in prison
or on parole.  This student is to be commended for his efforts,
participation, self-sacrifice, sincere dedication, and personal
commitment displayed in this class.

        Original:    C-file
                     Chapel File
                     Inmate                          _____
                                                     Rev. Judge C. Lindsey
                                                     Protestant Chaplain
.TE                                                  CTF-Central
        September 11, 2005                                        GENERAL CHRONO
                        (Laudatory Chrono)

---

STATE OF CALIFORNIA                    DEPARTMENT OF CORRECTIONS & REHABILITATION
                                                           CDC128 B

HERNANDEZ, J.    K21116      G-120


Inmate **HERNANDEZ** continues to do an outstanding job as a GED education clerk.  He is
very conscientious, responsible, and reliable.  He is always concerned with the importance of
doing what is right and following correct procedures.  He is also willing to do the tasks that
need to be done when others are reluctant.  Thank you!


_S. Wise_
S. WISE
GED INSTRUCTOR, CENTRAL EDUC.
EXT.  4952

        CC:    C-File
               Education File
               Inmate
               Writer
               CCI


DATE: January 19, 2006                              LAUDATORY CHRONO

# EXHIBIT "D"

SUMMARY: Positive Work Reports Since
Incarceration

STATE OF CALIFORNIA
CDC-101 (Automated)

## WORK SUPERVISOR'S REPORT

DEPARTMENT OF CORRECTIONS

| GRADES | GRADE | | GRADE | |
|---|---|---|---|---|
| 1=EXCEPTIONAL | 1 | A. DEMONSTRATED SKILL AND KNOWLEDGE | 1 | F. TEAMWORK AND PARTICIPATION |
| 2=ABOVE AVERAGE | 1 | B. ATTITUDE TOWARD FELLOW INMATES AND WORKER | 1 | G LEARNING ABILITY |
| 3=SATISFACTORY | 1 | C. ATTITUDE TO SUPERVISORS AND STAFF | 1 | H. USE OF TOOLS AND EQUIPMENT |
| 4=BELOW AVERAGE | 1 | D. INTEREST IN ASSIGNED WORK | 1 | I. QUALITY OF WORK |
| 5=UNSATISFACTORY | 1 | E. EFFORT DISPLAYED IN ASSIGNED WORK | 1 | J. QUANTITY OF WORK |

| PAY STATUS  FROM: $ $0.30 TO: $ | FROM: JOB NO. CLK%.C406 | TO: JOB NO |
|---|---|---|
| Total # Hours Assigned: 40 hours per week | Total # Hours Worked: 40 hours per week | |

| SUBJECT ASSIGNED TO | DATE ASSIGNED | ACTUAL WORK CONSISTS OF | PERIOD COVERED BY REPORT |
|---|---|---|---|
| AHS1 | 4/4/2006 | Clerk | 4/4/2006 to 4/24/2006 |

RECOMMEND FOR: ☐ REASSIGNMENT  ☑ RETAIN  ☐ PAY INCREASE  ☐ PAY DECREASE

INMATE'S INITIALS

COMMENTS (IF MORE SPACE REQUIRED, USE REVERSE SIDE)
I can always count on Mr. Hernandez to do whatever is needed. He is responsible, productive, and self-motivated. He does and excellent job  Thank you!

CODE OF SAFE PRACTICES REVIEWED
SUPV'S INITIALS   S.W.   INMATE'S INITIALS

| SUPERVISOR | | LENGTH OF SUPERVISION | WORK DETAIL | ETHNICITY |
|---|---|---|---|---|
| S. Wise | S. Wise | 0 month | Education | OTH  J.H |
| INMATE'S NAME | | CDC NUMBER | INSTITUTION | DATE |
| Hernandez, J. | G-104L | K21116 | CTF | 4/24/2006 |

STATE OF CALIFORNIA
CDC-101 (Automated)

## WORK SUPERVISOR'S REPORT

DEPARTMENT OF CORRECTIONS

| GRADES | GRADE | | GRADE | |
|---|---|---|---|---|
| 1=EXCEPTIONAL | 1 | A. DEMONSTRATED SKILL AND KNOWLEDGE | 1 | F. TEAMWORK AND PARTICIPATION |
| 2=ABOVE AVERAGE | 1 | B. ATTITUDE TOWARD FELLOW INMATES AND WORKER | 1 | G. LEARNING ABILITY |
| 3=SATISFACTORY | 1 | C. ATTITUDE TO SUPERVISORS AND STAFF | 1 | H. USE OF TOOLS AND EQUIPMENT |
| 4=BELOW AVERAGE | 1 | D. INTEREST IN ASSIGNED WORK | 1 | I. QUALITY OF WORK |
| 5=UNSATISFACTORY | 1 | E. EFFORT DISPLAYED IN ASSIGNED WORK | 1 | J. QUANTITY OF WORK |

| PAY STATUS  FROM: $ $0.30 TO: $ | FROM: JOB NO. CLK%.C406 | TO: JOB NO |
|---|---|---|
| Total # Hours Assigned: 40 hours per week | Total # Hours Worked: 40 hours per week | |

| SUBJECT ASSIGNED TO | DATE ASSIGNED | ACTUAL WORK CONSISTS OF | PERIOD COVERED BY REPORT |
|---|---|---|---|
| AHS1 | 4/4/2006 | Clerk | 4/4/2006 to 8/24/2006 |

RECOMMEND FOR: ☐ REASSIGNMENT  ☑ RETAIN  ☐ PAY INCREASE  ☐ PAY DECREASE

INMATE'S INITIALS

COMMENTS (IF MORE SPACE REQUIRED, USE REVERSE SIDE)
Mr. Hernandez continues to be very willing to do whatever is required.  Thank you!

CODE OF SAFE PRACTICES REVIEWED
SUPV'S INITIALS   INMATE'S INITIALS

| SUPERVISOR | | LENGTH OF SUPERVISION | WORK DETAIL | ETHNICITY |
|---|---|---|---|---|
| S. Wise | S. Wise | 4 months | Education | OTH  J.H |
| INMATE'S NAME | | CDC NUMBER | INSTITUTION | DATE |

Assignment Ducat/Ac    y Card
CDC#: K21116  HERNANDEZ, JESSE
EFF : 04/04/2006
BED#: CFGWT1 104L
LOC : GED
RDO : S  SU H
JOB#: CLK%C.406  GED   FILE CLERK
HRS: 0800-1130 1230-1530

AUTHORIZED BY:

Assignment Ducat/Activity Card
CDC#: K21116  HERNANDEZ, JESSE
EFF : 09/30/2005
BED#: CFGWT1 104U
LOC : GED
RDO : S  SU H
JOB#: CLK%C.111  GED   CLERK
HRS: 0800-1130 1230-1530

AUTHORIZED BY:

---

STATE OF CALIFORNIA
CDC-101 (Automated)

## WORK SUPERVISOR'S REPORT

DEPARTMENT OF CORRECTIONS

| GRADES | GRADE | | GRADE | |
|---|---|---|---|---|
| 1=EXCEPTIONAL | 1 | A. DEMONSTRATED SKILL AND KNOWLEDGE | 1 | F. TEAMWORK AND PARTICIPATION |
| 2=ABOVE AVERAGE | 1 | B. ATTITUDE TOWARD FELLOW INMATES AND WORKER | 1 | G. LEARNING ABILITY |
| 3=SATISFACTORY | 1 | C. ATTITUDE TO SUPERVISORS AND STAFF | 1 | H. USE OF TOOLS AND EQUIPMENT |
| 4=BELOW AVERAGE | 1 | D. INTEREST IN ASSIGNED WORK | 1 | I. QUALITY OF WORK |
| 5=UNSATISFACTORY | 1 | E. EFFORT DISPLAYED IN ASSIGNED WORK | 1 | J. QUANTITY OF WORK |

| PAY STATUS   FROM: $ $0.23  TO: $ | FROM: JOB NO. CLK%C.407 | TO: JOB NO  CLK%C. 111 |
|---|---|---|

| Total # Hours Assigned:  40 hours per week | Total # Hours Worked:  40 hours per week | |
|---|---|---|

| SUBJECT ASSIGNED TO
A2-2 | DATE ASSIGNED
3/11/2005 | ACTUAL WORK CONSISTS OF
Clerk | PERIOD COVERED BY REPORT
3/11/2005 to 9/27/2005 |
|---|---|---|---|

RECOMMEND FOR: ☐ REASSIGNMENT   ☑ RETAIN   ☐ PAY INCREASE   ☐ PAY DECREASE   INMATE'S INITIALS

COMMENTS (IF MORE SPACE REQUIRED, USE REVERSE SIDE)
Mr. Hernandez does an excellent job at whatever he is assigned.  He takes initiative and is a productive worker. Thank you!

CODE OF SAFE PRACTICES REVIEWED
SUPV'S INITIALS  S.W.     INMATE'S INITIALS  J.H

| SUPERVISOR
S. Wise | LENGTH OF SUPERVISION
6 months | WORK DETAIL
Education | ETHNICITY
OTH |
|---|---|---|---|
| INMATES NAME
Hernandez, J.      G-104U | CDC NUMBER
K21116 | INSTITUTION
CTF | DATE
9/27/2005 |

---

STATE OF CALIFORNIA
CDC-101 (Automated)

## WORK SUPERVISOR'S REPORT

DEPARTMENT OF CORRECTIONS

| GRADES | GRADE | | GRADE | |
|---|---|---|---|---|
| =EXCEPTIONAL | 1 | A. DEMONSTRATED SKILL AND KNOWLEDGE | 1 | F. TEAMWORK AND PARTICIPATION |
| 2=ABOVE AVERAGE | 1 | B. ATTITUDE TOWARD FELLOW INMATES AND WORKER | 1 | G. LEARNING ABILITY |
| 3=SATISFACTORY | 1 | C. ATTITUDE TO SUPERVISORS AND STAFF | 1 | H. USE OF TOOLS AND EQUIPMENT |
| 4=BELOW AVERAGE | 1 | D. INTEREST IN ASSIGNED WORK | 1 | I. QUALITY OF WORK |
| 5=UNSATISFACTORY | | E. EFFORT DISPLAYED IN ASSIGNED WORK | 1 | J. QUANTITY OF WORK |

| PAY STATUS   FROM: $ $0.23  TO: $ | FROM: JOB NO. CLK%C.111 | TO: JOB NO |
|---|---|---|

| Total # Hours Assigned:  40 hours per week | Total # Hours Worked:  40 hours per week | |
|---|---|---|

| SUBJECT ASSIGNED TO
AHS1 | DATE ASSIGNED
9/30/2005 | ACTUAL WORK CONSISTS OF
Clerk | PERIOD COVERED BY REPORT
9/30/2005 to 1/10/2006 |
|---|---|---|---|

RECOMMEND FOR: ☐ REASSIGNMENT   ☑ RETAIN   ☐ PAY INCREASE   ☐ PAY DECREASE   INMATE'S INITIALS

COMMENTS (IF MORE SPACE REQUIRED, USE REVERSE SIDE)
Mr. Hernandez does an outstanding job at whatever task he is given.  He is always accomodating and very patient.  Thank you.  You are very much appreciated.

CODE OF SAFE PRACTICES REVIEWED
SUPV'S INITIALS     INMATE'S INITIALS  J.H

| SUPERVISOR
S. Wise | LENGTH OF SUPERVISION
4 months | WORK DETAIL
Education | ETHNICITY
OTH |
|---|---|---|---|

STATE OF CALIFORNIA
CDC-101 (1/92)

**WORK SUPERVISOR'S REPORT**

DEPARTMENT OF CORRECTIONS

| GRADES | GRADE | | GRADE | |
|---|---|---|---|---|
| 1 = EXCEPTIONAL | 3 | A. DEMONSTRATED SKILL AND KNOWLEDGE | 2 | F. TEAMWORK AND PARTICIPATION |
| 2 = ABOVE AVERAGE | 2 | B. ATTITUDE TOWARD FELLOW INMATES AND WORKERS | 2 | G. LEARNING ABILITY |
| 3 = SATISFACTORY | 2 | C. ATTITUDE TOWARD SUPERVISORS AND STAFF | 2 | H. USE OF TOOLS AND EQUIPMENT |
| 4 = BELOW AVERAGE | 2 | D. INTEREST IN ASSIGNED WORK | 2 | I. QUALITY OF WORK |
| 5 = UNSATISFACTORY | 2 | E. EFFORT DISPLAYED IN ASSIGNED WORK | 2 | J. QUANTITY OF WORK |

| PAY STATUS: FROM:$ | TO:$ | FROM: JOB NO. | TO: JOB NO. |
|---|---|---|---|

| TOTAL # Hours Assigned: 7 | TOTAL # Hours Worked: 7 | |
|---|---|---|

| INMATE ASSIGNED TO CLK-T.024 (P04) | DATE ASSIGNED 05-22-2002 | ACTUAL WORK CONSISTS OF Clerk - Typing, Filing, | PERIOD COVERED BY REPORT PROBATIONARY |
|---|---|---|---|

| RECOMMENDED FOR: ☐ REASSIGNMENT ☑ RETAIN ☐ PAY INCREASE ☐ PAY DECREASE | INMATES INITIALS H.J. |
|---|---|

| COMMENTS (IF MORE SPACE IS NEEDED, USE REVERSE SIDE) Good worker - | CODE OF SAFE PRACTICES REVIEWED SUPV'S INITIALS: AB | INMATES INITIALS H.J. |
|---|---|---|

| SUPERVISOR Of Ashley | LENGTH OF SUPERVISION 1 month | WORK DETAIL R&R CLK | ETHNICITY OTH |
|---|---|---|---|

| INMATE'S NAME HERNANDEZ, JESSE | Cell: 5379 | CDC NUMBER K-21116 | INSTITUTION CMC-East | DATE 06-03-2002 |
|---|---|---|---|---|

---

STATE OF CALIFORNIA
CDC-101 (1/92)

**WORK SUPERVISOR'S REPORT**

DEPARTMENT OF CORRECTIONS

| GRADES | GRADE | | GRADE | |
|---|---|---|---|---|
| 1 = EXCEPTIONAL | 2 | A. DEMONSTRATED SKILL AND KNOWLEDGE | 1 | F. TEAMWORK AND PARTICIPATION |
| 2 = ABOVE AVERAGE | 1 | B. ATTITUDE TOWARD FELLOW INMATES AND WORKERS | 2 | G. LEARNING ABILITY |
| 3 = SATISFACTORY | 1 | C. ATTITUDE TOWARD SUPERVISORS AND STAFF | 1 | H. USE OF TOOLS AND EQUIPMENT |
| 4 = BELOW AVERAGE | 1 | D. INTEREST IN ASSIGNED WORK | 2 | I. QUALITY OF WORK |
| 5 = UNSATISFACTORY | 2 | E. EFFORT DISPLAYED IN ASSIGNED WORK | 2 | J. QUANTITY OF WORK |

| PAY STATUS: FROM:$ 34.00 | TO:$ 42.00 | FROM: JOB NO. CLK-T.024 | TO: JOB NO. CLK%T.026 |
|---|---|---|---|

| TOTAL # Hours Assigned: 35 hours weekly | TOTAL # Hours Worked: 55 hours weekly | |
|---|---|---|

| INMATE ASSIGNED TO CLK%T.026 (P04) | DATE ASSIGNED 07-19-2002 | ACTUAL WORK CONSISTS OF 3RD WATCH CLERK-TYPIST - Misc Clerical & Computer | PERIOD COVERED BY REPORT PROBATIONARY JULY 2002 |
|---|---|---|---|

| RECOMMENDED FOR: ☐ REASSIGNMENT ☒ RETAIN ☐ PAY INCREASE ☐ PAY DECREASE | INMATES INITIALS J.H |
|---|---|

| COMMENTS (IF MORE SPACE IS NEEDED, USE REVERSE SIDE) Original hire in May 2002; Recent Promotion within R&R | CODE OF SAFE PRACTICES REVIEWED SUPV'S INITIALS: dlm | INMATES INITIALS J.H |
|---|---|---|

| SUPERVISOR DL Meyer D. L. Meyer, OA | LENGTH OF SUPERVISION 3 Months | WORK DETAIL R&R CLERK 3/W | ETHNICITY OTH |
|---|---|---|---|

| INMATE'S NAME HERNANDEZ, JESSE | Cell: 5379 | CDC NUMBER K-21116 | INSTITUTION CMC-East | DATE 08-01-2002 |
|---|---|---|---|---|

STATE OF CALIFORNIA
CDC 128-E (Rev.10/98)

### QUARTERLY CHRONO

DEPARTMENT OF CORRECTIONS

### EDUCATION PROGRESS REPORT

| BEHAVIOR/ASSESSMENT | | CERTIFICATION UNITS IN COURSE | TOTAL | COMPLETED PRIOR TO THIS QUARTER |
|---|---|---|---|---|
| Adaptability | S   U | Vocational Title: | | |
| Conduct | S   U | Academic Title: | | |
| Cooperation | S   U | Adult High School Title BUS. ED. | 5 | 5 |
| Dependability | S   U | General Education Development. | | |
| Initiative | S   U | | | |

LIST SPECIFIC CERTIFICATION UNITS COMPLETED THIS QUARTER BY NAME:

| DATE INMATE ENROLLED | DATE INMATE TERMINATED | TERMINATION CODE | REASON FOR TERMINATION |
|---|---|---|---|
| 03/07/01 | | | |

COMMENTS SPECIFIC TO COURSE: Mr. Hernandez, Jesse, (CDC # K-21116) has completed 0 Certification Units this quarter and 5 Certification Units to date. Mr. Hernandez's classroom behavior and attitude towards learning are excellent. Mr. Hernandez made good progress with typing and Business Math Using Calculators. He completed three parts of Business Math Using Calculators with 94%. He completed 27 out of 29 typing lessons. Mr. Hernandez is at the point of taking Typing Test 4. Mr. Hernandez needs to continue working on Keeping Financial Records For Business. Mr. Hernandez is a steady helper with classroom cleaning and maintenance. During quarter break he helped with major sorting and cleaning. **(Continued on Chrono 2)**

Grade Period: 1/1/02 through 3/31/02

### VOCATIONAL EVALUATION OF EMPLOYABILITY

| (X) | OCCUPATIONAL JOB TITLE | DOT CODE NUMBER | (X) | OCCUPATIONAL JOB TITLE | DOT CODE NUMBER |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

| DATE OF REPORT | QUARTER GRADE | INSTRUCTOR/TEACHER (PRINT NAME AND SIGN) | | SUPERVISOR REVIEW |
|---|---|---|---|---|
| 3/31/02 | A- | J. FOSS | INITIALS | |

| INMATE NAME (LAST, FIRST, MI) | ROOM # 5379x | CDC NUMBER | INSTITUTION |
|---|---|---|---|
| Hernandez, Jesse | | K-21116 | CMC-EAST |

CMC-VE-002 (8/00) 918    DISTRIBUTION: White-C-File; Canary-Education; Pink-Originator; Goldenrod-Inmate

CALIFORNIA
128-E (Rev.10/98)

**QUARTERLY CHRONO**

DEPARTMENT OF CORRECTIONS

**EDUCATION PROGRESS REPORT**

| BEHAVIOR/ASSESSMENT | | | CERTIFICATION UNITS IN COURSE | TOTAL | COMPLETED PRIOR TO THIS QUARTER |
|---|---|---|---|---|---|
| Adaptability | S | U | Vocational Title: _____ | | |
| Conduct | S | U | Academic Title: _____ | | |
| Cooperation | S | U | Adult High School Title BUS. ED. . | 5 | 5 |
| Dependability | S | U | General Education Development: | | |
| Initiative | S | U | | | |

LIST SPECIFIC CERTIFICATION UNITS COMPLETED THIS QUARTER BY NAME:

| DATE INMATE ENROLLED | DATE INMATE TERMINATED | TERMINATION CODE | REASON FOR TERMINATION |
|---|---|---|---|
| 03/07/01 | | | |

COMMENTS SPECIFIC TO COURSE: P/M Hernandez, Jesse, (CDC # K-21116.)   **(Continuation ....Chrono 2)**  Attendance is perfect.
Business Math Using Calculators – A,   Beginning Typing – A,   Keeping Financial Records for Business – N/G

Grade Period: 1/1/02 through 3/31/02

**VOCATIONAL EVALUATION OF EMPLOYABILITY**

| (X) | OCCUPATIONAL JOB TITLE | DOT CODE NUMBER | (X) | OCCUPATIONAL JOB TITLE | DOT CODE NUMBER |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| DATE OF REPORT | QUARTER GRADE | INSTRUCTOR/TEACHER (PRINT NAME AND SIGN) | | SUPERVISOR REVIEW |
|---|---|---|---|---|
| 3/31/02 | A- | J. FOSS | INITIAL: | |

| INMATE NAME (LAST, FIRST, MI) | ROOM # 5379x | CDC NUMBER | INSTITUTION |
|---|---|---|---|
| Hernandez, Jesse | | K-21116 | CMC-EAST |

CMC-VE-002 (8/00) 918    DISTRIBUTION: White-Central File; Pink-Originator; Goldenrod-Inmate

STATE OF CALIFORNIA
CDC 128-E (Rev./1090)

## QUARTERLY CHRONO
## EDUCATION PROGRESS REPORT

DEPARTMENT OF CORRECTIONS

**BEHAVIOR/ASSESSMENT**

| | | CERTIFICATION UNITS IN COURSE | TOTAL | COMPLETED PRIOR TO THIS QUARTER |
|---|---|---|---|---|
| Adaptability | U | Vocational Title: | | |
| Conduct | U | Academic Title: | | |
| Cooperation | U | Adult High School Title: __BUS ED__ | | |
| Dependability | U | General Education Development: | 1⁵ | |
| Initiative | U | | | |

LIST SPECIFIC CERTIFICATION UNITS COMPLETED THIS QUARTER BY NAME:
ELECTRONIC PRINTING CALCULATOR

| DATE INMATE ENROLLED | DATE INMATE TERMINATED | TERMINATION CODE | REASON FOR TERMINATION |
|---|---|---|---|
| 03/07/01 | | | |

COMMENTS SPECIFIC TO COURSE:

I/M Hernandez, Jesse (K-21116) has completed 1 Certification Unit(s) this quarter and 5 Certification Unit(s) to date. Mr. Hernandez is maintaining steady progress with his studies. He completed 4/5 Beginning Typing lessons, corrections need to be made an Performance Test 2. Unit 9 and the Video Genie were completed in Keeping Financial Records for Business with 96 percent. Mr. Hernandez earned a Certificate of Achievement for completing the Electronic Printing Calculator. Mr. Hernandez continues to be cooperative and helpful, he regularly assists with weekly cleanup. ELECTRONIC PRINTING CALCULATOR-A, BEGINNING TYPING-A, KEEPING FINANCIAL RECORDS FOR BUSINESS-A.

## VOCATIONAL EVALUATION OF EMPLOYABILITY

| | OCCUPATIONAL JOB TITLE | DOT CODE NUMBER | (X) | OCCUPATIONAL JOB TITLE | DOT CODE NUMBER |
|---|---|---|---|---|---|
| (X) | | | X | | |
| X | | | X | | |
| X | | | X | | |
| X | | | X | | |
| | | | X | | |

| DATE OF REPORT | QUARTER GRADE | INSTRUCTOR/TEACHER (PRINT NAME AND SIGN) | CDC NUMBER | INITIALS | SUPERVISOR REVIEW |
|---|---|---|---|---|---|
| 12/31/01 | A | J. FOSS | K-21116 | | |

INMATE NAME (LAST, FIRST, MI)
HERNANDEZ, JESSE

INSTITUTION
CMC-EAST

CMC-VE-002 (8/00) 918

FORM # 128-E

DISTRIBUTION: White-Central File, Canary-Education File, Pink-Educator, Goldenrod-Inmate

026/15

**TERMINATION CHRONO**

STATE OF CALIFORNIA
CDC 128-E (Rev.10/98)

DEPARTMENT OF CORRECTIONS

**EDUCATION PROGRESS REPORT**

| BEHAVIOR/ASSESSMENT | | CERTIFICATION UNITS IN COURSE | TOTAL | COMPLETED PRIOR TO THIS QUARTER |
|---|---|---|---|---|
| Adaptability | S___U | Vocational Title: _____ | _____ | _____ |
| Conduct | S___U | Academic Title: _____ | | |
| Cooperation | S___U | Adult High School Title: __BUS. ED.__ | 15 | 5 |
| Dependability | S___U | General Education Development: _____ | | |
| Initiative | S___U | | | |

LIST SPECIFIC CERTIFICATION UNITS COMPLETED THIS QUARTER BY NAME:
**Beginning Typing**

| DATE INMATE ENROLLED | DATE INMATE TERMINATED | TERMINATION CODE | REASON FOR TERMINATION |
|---|---|---|---|
| 3/7/01 | 5/11/02 | 8 | TRANSFER TO PROJECT CHAN |

COMMENTS SPECIFIC TO COURSE:    I/M Hernandez (K-21116) has completed 1 Certification Units this quarter and 6 Certification Units to date. Mr. Hernandez has been a dependable, cooperative, helpful student. He has made good progress. During this quarter Mr. Hernandez completed Part 4 of Business Math Using Calculators with 100 percent and Units 10 and 11 of Keeping Financial Records for Business with 99 percent. He earned a Certificate of Achievement for completing Beginning Typing. Attendance is perfect. Beginning Typing _A_, Keeping Financial Records for Business: _A_, Business Math Using Calculators _A_.

| Grade Period: 4/1/02 through 5/1/02 | | VOCATIONAL EVALUATION OF EMPLOYABILITY | | | |
|---|---|---|---|---|---|
| (X) | OCCUPATIONAL JOB TITLE | DOT CODE NUMBER | (X) | OCCUPATIONAL JOB TITLE | DOT CODE NUMBER |
| | | | | | |
| | | | | | |
| | | | | | |

| DATE OF REPORT | QUARTER GRADE | INSTRUCTOR/TEACHER (PRINT NAME AND SIGN) | | SUPERVISOR REVIEW |
|---|---|---|---|---|
| 5/20/02 | A | J. FOSS | INITIALS | |
| | INMATE NAME (LAST, FIRST, MI) Hernandez, Jesse | 5379x | CDC NUMBER K-21116 | INSTITUTION CMC-EAST |

CMC-VE-002 (8/00) 918    **DISTRIBUTION:** White-Central File; Canary-Education File; Pink-Originator; Goldenrod-Inmate

D: 7/15

STATE OF CALIFORNIA
CDC 128-E (Rev.10/98)

## QUARTERLY CHRONO

## EDUCATION PROGRESS REPORT

DEPARTMENT OF CORRECTIONS

| BEHAVIOR/ASSESSMENT | | CERTIFICATION UNITS IN COURSE | | TOTAL | COMPLETED PRIOR TO THIS QUARTER | COMPLETED THIS QUARTER |
|---|---|---|---|---|---|---|
| Adaptability | U | Vocational Title: | | | | |
| Conduct | U | Academic Title: | Bus. Ed. | | | |
| Cooperation | U | Adult High School Title: | | | | |
| Dependability | U | General Education Development: | | 15 | 2 | |
| Initiative | U | | | | | |

LIST SPECIFIC CERTIFICATION UNITS COMPLETED THIS QUARTER BY NAME:
FILING, FAMILY FINANCIAL MANAGEMENT

| DATE INMATE ENROLLED | DATE INMATE TERMINATED | TERMINATION CODE | REASON FOR TERMINATION |
|---|---|---|---|
| 03/07/01 | | | |

COMMENTS SPECIFIC TO COURSE: I/M Hernandez, Jesse, (CDC # K-21116) has completed 2 Certification Unit(s) this quarter and 4 Certification Unit(s) to date. Mr. Hernandez is a helpful, dependable student and has a good attitude toward his class work. He received Certificates of Achievement completing Filing with 93 percent and Family Financial Management with 91 percent. Mr. Hernandez started Keeping Financial Records for Business and completed the first 3 units with 94 percent. He has also started working on the Electronic Printing Calculator. Mr. Hernandez has completed 20 typing lessons out of 35 expected. He should do one typing lesson each day. Attendance is perfect. Filing A, Family Financial Management A, Record Keeping Electronic Calculator N/C, Typing C.

Cash Posting 0450.01 through 0459.01

## VOCATIONAL EVALUATION OF EMPLOYABILITY

| (X) | OCCUPATIONAL JOB TITLE | DOT CODE NUMBER | (X) | OCCUPATIONAL JOB TITLE | DOT CODE NUMBER |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| DATE OF REPORT | QUARTER GRADE | INSTRUCTOR/TEACHER (PRINT NAME AND SIGN) | | CDC NUMBER | INSTITUTION |
|---|---|---|---|---|---|
| 07/01/01 | B | J POSS | | K-21116 | CMC-EAST |

| INMATE NAME (LAST, FIRST, MI) | ROOM # 5792X | INITIALS | SUPERVISOR REVIEW |
|---|---|---|---|
| Hernandez, Jesse | | | |

CMC-VE-002(8/00) 918    DISTRIBUTION: White-Central File, Canary-Education File, Pink-Originator, Goldenrod-Inmate

STATE OF CALIFORNIA
CDC 128-E (Rev. 10/99)

QUARTERLY (CHECK ONE)

DEPARTMENT OF CORRECTIONS

# EDUCATION PROGRESS REPORT

| BEHAVIOR/ASSESSMENT | | CERTIFICATION UNITS IN COURSE | TOTAL | COMPLETED PRIOR TO THIS QUARTER |
|---|---|---|---|---|
| Adaptability | S U | Vocational Title: | | |
| Conduct | S U | Academic Title: | | |
| Cooperation | S U | Adult High School Title: | | |
| Dependability | S U | General Education Development: | | |
| Initiative | S U | | | |

LIST SPECIFIC CERTIFICATION UNITS COMPLETED THIS QUARTER BY NAME:

REFERENCE SOURCES: ORIENTATION

COMMENTS SPECIFIC TO COURSE:

FAMILY FINANCIAL MANAGEMENT - B, PLUS - A: DECIMALS, FRACTIONS & PERCENTAGES - B

VOCATIONAL EVALUATION OF EMPLOYABILITY

| DATE INMATE ENROLLED | OCCUPATIONAL JOB TITLE | DOT CODE NUMBER | DATE INMATE TERMINATED | TERMINATION CODE | OCCUPATIONAL JOB TITLE | DOT CODE NUMBER | REASON FOR TERMINATION |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| DATE OF REPORT | QUARTER GRADE | INMATE NAME (LAST, FIRST, MI) | INSTRUCTOR/TEACHER (PRINT NAME AND SIGN) | CDC NUMBER | INITIALS | SUPERVISOR REVIEW |
|---|---|---|---|---|---|---|
| | B | | | | | |
| | | | | INSTITUTION | | CMC-EAST |

CMC-VE-002.(8/00) 918      DISTRIBUTION: White-Central File; Canary-Education File; Pink-Counselor; Goldenrod-Inmate

D: 9/15

STATE OF CALIFORNIA
CDC 128-E (Rev.10/98)

## QUARTERLY CHRONO PAGE 2 OF 2

DEPARTMENT OF CORRECTIONS

## EDUCATION PROGRESS REPORT

| BEHAVIOR/ASSESSMENT | | | CERTIFICATION UNITS IN COURSE | TOTAL | COMPLETED PRIOR TO THIS QUARTER |
|---|---|---|---|---|---|
| Adaptability | S | U | Vocational Title: _____ | _____ | _____ |
| Conduct | S | U | Academic Title: _____ | | _____ |
| Cooperation | S | U | Adult High School Title: BUS. ED. | 13 | 4 |
| Dependability | S | U | General Education Development: _____ | _____ | _____ |
| Initiative | S | U | | | |

LIST SPECIFIC CERTIFICATION UNITS COMPLETED THIS QUARTER BY NAME:

| DATE INMATE ENROLLED | DATE INMATE TERMINATED | TERMINATION CODE | REASON FOR TERMINATION |
|---|---|---|---|
| 03/07/01 | | | |

COMMENTS SPECIFIC TO COURSE:        Mr. Hernandez was absent one day for a visit.
FRACTIONS, DECIMALS & PERCENTAGES: B; ELECTRONIC PRINTING CALCULATOR: A;
BEGINNING BUSINESS TYPING: B; KEEPING FINANCIAL RECORDS FOR BUSINESS: A.

### VOCATIONAL EVALUATION OF EMPLOYABILITY

Grade Period: 07/01/01 through 09/30/01

| (X) | OCCUPATIONAL JOB TITLE | DOT CODE NUMBER | (X) | OCCUPATIONAL JOB TITLE | DOT CODE NUMBER |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

| DATE OF REPORT | QUARTER GRADE | INSTRUCTOR/TEACHER (PRINT NAME AND SIGN) | | SUPERVISOR REVIEW |
|---|---|---|---|---|
| 10/01/01 | B | J. FOSS | INITIALS | |

| INMATE NAME (LAST, FIRST, MI) | ROOM # 5379X | CDC NUMBER | INSTITUTION |
|---|---|---|---|
| Hernandez, Jesse | | K-21116 | |

CMC-VE-002 (8/00) 918        DISTRIBUTION: White-Central File; Canary-Education File; Pink-Originator; Goldenrod-Inmate

D:10/15

STATE OF CALIFORNIA
CDC 101 (5/98)                          WORK SUPERVISOR'S REPORT                    DEPARTMENT OF CORRECTIONS

| GRADES | GRADES | | GRADES | |
|---|---|---|---|---|
| 1. EXCEPITIONAL | _/_ | A. DEMONSTRATED SKILL AND KNOWLEDGE | _/_ | F. TEAMWORK AND PARTICIPATION |
| 2. ABOVE AVERAGE | _/_ | B. ATTITUEDE TOWARD FELLOW INMATES AND WORKERS | _/_ | G. LEARNING ABILITY |
| 3. SATISFACTORY | _/_ | C. ATTITUDE TOWARD SUPERVISORS AND STAFF | _/_ | H. USE OF TOOLS AND EQUIPMENT |
| 4. BELOW AVERAGE | _/_ | D. INTEREST IN ASSIGNED WORK | _/_ | I. QUALITY OF WORK |
| 5. UNSATISFACTORY | _/_ | E. EFFORT DISPLAYED IN ASSIGNED WORK | _/_ | J. QUANTITY OF WORK |

PAY STATUS : FROM : $ *.24cents* TO : $ .24cents Hour    FROM . JOB NO .                    TO : JOB NO .

TOTAL # Hours Assigned :                          Total # Hours Worked

| I/M POSITION # SER B.031 | DATE ASSIGNED 3-23-99 | ACTUAL WORK CONSISTS OF | PERIOD COVERED BY REPORT Jan 99 – One 99 |
|---|---|---|---|

RECOMMENDED FOR :  ☐ REASSIGNMENT  ☒ RETAIN  ☐ PAY INCREASE  ☐ PAY DECREASE    INMATE'S INITIALS X JH

COMMENTS ( IF MORE SPACE REQUIRED , USE REVERSE SIDE )

| SUPERVISOR    NAME & SIGNATURE  M. Train  Voc Inst. | LENGTH OF SUPERVISION | LOCATION CODE BVSE | ETHNICITY other |
|---|---|---|---|
| INMATE'S NAME  Hernandez | CDC NUMBER K31116 | INSTITUTION  S.V.S.P. | DATE 8-4-1999 |

WHITE = I/M ASSIGNMENTS /    YELLOW = SUPERVISOR /    PINK = INMATE

STATE OF CALIFORNIA                                                                                    DEPARTMENT OF CORRECTION

**GRADE**
S = SATISFACTORY
U = UNSATISFACTORY

| ATTITUDE | | TOTAL CERTIFICATION UNITS IN COURSE: | | |
|---|---|---|---|---|
| ADAPTABILITY | S | VOCATION (VOC) | 19 | |
| CONDUCT | S | ADULT BASIC EDUCATION (ABE) | | |
| COOPERATION | S | GENERAL EDUCATION DEVELOPMENT (GED) | | **TOTAL CERTIFICATION** |
| DEPENDABILITY | S | HIGH SCHOOL (H. SCH) | | **UNITS PRIOR TO THIS** |
| INITIATIVE | S | ENGLISH SECOND LANGUAGE (ESL) | | **QUARTER:** 8 |

LIST SPECIFIC CERTIFICATION UNITS COMPLETED
### V07.06.09  ROUTINE MAINTENANCE

| DATE STUDENT ENROLLED | DATE STUDENT TERMINATED | REASON FOR TERMINATION |
|---|---|---|
| 5-9-1998 | 3-23-1999 | assigned to teacher aid position in small engine |

COMMENTS.

                    DROP CHRONO
                    --------------------

I/M HERNANDEZ WAS AN EXCELLENT STUDENT IN THE SMALL ENGINE PROGRAM. HE HAD A
POSITIVE ATTITUDE, AND COMPLETED LAB PROJECTS WITH GREAT PRIDE AND A JOB WELL
DONE. HERNANDEZ WAS UNASSIGNED AS A STUDENT AND PLACED AS A TEACHER AID
POSITION IN THE VOCATONAL SMALL ENGINE REPAIR CLASS. HERNANDEZ HAS BEEN A
ROLE MODEL FOR OTHER PEER STUDENTS IN THE CLASS.

| DATE OF CHRONO 3-23-99 | COURSE | | GRADE | INSTRUCTOR |
|---|---|---|---|---|
| 4-8-1998 | VOC SMALL ENGINE REPAIR | | A+ | MR. TRAINA |
| CDC NUMBER | NAME (LAST, FIRST) | DOB | INSTITUTION | CELL |
| K21116 | HERNANDEZ | S | S.V.S.P. | B4-111U |

### EDUCATION PROGRESS REPORT

CDC 128-E (7/1

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**GRADE**
S = SATISFACTORY
U = UNSATISFACTORY

| ATTITUDE | | TOTAL CERTIFICATION UNITS IN COURSE: | |
|---|---|---|---|
| ADAPTABILITY | S | VOCATION (VOC) | 19 |
| CONDUCT | S | ADULT BASIC EDUCATION (ABE) | |
| COOPERATION | S | GENERAL EDUCATION DEVELOPMENT (GED) | **TOTAL CERTIFICATION** |
| DEPENDABILITY | S | HIGH SCHOOL (H. SCH) | **UNITS PRIOR TO THIS** |
| INITIATIVE | S | ENGLISH SECOND LANGUAGE (ESL) | **QUARTER:** 6 |

LIST SPECIFIC CERTIFICATION UNITS COMPLETED

V07.06.08                          08 IGNITION SYSTEMS

| DATE STUDENT ENROLLED | DATE STUDENT TERMINATED | REASON FOR TERMINATION |
|---|---|---|
| 5-9-1998 | | |

COMMENTS

    INMATE HERNANDEZ HAS BEEN SUCCESSFUL IN THE SMALL ENGINE REPAIR TRADE. HE HAS
COMPLETED ALL ASSIGNED TEXT BOOK ASSIGNMENTS ON TIME. HE HAS COMPLETED SEVERAL LAB
PROJECTS, SUCH AS, A GO-CART, ROTOR TILLER ENGINE REBUILD. HE HAS ASSISTED WITH BUILDING
SHOP TABLES AND HELPS OTHER STUDENTS. MR. HERNANDEZ IS AN OUTSTANDING STUDENT AND HAS A
POSITIVE ATTITUDE AND IS A POSITIVE ROLE MODEL FOR HIS PEERS.

| DATE OF CHRONO | COURSE | | GRADE | INSTRUCTOR |
|---|---|---|---|---|
| 1-4-1999 | VOCATIONAL SMALL ENGINE REPAIR | | S | MR. TRAINA |
| CDC NUMBER | NAME (LAST, FIRST) | D.O.B | INSTITUTION | CELL |
| K-21116 | HERNANDEZ, J | | S.V.S.P. | B4-111-U |

**EDUCATION PROGRESS REPORT**                                    CDC 128-E (7/1

17

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**GRADE**
S = SATISFACTORY
U = UNSATISFACTORY

**ATTITUDE**

| | GRADE |
|---|---|
| ADAPTABILITY | S |
| CONDUCT | S |
| COOPERATION | S |
| DEPENDABILITY | S |
| INITIATIVE | S |

**TOTAL CERTIFICATION UNITS IN COURSE:**

| | |
|---|---|
| VOCATION (VOC) | 19 |
| ADULT BASIC EDUCATION (ABE) | |
| GENERAL EDUCATION DEVELOPMENT (GED) | |
| HIGH SCHOOL (H. SCH) | |
| ENGLISH SECOND LANGUAGE (ESL) | |

**TOTAL CERTIFICATION UNITS PRIOR TO THIS QUARTER:** 03

LIST SPECIFIC CERTIFICATION UNITS COMPLETED

XXXXXXXXXXXXXXXXX     V07.06.04 , .05, .06, .07

| DATE STUDENT ENROLLED | DATE STUDENT TERMINATED | REASON FOR TERMINATION |
|---|---|---|
| 5-9-1998 | | |

COMMENTS.

Inmate Hernandez has successfully completed book assignments and Small Engine lab projects. He has done an outstanding job working on a minibike and Go Cart rebuilding projects. He is very helpful and assits other students with projects. He has good attendence and completes all assigned task.

| DATE OF CHRONO | COURSE | | GRADE | INSTRUCTOR | |
|---|---|---|---|---|---|
| 9-30-98 | Voc. Small Engine Repair | | SAT | Mr. Traina *M.T.* | JC |
| CDC NUMBER | NAME (LAST, FIRST) | D.O B | INSTITUTION | | CELL |
| K-21116 | Hernandez. J | | S.V.S.P | | B4-111-U |

**EDUCATION PROGRESS REPORT**

CDC 128-E (7/89)

TE OF CALIFORNIA                                                                                          DEPARTMENT OF CORRECTIONS

**GRADE**

S = SATISFACTORY
U = UNSATISFACTORY

**ATTITUDE**

| | | |
|---|---|---|
| ADAPTABILITY | S | |
| CONDUCT | S | |
| COOPERATION | S | |
| 'EPENDABILITY | S | |
| INITIATIVE | S | |

**TOTAL CERTIFICATION UNITS IN COURSE:**

| | |
|---|---|
| VOCATION (VOC) | 19 |
| ADULT BASIC EDUCATION (ABE) | |
| GENERAL EDUCATION DEVELOPMENT (GED) | |
| HIGH SCHOOL (H. SCH) | |
| ENGLISH SECOND LANGUAGE (ESL) | |

**TOTAL CERTIFICATION UNITS PRIOR TO THIS QUARTER:** 0

.T SPECIFIC CERTIFICATION UNITS COMPLETED

V07.06.01, .02, .03.

| TE STUDENT ENROLLED | DATE STUDENT TERMINATED | REASON FOR TERMINATION |
|---|---|---|
| 5-9-1998 | | |

IMMENTS

I/M HERNANDEZ HAS SUCCESSFULLY COMPLETED BOOK ASSIGNMENTS, AND
SMALL ENGINE LAB PROJECTS . HE HAS DONE AN OUTSTANDING JOB WORKING ON A
RIDING LAWNMOWER PROJECT WITH ANOTHER STUDENT. HERNANDEZ HAS A POSITIVE
ATTITUDE AND WORKS WELL WITH OTHERS. HE HAS GOOD ATTENDANCE AND COMPLETES
ASSIGNED TASKS ON TIME.

| IATE OF CHRONO | COURSE | | GRADE | INSTRUCTOR | |
|---|---|---|---|---|---|
| 6-30-1998 | VOC. SMALL ENGINE REPAIR | | S | MR. TRAINA | |
| 'DC NUMBER | NAME (LAST, FIRST) | D.O.B | INSTITUTION | | CELL |
| K21116 | HERNANDEZ,    J | | S.V.S.P. | | B4-111u |

**EDUCATION PROGRESS REPORT**

CDC 128-E (7/89)



SUMMARY: Cover Page of 1998 CDC 115 w/ Notation of Restored Credits.

EXH"E" — COVER

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS

# RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | RELEASE/BOARD DATE | INST | HOUSING NO | LOG NO. |
|---|---|---|---|---|---|
| K-21116 | HERNANDEZ | MEPD 9-16-2006 | S.V.S.P. | B4-111 | FB-98-02-02 |

| VIOLATED RULE NO(S) | SPECIFIC ACTS | LOCATION | DATE | TIME |
|---|---|---|---|---|
| 3005(c) | Mutual Combat | Fac. B Yard | 02-14-98 | 1930 |

CIRCUMSTANCES On Saturday, February 14, 1998, at approximately 1930 hours, while performing my duties as Facility B S & E #1, I was outside Building #4 supervising the evening meal release of only White, Hispanic and Other inmates due to controlled feeding and observed two (2) inmates, identified as Inmate Hernandez (K-21116, B4-111) and Inmate McDonald (C-46512, B4-213) striking each other in the upper body and head area with their fists. I immediately yelled, "Get down!" and ran to the area of the altercation. As I approached I again ordered the combatants to get down, the inmates did not comply. I then unholstered my Oleoresin Capsicum spray and warned the combatants that O.C. would be utilized, the combatants continued their actions. I then applied two (2), one (1) second bursts of O.C. pepper spray to the nose and lower facial area of Inmate McDonald. I then applied one (1), one (1) second burst of O.C. pepper spray to the nose and facial area of Inmate Hernandez. I proceeded to pull the two (2) inmates apart and placed Inmate Hernandez in handcuffs. Correctional Officer R.E. Council responded and placed Inmate McDonald in handcuffs. Correctional Officer R. McGowan escorted Inmate Hernandez to the Facility B Medical Clinic for evaluation and decontamination from exposure of O.C. pepper spray. Officer Council escorted Inmate McDonald to the Facility B Program Office holding cell. Subject is aware of this report.

| REPORTING EMPLOYEE (Typed Name and Signature) | | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|---|
| ▶ J. ROMO, Correctional Officer | | 2/17/98 | Fac. B S & E #1 | S/M |

| REVIEWING SUPERVISOR'S SIGNATURE | DATE | ☐ INMATE SEGREGATED PENDING HEARING | | |
|---|---|---|---|---|
| ▶ G. LEWIS, Sergeant | 2-16-98 | DATE N/A | LOC N/A |

| CLASSIFIED | OFFENSE DIVISION | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO |
|---|---|---|---|---|
| ☐ ADMINISTRATIVE  ☑ SERIOUS | D-b4-98 | 2/17/98 | ▶ A B FERNANDEZ | ☐ HO  ☑ SHO  ☐ SC  ☐ FC |

COPIES GIVEN INMATE BEFORE HEARING

| ☒ CDC 115 | BY: (STAFF'S SIGNATURE) | DATE 2/19/98 | TIME 1032 | TITLE OF SUPPLEMENT CDC 7219 MEDICAL REPORTS | | |
|---|---|---|---|---|---|---|
| ☒ INCIDENT REPORT LOG NUMBER SVP-FBY-98-02-0082 | BY: (STAFF'S SIGNATURE) | DATE 2/19/98 | TIME 1032 | BY: (STAFF'S SIGNATURE) | DATE 2/19/98 | TIME 1032 |

HEARING The purpose of this hearing was explained to Inmate Hernandez, who states his health is good. He was advised he will receive a complete copy of the CDC 115 upon final audit of the Chief Disciplinary Officer. He was also advised of his right to appeal, the methods of appealing and credit restoration procedures. Inmate Hernandez was not assigned a Staff Assistant. Inmate Hernandez waived assignment of the Investigative Employee, as documented in the CDC 115A, by his signature in the appropriate areas. Inmate Hernandez did not request any additional materials/evidence to be present at his hearing, nor did he request any staff or inmate witnesses to be called upon. Inmate Hernandez acknowledges receiving copies of all relevant documents more than 24 hours to his hearing. The charges have been read aloud, with Inmate Hernandez acknowledging his understanding of said charges.

Plea: Inmate Hernandez plead Not Guilty and made the following statement, "I shook hands with Inmate McDonald and I tripped and fell."

Findings: This SHO finds Inmate Hernandez, Guilty of CCR, Section 3005(c), specifically, "Mutual Combat." This finding is based on the preponderance of evidence which substantiates the charge. (Findings Continued on Supplemental page 2)

Disposition: Inmate Hernandez is assessed 90 days of credit forfeiture in accordance with a Division "D" offense. Counseled, warned and reprimanded.

REFERRED TO ☐ CLASSIFICATION  ☐ BPT/NAEA

| ACTION BY: (TYPED NAME) | SIGNATURE | | DATE | TIME |
|---|---|---|---|---|
| S.S. SHIPMAN, Correctional Lieutenant | ▶ | 3-6-98 | 3/6/98 | 1200 |

| REVIEWED BY: (SIGNATURE) | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE | DATE |
|---|---|---|---|
| ▶ J.M. MATTINGLY, Facility Captain  FC | 03-09-98 | ▶ E. E. TINGEY, Associate Warden | 3/9/98 |

| | ☒ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | BY: (STAFF'S SIGNATURE) | ▶ | DATE 3/16/98 | TIME |
|---|---|---|---|---|---|



SUMMARY: Amended Psych Report

INMATE COPY

# AN ADDENDUM
## TO A PSYCHOLOGICAL EVALUATION
### DATED 1/18/06

**NAME:**          **HERNANDEZ, JESSE**
**CDC#:**          **K-21116**
**DATE:**          **4/26/06**

Mr. Hernandez appealed the psychological evaluation by Dr. Laura Petracek, because it had several errors in it. His appeal was granted. As a result, he was given a new interview to correct those errors. He was interviewed for 90 minutes.

## I.    IDENTIFYING INFORMATION:

Mr. Hernandez noted several errors under "Identifying Information." He is 47 years of age. He is not Hispanic, but he has an Italian and Indian background. He is listed as "other." He is not a Catholic, but is a Christian. The Psychological Evaluation, dated 1/18/06, was his initial evaluation, and as a result, there were no prior board reports to which to refer.

### VOCATIONAL:

Mr. Hernandez is a skilled floor contractor. However, he has not been trained as an electrician and as a dry wall installer. This information was in error.

### FAMILY HISTORY:

It is not true that he was born in Mexico. It is not true that the primary language spoken at home was Spanish, and that since then he has learned English.

### MARITAL HISTORY:

It is not true that there is one incident of domestic violence with Rhonda. There was no domestic violence.

### MILITARY HISTORY:

He served in the Army Airborne in 1977. He injured his back, and he was given a medical discharge. He received an honorable discharge.

K-21116
4/26/06
PAGE 2

## SUBSTANCE ABUSE HISTORY:

Mr. Hernandez used methamphetamines from 1991 to 1992, when he was dating victim Christine Wolf. She has a history of methamphetamine use. He stopped and has never used since. He disagrees with the description of substance abuse, because he stated that he never really abused methamphetamines, but he did use them.

## CURRENT DIAGNOSTIC IMPRESSION

Mr. Hernandez disagrees with the diagnosis of "Methamphetamine Abuse by History, in institutional remission."

XII.  **REVIEW OF LIFE CRIME**

Mr. Hernandez stated that he is innocent of the charges. He stated that he was falsely accused. He is anxious to prove his innocence. He is willing to take a polygraph examination.

XIII.  **ASSESSMENT OF DANGEROUSNESS**

Mr. Hernandez disagrees with the assessment that violence risk is slightly higher than the average citizen. He notes that he has no criminal record, and he has no disciplinaries. I agree, based upon his record, he does not appear to impose any more risk to society than the average citizen.

M. Macomber, Ph.D.
Correctional Psychologist
Correctional Training Facility, Soledad

B. Zika, Ph.D.
Senior Psychologist
Correctional Training Facility, Soledad

D:    4/26/06
T:    4/27/06

INMATE COPY

NAME _Hernandez_____ CDC # _KZ1116_____ CDC 128-B

In preparation for the Schedule Board of Prison Terms Lifer Prisoner Hearing:

☐   No accommodation is required per the Armstrong II Remedial Plan.

☐   Accommodation to effectively communicate is required per Armstrong II Remedial Plan and was accomplished by _____

☒   I have received a copy of the Life Prisoner Hearing Psychiatric Report

Date _5/1/06_        _____        MARTHA E. GLEASON, Ph.D.
                     Inmate Signature / CDC #         CTF-STAFF PSYCHOLOGIST
                                                      P.O. BOX 686
                     Institution: CTF – Soledad       SOLEDAD, CA 93960
                                                      128-B General Chrono



Correctional Training Facility*** CTF  C  ***
The Master Ducat list for *Monday, May 01, 2006*
Please Release the Following Inmates to the Destination(s) Indicat

# Priority Ducats

## 2ND FLOOR INFIRMARY

*Requested by: DAVILA M*                4188

| PHIFER | E66539 | WOODS | CW / | 206L | CWG2 | 0730 |
|---|---|---|---|---|---|---|
| SHOULD | F03575 | WOODS | DW / | 02L | BRC1 | 0800 |
| ELLIS | H23217 | WOODS | EW / | 121L | EWG3 | 0800 |
| PHENGM | T75883 | WILCOX M | GD / | 009U | PKIT | 0800 |
| HERRER | H21026 | WILCOX M | GW / | 323U | ESL2 | 0900 |
| MOSLEY | P66115 | WOODS | YW / | 307U | PCUL | 1000 |
| MORGA | D28633 | WILCOX M | GD / | 041U | DH2S | 1000 |
| SANDER | D02433 | WOODS | FW / | 104L | AJC | 1000 |
| WHEATO | D61508 | WOODS | EW / | 128L | GED | 1000 |
| ANDERS | C39221 | WILCOX M | FW / | 218L | PAI | 1100 |

## 2ND FLOOR INFIRMARY

*Requested by: HANSON J*                4179

| WOODS | J04537 | KATZ | FW / | 343U | A3-1 | 0800 |
|---|---|---|---|---|---|---|
| WILEY | V41095 | TALBOTT | YW / | 239L | YWG3 | 0830 |
| MISITA | D40505 | TALBOTT | EW / | 202L | EDU1 | 0830 |
| HALL | V81901 | TALBOTT | CW / | 126U | BRC1 | 0900 |
| AINSWO | H76014 | GLEASON | DW / | 133L | A2-3 | 1300 |
| SIRAT | P78847 | KATZ | GW / | 110U | GYM3 | 1300 |
| MILLER | C13017 | KATZ | FW / | 230U | ATRA | 1330 |
| CLARK | E49365 | GLEASON | ZW / | 115U | DH1S | 1430 |
| MITCHE | C41795 | KATZ | ED / | 026L | ED1 | 1500 |
| WILLIA | H60006 | TALBOTT | GD / | 051U | GYM2 | 1530 |
| HERNAN | K21116 | GLEASON | GW / | 104U | GED | 1530 |

## 2ND FLOOR INFIRMARY

*Requested by: TORRES R*                4340

| WRIGHT | V67191 | EVAL | FW / | 359A | ATRA | 0945 |
|---|---|---|---|---|---|---|
| HERRER | T20002 | EVAL | YW / | 130U | DH1S | 1015 |

## BPT COMPLEX RM

*Requested by: TORRES R*                4340

| PLAZA | H12371 | BPT HEARI | FW / | 338U | MCUT | 1200 |
|---|---|---|---|---|---|---|
| MORGA | H85828 | BPT HEARI | FW / | 216L | FWW2 | 1200 |
| JONES | E40401 | BPT HEARI | GW / | 319I | INMA | 1400 |

## PROOF OF SERVICE BY MAIL

(C.C.P. §§1013A, 2015.5)

STATE OF CALIFORNIA )
                     ) SS.
COUNTY OF MONTEREY )

I, _PAUL HEBBE (P-04364)_____, am a resident of the State of California,

County of Monterey. I am over the age of 18 years and I ~~am~~/am not   a party to the within action.

My ~~business~~/residence   address is P.O. Box 689, Soledad, California, 93960-0689

On _December 20TH_____, 20 _06___. I served the foregoing:

_Petition for Writ of Habeas Corpus (For party so designated as Petitioner)_

on the parties listed below by placing a true copy thereof enclosed in a sealed envelope with postage

fully prepaid in the United States mail at Soledad, California, addressed as follows:

ATTN: Clerk of the Court                    Bill Lockyer, Attorney General, et al
San Diego County Superior Court             c/o Office of the Attorney General
220 W. Broadway                             P.O. Box 85266
San Diego, CA 92112-2724                    San Diego, CA 92186-5266
Mailed to P.O. Box 122724
San Diego CA 92112-2724

There is regular delivery service by the U.S. Postal Service between the place of mailing

and the places so addressed.

I declare under the penalty of perjury under the laws of the State of California that the

foregoing is true and correct.

Executed this _20TH__ day of _December_____, 20 _06___, at

Soledad, California.

/S/ _Paul R. Hebbe_

# SUPPORTING
# DOCUMENT
# " I "

SUMMARY: Superior Court Order Related to Habeas Petition

```
                                            F I L E D
                                            Clerk ...
                                            FEB 2 0 2007
                                            By: Y. BRENNAN, Deputy
```

1

2

3

4

5

6

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9              **COUNTY OF SAN DIEGO, EAST COUNTY DIVISION**

10

11  IN THE MATTER OF THE APPLICATION OF:        )
                                                )      EHC 550
12                                              )
                                                )
13  JESSE HERNANDEZ,                            )      SCE 167745
                                                )
14                                              )      ORDER DENYING
                       PETITIONER.              )      PETITION FOR WRIT
15                                              )      OF HABEAS CORPUS
                                                )
16  ——————————————————————————————————————————)

17          THIS COURT HAVING READ THE PETITION FOR WRIT OF HABEAS CORPUS

18  AND THE FILE IN THE ABOVE CAPTIONED MATTER FINDS AS FOLLOWS:

19          On July 17, 1996, after a jury trial presided over by the Honorable Louis R. Hanoian,

20  Petitioner was found guilty of attempted premeditated murder in violation of Penal Code §

21  664\187(a)\189, being in possession of a destructive device in violation of Penal Code §

22  12303.2, attempt to burn in violation of Penal Code § 455, two counts of vandalism less than

23  $1,000 in violation of Penal Code § 594(a)(b)(4), and stalking in violation of Penal Code §

24  646.9(a).  The jury also found that Petitioner had personally used a deadly and dangerous

25  weapon within the meaning of Penal Code § 12022(b) with regards to the attempted murder

26  charge.  On September 9, 1996, Petitioner was sentenced to life with the possibility of parole

27  plus five years and four months in state prison.

28          Petitioner, Jesse Hernandez, CDC No. K-21116, is currently housed at the

                                            1

1  Correctional Training Facility in Soledad, California. On March 26, 2006, a Life Term Parole

2  Consideration Hearing was held. At the conclusion of the hearing, the California Board of

3  Parole Hearings denied parole for two years. The decision was made final on July 24, 2006.

4  On January 2, 2007, Petitioner filed the present petition. Petitioner contends that he

5  was improperly denied parole for the following reasons:

6  (1) The Board used a factor of non-applicable circumstance of unsuitability. One of

7  the reasons parole was denied was that there were multiple victims in separate incidents.

8  However, the Board only has jurisdiction over indeterminate sentences. The indeterminate

9  sentence arose from the attempted murder charge in which there was only one victim.

10  (2) The Board claimed that they did not have a clear understanding of the motive for

11  the crime. The Petitioner does not admit guilt and is not required to explain any motive for

12  the crime. The Board never pointed to any factor from the offense, which made the Petitioner

13  unsuitable for parole.

14  (3) The Board failed to point to any lack of program that makes Petitioner an

15  unreasonable risk to society if released. Petitioner has never received any disciplinary action

16  while in prison during his commitment for this offense.

17  (4) The Board's unsuitability rationale that the record showed Petitioner had not

18  participated in beneficial self-help programs is an abuse of power by being arbitrary. The

19  records shows Petitioner did participate in programs as available.

20  (5) The use of an eight year old prison disciplinary act is beyond the scope of the

21  Board's authority. The serious discipline for mutual combat in February 1998 occurred during

22  the Petitioner's determinate term, prior to his indeterminate term. Petitioner received all lost

23  credits back for this disciplinary action.

24  (6) Petitioner's due process rights were violated when the Board relied on an

25  inaccurate psychological report. Also, the Board acknowledged that there were inaccuracies

26  in the report, but took the report in consideration in their decision to deny parole. Further, the

27  Board failed to correct the record after the report was amended.

28  (7) The Board's use of Petitioner's prior alcohol and substance abuse is a violation of

1  due process.  These are unchanging factors and there was no evidence that Petitioner is

2  presently addicted or using alcohol or drugs.

3         (8)  Petitioner's due process rights were violated when the Board concluded that

4  Petitioner denies any responsibility for his crime.  Petitioner does not have to admit guilt.

5  Further, "soul-searching" is vague and is not an unsuitability/suitability circumstance.

6         (9)  Petitioner was denied an impartial panel when they claimed Petitioner's gains

7  were recent and he had to demonstrate his ability to maintain gains over an extended period

8  of time.

9         (10)  Petitioner's due process rights were violated by the Board's decision to impose a

10  multi-year denial, as it was based on the reasons set forth above.

11         A petitioner in habeas corpus bears the burden of proving the facts upon which he or

12  she bases his or her claim for relief.  (*In re Riddle* (1962) 57 Cal.2d 848, 852.)  Every

13  petitioner, even one filing in pro per, must set forth a prima facie statement of facts which

14  would entitle him or her to habeas corpus relief under existing law.  (*In re Bower* (1985) 38

15  Cal.3d 865, 872; *In re Hochberg* (1970) 2 Cal.3d 870, 875 fn. 4.)

16         The court in *In re Ramirez* (2001) 94 Cal.App.4th 549, 564, states, "Judicial oversight

17  must be extensive enough to protect the limited right of parole applicants 'to be free from an

18  arbitrary parole decision…and to something more than mere pro forma consideration.'

19  (*Sturm, supra*, 11 Cal. 3d at p. 268.)  The courts may properly determine whether the Board's

20  handling of parole applications is consistent with the parole policies established by the

21  Legislature.  (Citation omitted.)   While courts must give great weight to the Board's

22  interpretation of the parole statutes and regulations, final responsibility for interpreting the law

23  rests with the courts.  (Citation omitted.)   Courts must not second-guess the Board's

24  evidentiary findings. (Citation omitted.)  However, it is the proper function of judicial review to

25  ensure that the Board has honored in a "practical sense" the applicant's right to 'due

26  consideration.'  (Citation omitted.)  This function is best served by examining the Board's

27  parole suitability rulings under a deferential abuse of discretion standard.   The Board's

28  decision should not be disturbed unless it has acted arbitrarily or capriciously.  Particular

3

1    deference must be accorded to the Board's factual determinations, which need only be
2    supported by some evidence."
3        In the present petition, Petitioner has failed to state a prima facie case for relief.
4    Based upon the documents and records provided by the Petitioner, this Court finds that the
5    Board's determination that Petitioner would pose an unreasonable risk of danger to society or
6    a threat to public safety if released from prison is supported by "some evidence" and there is
7    no showing the Board acted arbitrarily or capriciously.
8        Title 15 California Code of Regulations § 2401(c) sets forth the circumstances tending
9    to show unsuitability for release on parole.    The subsection states, "The following
10    circumstances each tend to indicate unsuitability for release.    These circumstances are set
11    forth as general guidelines; the importance attached to any circumstance or combination of
12    circumstances in a particular case is left to the judgment of the panel.    Circumstances tending
13    to indicate unsuitability include:

(1)    Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
(A)    Multiple victims were attacked, injured or killed in the same or separate incidents.
(B)    The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
(C)    The victim was abused, defiled or mutilated during or after the offense.
(D)    The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
(E)    The motive for the crime is inexplicable or very trivial in relation to the offense.
(2)    Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
(3)    Unstable Social History.  The prisoner has a history of unstable or tumultuous relationships with others.
(4)    Sadistic Sexual Offenses.   The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.
(5)    Psychological Factors.  The prisoner has a lengthy history of severe mental problems related to the offense.
(6)    Institutional Behavior.  The prisoner has engaged in serious misconduct in prison or jail."

1    In this case, there is no indication in the record that the Board made a finding that the

2  Petitioner's offense was in an especially heinous, atrocious or cruel manner pursuant to 15

3  CCR § 2402(c)(1) and limited itself to findings made under this subsection.  In addition to

4  some of the factors set forth in 15 CCR § 2402(c), the Board took into consideration other

5  permissible factors, as allowed in the Code of Regulations.

6    Title 15 CCR §§ 2402(b) and (d) sets forth additional factors that are to be considered

7  by the Board in determining parole eligibility.  15 CCR § 2402(b) states, "All relevant, reliable

8  information available to the panel shall be considered in determining suitability for parole.

9  Such information shall include the circumstances of the prisoner's social history; past and

10 present mental state; past criminal history, including involvement in other criminal misconduct

11 which is reliably documented; the base and other commitment offenses, including behavior

12 before, during and after the crime; past and present attitude toward the crime; any conditions

13 of treatment or control, including the use of special conditions under which the prisoner may

14 safely be released to the community; and any other information which bears on the prisoner's

15 suitability for release.  Circumstances which taken alone may not firmly establish unsuitability

16 for parole may contribute to a pattern which results in a finding of unsuitability."

17    Title 15 CCR § 2402(d) states, "The following circumstances each tend to show that

18 the prisoner is suitable for release.  The circumstances are set forth as general guidelines;

19 the importance attached to any circumstance or combination of circumstances in a particular

20 case is left to the judgment of the panel.  Circumstances tending to indicate suitability include:

21    (1)    No Juvenile Record.  The prisoner does not have a record of assaulting others
            as a juvenile or committing crimes with a potential of personal harm to victims.
22    (2)    Stable Social History.    The prisoner has experienced reasonably stable
            relationships with others.
23
      (3)    Signs of Remorse.  The prisoner performed acts which tend to indicate the
24            presence of remorse, such as attempting to repair the damage, seeking help for
            or relieving suffering of the victim, or indicating that he understands the nature
25            and magnitude of the offense.
26    (4)    Motivation for Crime.  The prisoner committed his crime as the result of
            significant stress in his life, especially if the stress has built over a long period of
27            time.
      (5)    Battered Woman Syndrome.  At the time of the commission of the crime, the
28            prisoner suffered from Battered Woman Syndrome, as defined in section

1    2000(b), and it appears the criminal behavior was the result of that victimization.
2    (6)    Lack of Criminal History.  The prisoner lacks any significant history of violent
      crime.
3    (7)    Age.  The prisoner's present age reduces the probability of recidivism.
     (8)    Understanding and Plans for Future.  The prisoner has made realistic plans for
4           release or has developed marketable skills that can be put to use upon release.
     (9)    Institutional Behavior.  Institutional activities indicate an enhanced ability to
5           function within the law upon release."

6

7        In reviewing the transcript of the Board of Parole Hearing, this Court finds that the

8    Board did properly consider the factors which were relied upon to deny parole.  In the present

9    case, the offenses for which the Petitioner was committed to state prison did involve multiple

10   victims in separate incidents.  Petitioner has not submitted any authority indicating that the

11   Board of Prison Terms is limited to the offense carrying the life sentence when considering

12   the circumstances underlying a Petitioner's incarceration.  Title 15 CCR § 2402(b) specifically

13   allows the Board to consider "the base and other commitment offenses, including behavior

14   before, during and after the crime."  Petitioner's commitment to state prison was based on the

15   attempted murder charge against the 12-year-old victim T. Tolle; the explosive device charge

16   was against victim Dan Tolle, as the device was found on his property; attempt to burn and

17   vandalism charges against victims James and Julie Sutton; and the stalking charge against

18   victim Christine Wolfe.  These offenses are all part of Petitioner's present commitment to

19   state prison.  Therefore, the Board has the right to take into consideration all of the persons

20   that were victimized by the activities of the Petitioner, which underlie the current basis for his

21   incarceration.    Thus, the multiple victims in separate instances factor was properly

22   considered by the Board.

23       As to the motive for the offense, the court in *In re Scott* (2004) 119 Cal.App.4[th] 871,

24   893, stated, "[a]n 'inexplicable' motive, as we understand it, is one that is unexplained or

25   unintelligible, as where the commitment offense does not appear to be related to the conduct

26   of the victim and has no other discernible purpose.  A person whose motive for a criminal act

27   cannot be explained or is unintelligible is therefore unusually unpredictable and dangerous."

28   In the present case, there is no showing that the crime resulted from some provocation on the

1   part of the victim.  The victim was 12 years old and was watering roses at her grandparents'

2   home when the Petitioner shot an arrow, which narrowly missed her.  In the probation report,

3   it was surmised that the victim looked similar to the Petitioner's ex-girlfriend, who he was

4   convicted of stalking.  No matter which person was the intended victim of Petitioner's actions,

5   there is no showing that the shooting of the arrow was related to the conduct of the victim or

6   had any discernible purpose.  Thus, the Board had the ability to find that the motive for the

7   crime is inexplicable.  Moreover, the Board had the right to consider motivation for the crime

8   under 15 CCR § 2402(d)(4) and did not have to make a finding that the crime was committed

9   in an especially heinous, atrocious, or cruel manner in order to consider the motive for the

10  crime.

11      The Board also had the ability to consider the fact the Petitioner had failed to

12  participate in beneficial self-help programs while in custody.  The Board's decision does show

13  that in making its determination the Board did weigh the Petitioner's participation in

14  programming in 1997 and 1998.  However, the Board also determined that Petitioner's

15  decision to wait until 2005 until he engaged in additional programming weighed against his

16  suitability for parole.  The only explanation provided by the Petitioner for failing to participate

17  in any additional self-help programs was that he was just participating in his job assignments

18  and was trying to focus on providing the best possible service he could.  Petitioner did not

19  show, as he contends, that he programmed as assigned and as available.  In addition,

20  Petitioner reliance on 15 CCR § 2410 is inapplicable, as it relates to the awarding of

21  postconviction credit, not the factors the Board can consider in determining parole suitability.

22  Thus, the Board was justified in considering the fact Petitioner failed to participate in any

23  meaningful self-help programs over the course of his incarceration to deny parole.

24      Further, the Board also had the ability to consider the disciplinary action for mutual

25  combat against the Petitioner while he has been incarcerated.  The fact that Petitioner may

26  have had his good time credits restored does not preclude the Board from considering

27  misconduct while in prison.  The Board did state that Petitioner had an exceptional

28  disciplinary history, however, the Board did have a right to consider the disciplinary

7

1   proceedings taken against Petitioner while incarcerated, as is permitted by 15 CCR §

2   2401(c)(6). Therefore, it was a factor properly considered when the Board was weighing the

3   suitability factors.

4        As pointed out in the present petition, there is no disputing that there are some factors

5   which are favorable to Petitioner's suitability for parole. However, the Board determined that

6   the positive factors do not outweigh the unsuitability factors outlined in its decision and as set

7   forth above. Petitioner has failed to show that the Board neglected to engage in an

8   individualized consideration of his suitability for parole. The importance to attach to any

9   circumstance or combination of circumstances in a particular case is left to the judgment of

10   the panel. The court in In re Powell (1988) 45 Cal.3d 894, 904, stated, "a parole rescission

11   was an abuse of discretion only when the authority acted 'without information, fraudulently, or

12   on mere personal caprice." There is no showing that the Board abused its discretion in the

13   present case and acted in an arbitrary manner in finding Petitioner presently unsuitable for

14   parole and determining that it was not reasonable to expect that parole would be granted at a

15   hearing during the following two years. Without a showing of abuse of discretion or violation

16   of due process, this Court cannot set aside the Board's decision.

17        Based on the foregoing, the petition for a writ of habeas corpus is hereby DENIED.

18        The clerk's office is directed to serve a copy of this Order on: (1) the Petitioner; (2) the

19   Office of the San Diego County District Attorney - Appellate Division; and (3) the Office of the

20   California Attorney General.

21   **IT IS SO ORDERED.**

22

23   DATED: FEB 2 0 2007

24                           HERBERT J. EXARHOS

                           JUDGE OF THE SUPERIOR COURT

25

26

27

28

## PROOF OF SERVICE BY MAIL
### BY PERSON IN STATE CUSTODY
(C.C.P. §§ 1013(A), 2015,5)

I, JESSE HERNANDEZ , declare:
I am over 18 years of age and I am party to this action. I am a
resident of CORRECTIONAL TRAINING FACILITY prison, in the County
of Monterrey, State of California. My prison address is:

JESSE HERNANDEZ , CDCR #: K-21116
CORRECTIONAL TRAINING FACILITY
P.O. BOX 689, CELL #: GW-109-Up
SOLEDAD, CA 93960-0689.

On April 8 , 2007 , I served the attached:

RES SUPPORTING DOCUMENTS TO SIMULTANEOUSLY FILED HABEAS CORPUS
PETITION DATED 4/8/07 AS REFERENCED

on the parties herein by placing true and correct copies
thereof, enclosed in a sealed envelope (verified by prison
staff), with postage thereon fully paid, in the United States
Mail in a deposit box so provided at the above-named institution
in which I am presently confined. The envelope was addressed as
follows:

ATTN: Clerk of the Court
Fourth District Court of Appeal
For the State of California
Division 1
750 B. Street, Suite 300
San Diego, CA
92101-8189

Edmund G. Brown Jr., Attorney General
c/o Office of the Attorney General
P.O. Box 85266
San Diego, CA
92186-5266

I declare under penalty of perjury under the laws of the
State of California that the foregoing is true and correct.
Executed on 4/8/2007 .

Declarant