JESSE JERNANDEZ    K-21116
P.O. BOX 689        GW-334U
SOLEDAD, CA    93960-0689
    Petitioner In pro per

# ORIGINAL

## FILED

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA   2 9 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JESSE HERNANDEZ** <br> Petitioner, <br><br><br> v. <br><br><br> **BEN CURRY, Warden** <br> Respondent. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Case No. C 07-5455 MMC (PR)
EVIDENTIARY HEARING REQUESTED

**TRAVERSE TO RESPONDENT'S ANSWER TO PETITIONER'S WRIT OF HABEAS CORPUS AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**

Judge  Honorable **MAXINE M. CHESNEY**
        U.S. District Judge

# TABLE OF CONTENTS

PAGE

COVER PAGE                                                       i

TABLE OF CONTENTS                                               ii

TABLE OF AUTHORITIES                                         iii-vi

INTRODUCTION                                                    1

DENIAL OF RESPONDENTS POINTS                                  2-5

MEMORANDUM OF POINTS AND AUTHORITIES                         6-32

    STANDARD OF REVIEW                               6-7

    PETITIONER IS ENTITLED TO AN EVIDENTIARY REVIEW        7-9

I.  THE STATE COURT'S DECISION WAS CONTRARY TO AND AN
    UNREASONABLE APPLICATION OF FEDERAL LAW BECAUSE IT RELIED
    UPON AN UNREASONABLE DETERMINATION OF THE FACTS.

  A. STANDARD OF REVIEW UNDER CALIFORNIA DUE PROCESS      11-14

  B. STANDARD OF REVIEW UNDER FEDERAL DUE PROCESS        14-22

    1. STATE LAW REQUIRES MORE THAN THE FEDERAL CONSTITUTION    22-24
        DOES OF ITS OWN FORCE WITH RESPECT TO PAROLE DECISIONS
        IN CALIFORNIA.

    2. APPLICATION OF THE "OTHERWISE ARBITRARY" PORTION OF     24-32
        THE SOME EVIDENCE STANDARD, AND EXTENT OF THE
        LIBERTY INTEREST.

CONCLUSION                                                     32

PROOF OF SERVICE                                               33

TABLE OF AUTHORITIES

AUTHORITY                                                                    PAGE

CONSTITUTIONAL AUTHORITIES

U.S. CONSTITUTION AMENDMENTS 5 & 14                                          passim

FEDERAL CASE LAW

AGYEMAN v. CORRECTIONS CORP. OF AMERICA (9th Cir. 2004)                      32
    390 F.3d 1101

ARCHULETA v. HEDRICK (2004)                                                 2,6
    365 F.3d 644

BAJA v. DUCHARME (9th Cir. 1999)                                            32
    187 F.3d 1075, cert. denied 528 U.S. 1079 (2000)

BIGGS v. TERHUNE (2003)                                                     passim
    334 F.3d 644

BOARD OF PARDONS v. ALLEN (1987)                                           passim
    482 U.S. 369

BRUCE v. TERHUNE (9th Cir. 2004)                                           28
    376 F.3d 950

CASWELL v. CALDERON (9th Cir. 2004)                                        22
    363 F.3d 832

COLEMAN v. BOARD OF PRISON TERMS (E.D.Cal. 2005)                           26
    No. 96-0783 LKK PAN

COOPER-SMITH v. PA (9th Cir. 2005)                                         6
    397 F.3d 1236

DUNN v. PAROLE COMN. (10th Cir. 1978)                                      22
    818 F.2d 742

EARP v. ORONSKI (9th Cir. 2005)                                           8,9
    43 F.3d 1158

GREENHOLTZ v. Inmates of Nebraska Penal Correctional Complex              passim
    442 U.S. 1 (1979)

HAYWARD v. MARSHALL (9th Cir. 2008)                                       3,4,7,21
    512 F.3d 536

IRONS v. WARDEN (E.D.Cal. 2005)                                           passim
    358 F.Supp.2d 936

IRONS v. CAREY (9th Cir. 2005)                                            3,26
    408 F.3d 1165, No. 05-15275

TABLE OF AUTHORITIES CONTINUED

AUTHORITY                                                          PAGE

FEDERAL CASE LAW CONTINUED

IRONS v. CAREY (9th Cir. 2007)                                    passim
    479 F.3d 658

IRONS v. CAREY (9th Cir. 2007)                                    21
    505 F.3d 846

JANCSEK v. BOARD OF PARDONS                                       22
    833 F.2d 1390

JOHNSON v. FINN (E.D.Cal. 2006                                    28,30
    2006 WL 195159 *8 n. 3.

JOINT ANTI-FASCIST REFUGEE COMN. v. McGRATH (1951)               27
    341 U.S. 123

KEENEY v. TAMAYO-REYES (1992)                                     8
    504 U.S. 1

LANKFORD v. IDAHO (1991)                                          26
    500 U.S. 110

LUNA v. CAMBRA (9th Cir. 2002)                                    28
    306 F.3d 954

MARTIN v. MARSHALL (N.D.Cal. 2006)                               26
    431 F.Supp.2d 1038

MASONER v. STATE (C.D.Cal. 2004)                                 30
    2004 WL 1080177 *1-2

McQUILLION v. DUNCAN (2001)                                       3,7,15
    306 F.3d 895

MORRISSEY v. BREWER (1972)                                        26
    408 U.S. 471

ROSENKRANTZ v. MARSHALL (C.D.Cal. 2006)                          26,27
    444 F.Supp.2d 1063

RYMAN v. SEARS, ROEBUCK AND CO. (9th Cir. 2007)                  9
    505 F.3d 993

SAIF ULLAH (2005)                                                31
    2005 WL 1555389 at *13-16

SANCHEZ v. KANE (C.D.Cal. 2006)                                  26
    444 F.Supp.2d 1049

SASS v. CALIFORNIA BOARD OF PRISON TERMS (9th Cir. 2006)         3,16,17
    376 F.Supp.2d 975

iv

TABLE OF AUTHORITIES CONTINUED

AUTHORITY                                                              PAGE

FEDERAL CASE LAW CONTINUED

SASS v. CALIFORNIA BOARD OF PRISON TERMS (9th Cir. 2006)        7,16-18
     461 F.3d 1123

SUPERINTENDENT v. HILL (1985)                                    passim
     472 U.S. 445

TAYLOR v. MADDOX (9th Cir. 2004)                                4,8,9,31
     366 F.3d 992

TOWNSEND v. SAIN (1963)                                          8
     372 U.S. 293

VLASAK v. SUPERIOR COURT OF CALIFORNIA EX REL.                  28
COUNTY OF LOS ANGELES   329 F.3d 683 (9th Cir. 2003)

WILLIAMS v. TAYLOR (2000)                                        27
     529 U.S. 362

UNITED STATES CODE

28 U.S.C. § 1915(d)                                              5

28 U.S.C. § 2254                                                3,6

STATE CASE LAW

In re BARKER (Cal.App. 1 Dist. 2007)                            20
     59 Cal.Rptr.3d 746

In re DANNENBERG (2005)                                          passim
     34 Cal.4th 1061

In re DUARTE (1983)                                             13
     143 Cal.App.3d 943

In re ELKINS (2007)                                              passim
     144 Cal.App.4th 475

In re LAWERENCE (Cal.App. 2 Dist. 2007)                         passim
     59 Cal.Rptr.3d 537

In re LEE (2006)                                                 passim
     143 Cal.App.4th 1400

In re ROSENKRANTZ (2002)                                         passim
     29 Cal.4th 616

In re ROSENKRANTZ                                                22
     80 Cal.App.4th 409

v

1

TABLE OF AUTHORITIES CONTINUED

2　　AUTHORITY                                                    PAGE

3                       STATE CASE LAW CONTINUED

4　　In re ROSENKRANTZ (2006)                                     24
　　　　Los Angeles Superior Court No. BH003529
5

6　　In re SCOTT I (2005)                                         21
　　　　119 Cal.App.4th 871

7　　In re SCOTT II (2005)                                     passim
　　　　133 Cal.App.4th 573, 34 Cal.Rptr.3d 905
8

9　　In re SHAPUTIS (2006)                                        29
　　　　135 Cal.App.4th at 231, 37 Cal.Rptr.3d 324

10　　In re Singler (Cal.App. 3 Dist. 2008)                      9,10
　　　　73 Cal.Rptr.3d 864
11

12　　In re TRIPP (2007)                                          10
　　　　150 Cal.App.4th 306

13　　People v. Murtishaw (1981)                                  25
　　　　29 Cal.2d 733
14

15　　In re WEIDER (Cal.App. 6 Dist. 2007)                        22
　　　　52 Cal.Rptr.3d 147

16                           STATE STATUTES

17　　Penal Code § 3041                                       passim

18                  CALIFORNIA CODE OF REGULATIONS

19　　§ 2268                                                       4

20　　§ 2402                                                     4,22

21

22

23

24

25

26

27

28

1  JESSE JERNANDEZ    K-21116
   P.O. BOX 689       GW-334U
2  SOLEDAD, CA    93960-0689
     Petitioner In pro per

3

4

5

6              IN THE UNITED STATES DISTRICT COURT

7            FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9

10    <u>JESSE HERNANDEZ</u>            )    Case No. C 07-5455 MMC (PR)
         Petitioner,               )    EVIDENTIARY HEARING REQUESTED
11                                  )
                                    )    **TRAVERSE TO RESPONDENT'S ANSWER TO**
12       v.                         )    **PETITIONER'S WRIT OF HABEAS CORPUS AND**
                                    )    **SUPPORTING MEMORANDUM OF POINTS AND**
13                                  )    **AUTHORITIES**
                                    )
14    <u>BEN CURRY, Warden</u>           )    Judge  Honorable **MAXINE M. CHESNEY**
         Respondent.               )            U.S. District Judge
15    _____)

16

17    COMES NOW PETITIONER IN PRO PER/PRO SE, JESSE HERNANDEZ, and submits

18  this TRAVERSE and MEMORANDUM OF POINTS AND AUTHORITIES TO RESPONDENT'S

19  ANSWER TO PETITIONER'S WRIT OF HABEAS CORPUS.

20    Petitioner denies all allegations set forth in the Respondent's answer

21  (except as noted otherwise) and makes the assertions set forth herein.

22

23

24

25

26

27

28                              1

1. Petitioner is not in the lawful custody of Warden B. Curry as he should have been released after serving his minimum term in accordance with the rules and regulations affecting parole suitability. (Please see Federal Petition C 07-5455 MMC (PR), and its supporting MEMORANDUM OF POINTS AND AUTHORITIES, incorporated here by reference as if presented in full).

2. Agreed

3. Agreed

4. Agreed. Petitioner exhausted his state court remedies regarding due process violations.

Denied. Petitioner asserts, claims and contends that according to ARCHULETA v. HEDRICK, (2004) 365 F.3d 644, when liberally construed, Petitioner's claims involving systemic problems/issues where adequately exhausted.

5. Agreed

6. Denied. Petitioner asserts, claims and contends that the Board's and State Court's decisions were an unreasonable application of clearly established federal law as determined by the United States Supreme Court, and were also an unreasonable determination of the facts as presented in the instant petition.

7. Denied. The 5th and 14th Amendments prohibit the government from depriving an inmate of life, liberty, or property without due process of law. U.S. Const. amends. V, XIV. Contrary to respondent's position, it is now settled that California's parole scheme, codified in California Penal Code section 3041, vests all "prisoners whose sentences provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due

2

1   Process Clause." Hayward v. Marshall, 512 F.3d 536, 542 (9th Cir.

2   2008); Irons v. Carey, 479 F.3d 658, 662 (9th Cir. 2007) (citing Sass

3   v. Calif. Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006);

4   Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003); McQuillion v.

5   Duncan, 306 F.3d 895, 903 (9th Cir. 2002)).

6   8. Denied.  Due process requires that a parole board premise its decision

7      on "some evidence in the record" such that it is not arbitrary.

8      Hayward, 512 F.3d at 542; Sass, 461 F.3d at 1128-29 (quoting

9      Superintendent v. Hill, 472 U.S. 445, 457, 105 S.Ct. 2768, 86 L.Ed.2d

10     356 (1985)).  Due process also requires that the evidence underlying

11     the parole board's decision have some indicia of reliability.  Biggs,

12     334 F.3d at 915; McQuillion, 306 F.3d at 904.

13  9. Denied.  Due process requires that a parole board premise its decision

14     on "some evidence in the record" such that it is not arbitrary.

15     Hayward, 512 F.3d at 542; Sass, 461 F.3d at 1128-29 (quoting

16     Superintendent v. Hill, 472 U.S. 445, 457, 105 S.Ct. 2768, 86 L.Ed.2d

17     356 (1985)).  The "some evidence" standard is clearly established

18     federal law in the parole context for purposes of § 2254(d). Id. at

19     1129.

20  10. Denied.  Petitioner asserts, claims and contends that Board's decision

21      was unsupported by the evidence and otherwise arbitrary and capricious.

22      as set forth in the instant petition.

23  11. Denied.  As noted in points 8 and 9 above, the Board's and Court's

24      decisions must be supported by reliable evidence in the record.

25      Additionally, Petitioner asserts, claims and contends that the "some

26      evidence" test "...is not whether some evidence supports the reasons

27      the Governor [Board] cites for denying parole, but whether some evidence

28      indicates a parolee's release unreasonably endangers public safty.

3

Some evidence of the existence of a particular factor does not
necessarily equate to some evidence the parolee's release unreasonably
endangers public safety." Hayward v. Marshall, 512 F.3d 536, 543
(citing Lee, 143 Cal.App.4th at 1408, 49 Cal.Rptr.3d 931; citations
and footnote omitted); see also In re Elkins, 144 Cal.App.4th 475,
499, 50 Cal.Rptr.3d 503 (Cal.Ct.App.2006) (holding that the "governor,
[Board] in reviewing a suitability determination, must remain focused
... on facts indicating that release currently poses 'an unreasonable
risk of danger to society'" (citing Cal.Code Regs. tit. 15, §
2402(a)))); Scott, 133 Cal.App.4th at 591, 34 Cal.Rptr.3d 905 ("The
factor statutorily required to be considered, and the overarching
consideration, is 'public safty.'" (citing Penal Code § 3041(b)))).

12. Denied.   Liberally construed, Petitioner's claim that the Board
    improperly relied on a disciplinary report is another facet of the
    Violation of Due Process claim.  The Board cannot deny parole based
    on a circumstance that does not meet the "some evidence bearing and
    indicia of reliability" test or indicating that Petitioner is currently
    an unreasonable risk of threat to public safety.

13. Denied.  The Board's regulations, CCR § 2268, specify that subsequent
    hearings will be held at one year intervals.  Lacking "some evidence
    bearing an indicia of reliability" to issue a multi-year denial violates
    due process.

14. Denied.  No state court issued an order to show cause or gave Petitioner
    a hearing to present evidence on disputed facts.  "Where a state court
    makes evidentiary findings without holding a hearing and giving
    petitioner an opportunity to present evidence such findings clearly
    result in an 'unreasonable determination' of the facts.  Taylor v.
    Maddox, 336 F.3d 992, 1001 (9th Cir. 2004).

4

15. Petitioner acknowledges that he does not have a RIGHT to have an attorney appointed in this case. However, in accordance with 28 U.S.C. § 1915(d), the court may appoint counsel for good cause. Petitioner asks the court to take notice of the accompanying EX PARTE MOTION FOR APPOINTMENT OF COUNSEL, AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION. Such other prayers for relief as are before the court, objected to by respondents, are submitted in good faith.

16. Petitioner asserts, claims and contends that he has submitted a prima facie case and is therefore due the relief requested.

17. Petitioner asserts, claims and contends that the Respondents failure to specifically oppose grounds 2, 3, 4, 6, 7, 8, and 9 amounts to an acceptance of the arguments submitted on these grounds and requests this Court issue such a ruling.

18. Except as expressly admitted in this TRAVERSE, Petitioner denies the allegations of the Answer.

//

//

5

MEMORANDUM OF POINTS AND AUTHORITIES

HERNANDEZ v. CURRY   Case No. C 07-5455 MMC (PR)

INTRODUCTION

In that Petitioner is a pro se / pro per litigant with absolutely no training in the law whatsoever, limited access to the Law Library for research and preparation of his litigation, and no assistance or help except from other non-trained prisoners, lacks the expertise to properly present his issues, he therefore prays this Honorable Court will "liberally construe" his habeas petition and Traverse (ARCHULETA v. HEDRICK, (2004) 365 F.3d 644).

Respondent argues that Petitioner has no legal stating before this court and that his claims are without merit. However, were this true, Respondent would have filed a Motion To Dismiss instead of an Answer. In effect, Respondent has acknowledged and accepted that Petitioner has presented 'colorable' claims in his petition. As such, Petitioner moves the Court to assign counsel to represent Petitioner and order an Evidentiary Hearing to give Petitioner the opportunity to present evidence on disputed facts.

DISCUSSION

STANDARD OF REVIEW

Under the AEDPA a federal court may not grant habeas relief unless the state court decision challenged is contrary to, or involves an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States 28 U.S.C. § 2254(a)(1). AEDPA limits the source of clearly established federal law to Supreme Court precedent, including the legal principles that flow from that precedent. COOPER-SMITH v. PALMATEER, 397 F.3d 1236, 1242 (9th Cir. 2005).

Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442

1   U.S. 1 (1979) established that all that is required by the Due Process

2   Clause of the United States Constitution of its own force is that an inmate

3   be afforded an opportunity to be heard and when parole is denied that the

4   inmate be informed in what respects he falls short of qualifying for parole.

5   (Id. at 16) However, Greenholtz, also established that the language and

6   structure of state statutes may create liberty interests which are entitled

7   to greater federal protection than afforded by the Due Process Clause of

8   its own force. (Id. at 12; see also Board of Pardons v. Allen, 482 U.S.

9   369, 377-378 (1987).)

10      The Ninth Circuit has determined that under the 'clearly established'

11   framework of Greenholtz and Allen, California's parole scheme gives rise

12   to a cognizable liberty interest in parole. (McQuillion v. Duncan, 306

13   F.3d 895, 902 (2002)). Further, "this liberty interest is created, not

14   upon the grant of a parole date, but upon the incarceration of the inmate."

15   (Biggs v. Terhune, 334 F.3d 910, 915 (9th Cir. 2003) Irons v. Carey, 479

16   F.3d 658, 662 (9th Cir. 2007) (citing Sass v. Calif. Bd. of Prison Terms,

17   461 F.3d 1123, 1128 (9th Cir. 2006); HAYWARD v. MARSHALL, 512 F.3d 536,

18   542 (9th Cir. 2008).

19      Six years after Greenholtz, Superintendent v. Hill, 472 U.S. 445, 523

20   (1985), established the "some evidence" rule. The controlling United States

21   Supreme Court law in this parole context is now "clearly established"

22   Supreme Court precedent. A parole board's decision, like a prison

23   disciplinary board's decision, deprives a prisoner of due process if it

24   is not supported by "some evidence" or is otherwise arbitrary. (Id. at

25   457).

26                PETITIONER IS ENTITLED TO AN EVIDENTIARY HEARING

27      The most important standard of review to be considered at this juncture

28   in the litigation – the standard this court must apply in deciding whether

                                      7

1   or not to grant Petitioner an evidentiary hearing on one or more of the

2   habeas corpus claims is:

3       A Petitioner on federal habeas corpus is entitled to an
        evidentiary hearing where the Petitioner has established a
4       "colorable claim" for relief, and where the Petitioner has
        never been accorded a state or federal hearing on his claim.
5       EARP v. ORONSKI, 43 F.3d 1158, 1167 (9th Cir. 2005), citing
        Townsend v. Sain, 372 U.S. 293 (1963) and Keeney v. Tamayo-
6       Reyes, 504 U.S. 1, 5 (1992).
        In stating a "colorable claim", a Petitioner is merely required
7       to allege specific facts, which, if true, would entitle him
        to relief. Ibid.
8

9       Granted, under the AEDPA, a federal court is not required to order

10  a hearing where the Petitioner failed to develop the facts in state court.

11  In such cases, the federal court accords a presumption of correctness to

12  the facts found by the state court, and need not hold any evidentiary

13  hearing unless those facts are rebutted by clear and convincing evidence.

14  On the other hand, no AEDPA deterence is due where the state has made an

15  "unreasonable determination of the facts" and:

16      Where a state court makes evidentiary findings without holding
        a hearing and giving Petitioner an opportunity to present
17      evidence such findings clearly result in an 'unreasonable
        determination' of facts. Taylor v. Maddox, 366 F.3d 992, 1001
18      (9th Cir. 2004)

19      In sum, an evidentiary hearing is required under the AEDPA and an

20  appellate court will remand for a hearing if the district court rules

21  without granting one:

22      ...where the petitioner has established a "colorable claim"
        for relief, and where the petitioner has never been accorded
23      a state or federal hearing on his claim. EARP, supra, at 1167

24      Here, Petitioner requested an evidentiary hearing at every level of

25  the state proceedings, and each of the courts to which he applied ruled

26  without granting him an evidentiary hearing. As a result, (1) Petitioner

27  is entitled to an evidentiary hearing in this court before the court can

28  make any credibility determinations on the facts alleged in the petition

8

1 and supporting exhibits; and (2) Any controverted "facts" found by the

2 state court while denying a request for an evidentiary hearing necessarily

3 results from an "unreasonable determination" of the facts, and hence are

4 not entitled to any presumption of correctness. EARP, supra, at 1167;

5 Taylor, supra at 1101:

> Where the state court's legal error infects the fact finding
> process, the resulting factual determination will be
> unreasonable and no presumption of correctness can attach to
> it.

I. **THE STATE COURT'S DECISION WAS CONTRARY TO AND AN
UNREASONABLE APPLICATION OF FEDERAL LAW BECAUSE IT RELIED
UPON AN UNREASONABLE DETERMINATION OF THE FACTS.**

11 Petitioner humbly relies on rulings from the courts to base his

12 arguments and seeks to present the relevant parts of said rulings here.

13 The Ninth Circuit has recently ruled:

> [1] Today we reiterate the rule that when (1) a federal court
> is required to apply state law, and (2) there is no relevant
> precedent from state's highest court, but (3) there is relevant
> precedent from the state's intermediate appellate court, the
> federal court must follow the state intermediate appellate
> court decision unless the federal court finds convincing
> evidence that the state's supreme court likely would not follow
> it. (RYMAN v. SEARS, ROEBUCK AND CO., 505 F.3d 993 (9th Cir.
> 2007)

19 Based upon that ruling, and because the California Supreme Court has

20 ruled in contradicting ways concerning the "some evidence" test (see in

21 particular In re Singler, 73 Cal.Rptr.3d 864, 868 ("The Supreme Court's

22 order...indicates to us the Supreme Court has endorsed subsequent Court

23 of Appeal decisions that give courts greater leeway in reviewing the Board's

24 determination that an inmate remains a danger to public safety."),

25 Petitioner presents arguments from state appellate courts to prove his

26 claim that there was not "some evidence bearing an indicia of reliability"

27 that he is currently an unreasonable risk of threat to public safety.

28 The following excerpts are taken from the Third District Appellate

1    Court Decision In re Singler, 73 Cal.Rptr.3d 864 (Cal.App. 3 Dist. 2008).

2        [7] "The factor statutorily required to be 'considered,' and
     the overarching consideration, is 'public safety.'" (In re
3    Scott, 133 Cal.App.4th 573, 591, 34 Cal.Rptr.3d 905 (herein
     after Scott).)  Therefore, "the determination of suitability
4    for parole involves a paramount assessment of the public safety
     risk posed by the particular offender." (In re Dannenberg,
5    (2005) 34 Cal.4th 1061, 1084, 23 Cal.Rptr.3d 417, 104 P.3d
     783 (hereinafter Dannenberg); see also Pen. Code § 3041, subd.
6    (b); [CCR] §§ 2401, 2402, subd. (a).)  As previously noted,
     the decision to deny parole cannot be arbitrary or capricious.
7    (In re Rosenkrantz, 29 Cal.4th 616, 677, 128 Cal.Rptr.2d 104,
     59 P.3d 174.)
8

9        [8] Accordingly, the relevant test is not whether some evidence
     supports the reasons cited for denying parole, "but whether
10   some evidence indicates [an inmate's] release unreasonable
     endangers public safety." (In re Lee, supra, 143 Cal.App.4th
11   at p. 1048, 49 Cal.Rptr.3d 931, & italics omitted
     (hereinafter Lee); (fn. 2 it is to this statement in Lee that
12   the California Supreme Court specifically directed us in its
     order granting review and transferring the matter to us.);
13   see also In re Tripp, (2007) 150 Cal.App.4th 306, 313, 58
     Cal.Rptr.3d 64 ["evidence must substantiate the ultimate
14   conclusion that the prisoner's release currently poses an
     unreasonable risk of danger to the public"].)
15
         [9] Some evidence of the existence of a particular factor does
16   not necessarily equate to some evidence the parolee's release
     unreasonably endangers public safety." (Lee, supra, 143
17   Cal.App.4th at p. 1409, 49 Cal.Rptr.3d 931.)  "For example,
     a seriously troubled adolescence, even for an 80-year-old
18   inmate, might constitute 'some evidence' of 'a history of
     unstable or tumultuous relationships with other.' ([] § 2402,
19   subd. (c)(3).)  It would not necessarily be some evidence of
     an unreasonable danger to public safety." (Id. at p. 1409,
20   fn. 4, 49 Cal.Rptr.3d 931.)  In re Singler, supra, 73
     Cal.Rptr.3d at 874.

21       The following excerpts are taken from the Second District Appellate

22   Court Decision In re Lawrence, 59 Cal.Rptr.3d 537 (Cal.App. 2 Dist. 2007).

23       The California Supreme Court has formulated a standard of review
     in parole denial cases, a "some evidence" test, based on the
24   due process requirements of the California Constitution.
     Meantime, the Ninth Circuit has constructed a standard of review
25   in such cases based on the due process clause of the U.S.
     Constitution.  This federal standard applied by district courts
26   in the Ninth Circuit also uses the "some evidence" language
     - requiring affirmance of the decision denying parole if that
27   decision is supported by "some evidence."  Thus, it is not
     absolutely clear there indeed are two different standards of
28   review - a California state standard and a federal standard.

But it is clear the Ninth Circuit has added content to the federal test not yet found in the California Supreme Court's elaboration of its "some evidence" standard. Lawrence, supra, 59 Cal.Rptr.3d at 549-50 (Cal.App. 2 Dist. 2007).

While the Lawrence case concerns a Governor's reversal of a Board's grant of parole, it is nonetheless relevant to this denial of parole by the Board (and the state court's decisions to uphold that finding), in that it involves the very concept of lack of supporting evidence to sustain such decisions. "...this same decision while granting prisoner's judicial review when either a Board or Governor denies them parole," (Lawrence, supra, 59 Cal.Rptr.3d at 550)

### A. Standard of Review Under California Due Process

In a pair of recent opinions the California Supreme Court has outlined the courts' scope of review under the California Constitution when a Governor overturns a Board's grant of parole to a prisoner serving an indeterminate sentence. Rejecting the Governor's position the courts had no role in reviewing nor power to reverse a Governor's veto of a Board's positive recommendation, In re Rosenkrantz, The Supreme Court held, "[t]o the extent the Governor asserts that the court is not authorized to determine whether the Board's parole decision has a factual basis and thus satisfied the requirements of due process of law, we disagree..." (In re Rosenkrantz, (2002) 29 Cal.4th 616, 617, 128 Cal.Rptr.2d 104, 59 P.3d 174.) [C]onstitutional criteria that limit the Governor's review of a parole decision... and give rise to a protected liberty interest under the California due process clause." (In re Rosenkrantz, supra, 29 Cal.4th at page 660, 128 Cal.Rptr.2d 104, 59 P.3d 174.) "Under California law" this liberty interest underlying a Governor's parole review decisions is protected by due process of law." (In re Rosenkrantz, supra, 29 Cal.4th at page 661, 128 Cal.Rptr.2d 104, 59 P.3d 174.) But this same decision while granting prisoner's judicial review when either a Board or Governor denies them parole, also took away much of the courts' ordinary power when reviewing those determinations. First, the Supreme Court addressed judicial review of a Board's decision. "[W]e conclude that the judicial branch is authorized to review the factual basis of a decision of the Board denying parole in order to ensure that the decision comports with the requirements of due process of law, but that in conducting such a review, the court may inquire only whether some evidence in the record before the Board supports the decision to deny parole, based upon the factors specified by statute and regulation." (In re Rosenkrantz, supra, 29 Cal.4th at page 658, 128 Cal.Rptr.2d 104, 59 P.3d 174) Then the Court

11

held, "the courts properly can review a Governor's decisions whether to affirm, modify, or reverse parole decisions by the Board to determine whether they comply with due process of law, and that such review properly can include a determination of whether the factual basis of such a decision is supported by some evidence in the record that was before the Board." (In re Rosenkrantz, supra, 29 Cal.4th at 667, 128 Cal.Rptr.2d 104, 59 P.3d 174 underline substituted for added italics) Other than reiterating the "some evidence" standard of review, the Supreme Court's second opinion bearing on the parole approval process for life prisoners, the hotly-contested 4-3 decision of In re Dannenberg, (2005) 34 Cal.4th 1061, Cal.Rptr.3d 417, 104 P.3d 783... held Penal Code section 3041 subdivision (a).

Section 3041 subdivision (a) reads in relevant part:

"One year prior to the inmate's minimum eligible parole release date a panel of two or more commissioners or deputy commissioners shall again meet with the inmate and shall normally set a parole release date as provided in Section 3041.5. No more than one member of the panel shall be a deputy commissioner. In the event of a tie vote, the matter shall be referred for an en banc hearing by the Board. The release date shall be set in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the pubic, and that will comply with the sentencing rules that the Judicial Council may issue and any sentencing information relevant to the setting of parole release dates. The board shall establish criteria for the setting of parole release dates and in doing so shall consider the number of victims of the crime for which the inmate was sentenced and other factors in mitigation or aggravation of the crime."

[I]n stating the Board "shall normally set a parole release date", when a prisoner approaches [his or] her minimum parole eligibility release date did not mean generally or usually in most cases. Instead the Board can and should first consider under section 3041 subdivision (b) "whether a prisoner's commitment crime and/or other past crimes require a further delay in setting a release date because of public safety concerns." (In re Dannenberg, supra, 34 Cal.4th at pages 1087-1088, 23 Cal.Rptr.3d 417, 104 P.3d /83.)

Section 3041 subdivision (b) reads in relevant part:

"The panel or the board, sitting en banc, shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting."

12

The California Supreme Court has provided less guidance about the content of the "some evidence" test. It has, however, suggested the "some evidence" must tend to prove the existence of some factor which is relevant to the ultimate finding the statute requires before parole can be denied – release of the prisoner on parole would create an unreasonable risk to public safety. Citing to section 3041, subdivision (b), in Rosenkrantz our highest Court held "the governing statute provides that the Board must grant parole unless it determines that public safety requires a lengthier period of incarceration for the individual because of the gravity of the offense underlying the conviction." (In re Rosenkrantz, supra, 29 Cal.4th at page 654, 128 Cal.Rptr.2d 104, 59 P.3d 74 underline substituted for added italics). And in Dannenberg it held, "the Board may decline to [set fixed release dates] in an individual case if it concludes, on relevant grounds with support in the evidence, that the grant of a parole date is premature for reasons of public safety" (In re Dannenberg, supra, 34 Cal.4th at page 1071, 23 Cal.Rptr.3d 417, 104 P.3d 783, underline substituted for added italics). Later in the Dannenberg opinion, the court further explained, "if the circumstances of a particular murder persuade the Board that the prisoner who committed it is presently too dangerous to grant a fixed parole release date, the Board may deny parole without deciding when the inmate will be released..." (In re Dannenberg, supra, 34 Cal.4th at page 1080, 23 Cal.Rptr.3d 417, 104 P.3d 783, underline substituted for added italics). "'[T]he Legislature left a "consideration of the public safety" as the fundamental criterion in assessing suitability.'" (In re Dannenberg, supra, 34 Cal.4th at page 1080, 23 Cal.Rptr.3d 417, 104 P.3d 783, quoting In re Duarte, (1983) 143 Cal.App.3d 943, 948, 193 Cal.Rptr.2d 176, underline substituted for added italics.)

When evaluating whether a commitment offense alone can support such a finding, the Supreme Court has supplied some further guidance, focused largely on the nature of that offense. In Rosenkrantz, it explained, "a denial of parole based upon the nature of the offense alone might rise to the level of a due process violation – for example where no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense.... Therefore, a life term offense or any other offenses underlying an indeterminate sentence must be particularly egregious to justify the denial of a parole date.' [Citation.]." (In re Rosenkrantz, supra, 29 Cal.4th at page 683, 128 Cal.Rptr.2d 104, 59 P.3d 174, underline substituted for added italics.) In Dannenberg's, vigorously contested 4-3 decision, the four justice majority took the position the Rosenkrantz formulation, "including our use of the phrase 'particularly egregious,' conveyed only that the violence or viciousness of the inmate's crime must be more than minimally necessary to convict him of the offense for which he is confined." (In re Dannenberg, supra, 34 Cal.4th at page 1095, 23 Cal.Rptr.3d 417, 104 P.3d 783, italics omitted.)

13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

[1] Putting together the elements of the California "some evidence" due process test, the appellate court can uphold the Board or Governor's denial of parole if there is some evidence the prisoner's commitment offense was "more violent and vicious than minimally necessary to convict of that offense" such that it provides "relevant evidence" that "public safety requires a lengthier period of incarceration." (Lawrence, supra, 59 Cal.Rptr.3d at 552 underline substituted for italics in original).

Here, Petitioner's offense is an attempted murder in which no one was hurt or injured at all. Of the several other factors the Board relied on to deny parole, they were all part of the commitment offense. Petitioner's crime falls in the low end of the matrix further indicating that by the Board's own regulations his crime was not particularly egregious nor more than the minimum necessary to convict.

### B. Standard of Review Under Federal Due Process.

As noted above, the California Supreme Court expressly based the "some evidence" standard of review exclusively on the due process requirements of the California Constitution. Indeed, the Court observed, "[b]ecause we conclude as a matter of California law that the 'some evidence' standard of review is applicable to judicial review of a Board's decision denying parole, we have no occasion to determine whether the same standard is also mandated under federal constitutional principles." (In re Rosenkrantz, supra, 29 Cal.4th at page 658 footnote 12, 128 Cal.Rptr.2d 104, 59 P.3d 174.) Consequently, there is no California Supreme Court interpretation of the federal due process standard to bind this court when it evaluates a Board or Governor's denial of parole. As a result, we appropriately turn to the federal courts for their construction of the requirements imposed by federal due process when courts review parole decisions.

Both before and after the California Supreme Court's decision in Rosenkrantz, the federal courts in fact have found California's parole determination process also is subject to the U.S. Constitution's due process mandates. While those courts likewise have articulated a "some evidence" standard of review under the federal Constitution, they have provided more and in an important sense different guidance as to the meaning of that concept than is found in the only two California Supreme Court cases to discuss the issue thus far. As it turns out, some of that guidance has special relevance to this court's review of the Governor's reversal of Lawrence's parole in this case.

14

Two United States Supreme Court decisions, <u>Greenholtz v. Inmates of Nebraska Penal and Correctional Complex</u>, (1979) 442 U.S. 1, 12, 99 S.Ct. 2100, 60 L.Ed.2d 668, decided in 1979 and <u>Board of Pardons v. Allen</u>, (1987) 482 U.S. 369, 381 107 S.Ct. 2415, 96 L.Ed.2d 303 decided in 1987, held the federal due process clause creates a constitutional liberty interest for convicted persons in certain jurisdictions. The existence of this right depends on whether the state employs "mandatory language" indicating parole will be granted if certain findings are made. (<u>Board of Pardons v. Allen</u>, supra, 482 U.S. at pages 377-381, 107 S.Ct. 2415.) In 2002, the Ninth Circuit examined the California parole scheme in <u>McQuillin v. Duncan</u>, (9th Cir. 2002) 306 F.3d 895, and found it "uses mandatory language and is largely parallel to the schemes found in <u>Greenholtz</u> and <u>Allen</u>." (<u>McQuillion v. Duncan</u>, supra, 306 F.3d at page 901.) Accordingly, the <u>McQuillion</u> court found a "liberty interest" was created under the federal constitution for state prisoners in California. (<u>McQuillion v. Duncan</u>, supra, 306 F.3d at page 901.)

In 2003, a year after <u>McQuillion</u>, the Ninth Circuit poured some content into this federal constitutional right in the case of <u>Biggs v. Terhune</u>, (9th Cir. 2003) 334 F.3d 910. First, the court held the "liberty interest" protected under the federal constitution "is created, not upon the grant of a parole date, but upon the incarceration of the inmate." (<u>Biggs v. Terhune</u>, supra, 334 F.3d at page 915.) Thus, the liberty interest exists at the time the parole board or Governor determines whether the prisoner is too dangerous to consider setting a parole date. The <u>Biggs</u> court then explained, "In the parole context, the requirements of due process are satisfied if 'some evidence' supports the decision." (<u>Biggs v. Terhune</u>, supra, 334 F.3d at page 915.) But then the court went on to elaborate on the "some evidence" standard as it applies to parole denials based principally on the nature of the prisoner's commitment offense.

"To insure that a state-created parole scheme serves the public interest purposes of rehabilitation and deterrence, the Parole Board must be cognizant not only of the factors required by state statute to be considered, but also the concepts embodied in the Constitution requiring due process of law." [Citation]

"The Parole Board's decision is one of 'equity' and requires a careful balancing and assessment of the factors considered. [Citation] As in the present instance, the parole board's sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements set forth by state law. Over time, however, should Biggs continue to demonstrate behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of Biggs' offense and prior conduct would raise serious questions involving his liberty interest in parole."

15

"We must be ever cognizant that '[d]ue [p]rocess is not a mechanical instrument. It is not a yardstick. It is a process. It is a delicate process of adjustment inescapably involving the exercise of judgment by those whom the Constitution entrusted with the unfolding of the process.' [Citation.] <u>A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." (Biggs v. Terhune</u>, supra, 334 F.3d at pages 916-917, underline substituted for added italics.)

Although the <u>Biggs</u> court affirmed the Board's denial of parole at what was this prisoner's first parole hearing, conducted in 1999 for his 1985 murder conviction, this conviction arose out of the execution-style assassination of a witness scheduled to testify against an illegal enterprise where <u>Biggs</u> was employed. (<u>Biggs v. Terhune</u>, supra, 334 F.3d at page 912.) This was a comparatively early parole hearing (only 14 years after the prisoner's conviction) involving a type of murder demonstrating cold calculation, arising out of the prisoner's participation in ongoing criminal activity pursued with an economic motive, and striking at the heart of the justice system.  Nonetheless, the court issued the above warning suggesting even a murder of this nature although supplying "some evidence" of a continuing threat to "public safety" justifying a denial of parole at this first hearing, might not be enough evidence of that threat in subsequent parole proceedings.

Several federal district courts in decisions to be discussed later in this opinion have considered parole denials at later stages of prisoner's incarceration and applied the standard of review announced in <u>Biggs</u>.  In doing so, those courts frequently have found the nature of the commitment offense alone, essentially no matter how bad the circumstances of that offense, to be less than "some evidence" justifying a denial of parole to the prisoner involved, at least after 15 or more years of incarceration."  See cases discussed below.

Two subsequent Ninth Circuit opinions have reaffirmed the <u>Biggs</u> rationale, although both refused to order release of the petitioner and also suggested a limitation on federal courts when applying the <u>Biggs</u> standard when reviewing state court denials of relief.

The first of these, <u>Sass v. California Board of Prison Terms</u>, (9th Cir. 2006) 461 F.3d 123), was decided in August, 2006 considering an appeal from a district court decision. (<u>Sass v. California Board of Prison Terms</u>, (2005) 376 F.Supp.2d 975), denying relief to a prisoner.  The district court's denial was based principally on that court's finding the California Supreme Court's <u>Dannenberg</u> opinion meant California's parole scheme no longer created a due process liberty interest in release on parole. (<u>Sass v. California Board of Prison Terms</u>,

supra, 376 F.Supp.2d at pages 981-983.)   The Ninth Circuit
quickly reversed this part of the district court's rationale.

"The district court misread Dannenberg.  Dannenberg addressed
the narrow question whether the Board must engage in a
comparative analysis in setting parole release dates pursuant
to section 3041(a) before determining whether an inmate is
suitable for parole pursuant to section 3041(b).  [Citation.]...
[¶]  The California court did not hold that section 3041(b)
does not use mandatory language... Instead, the court proceeded
to the second step of the due process analysis - whether the
procedures attendant upon a deprivation were constitutionally
sufficient...  The court would not reach this step if it had
held that there was no liberty interest. [Citation.]  Dannenberg
doe not explicitly or implicitly hold that there is no
constitutionally protected liberty interest in parole."  (Sass
v. California Board of Prison Terms, supra, 461 F.3d at pages
1127-1128.)

The Ninth Circuit then turned to the second issue, whether
"some evidence" supported the Board's denial of parole at
hearings in 1999 and 2000.  - and the California courts'
refusals to grant relief from those denials.  Sass had been
convicted of second degree murder, gross vehicular manslaughter,
hit and run death, causing injury while driving under the
influence, and felony drunk driving in 1988. (Sass v. California
Board of Prison Terms, supra, 461 F.3d at page 1125.)  So the
denials under consideration by the Ninth Circuit occurred 11
and 12 years after the prisoner's conviction.  On this issue
of existence of "some evidence" justifying denial of parole,
one of the three judges dissented, but the majority upheld
the Board decisions and the California courts' refusal to
intervene. (Sass v. California Board of Prison Terms, supra,
461 F.3d at page 1129.)

Unfortunately for proper analysis of the court's rationale
on this second issue, the majority opinion is only brief and
conclusionary, while the dissent is lengthy and detailed.
Based primarily on revelations in the dissent, the apparent
reason the majority found "some evidence" supported the Board's
denial of parole was Sass's extensive drunk driving record
before the fatal crash.  He had seven prior DUI convictions
(and who knows how many undetected drunk driving incidents)
over several years." (Sass v. California Board of Prison Terms,
supra, 461 F.3d at page 1130, footnote 1 (dis. opn. of
Reinhardt. J.).  Where the dissenting judge and the majority
apparently differed was over the likelihood the prisoner would
return to drinking once released and thus represent a continuing
danger to public safety.  The dissent placed great weight on
Sass's efforts to cure his addiction to alcoholism and also
emphasized nothing in the future will reduce the risk of
relapse. (Sass v. California Board of Prison Terms, supra,
461 F.3d at page 1132), the very result the Biggs court found
would violate the prisoner's due process rights to parole.

17

The two judges in the majority tipped their hats to <u>Biggs v. Terhune</u> and did not purport to differ with its rationale. (<u>Sass v. California Board of Prison Terms</u>, supra, 461 F.3d at page 1129.) Yet, consistent with the conclusionary nature of their opinion the majority failed to distinguish <u>Biggs</u> or explain whether and when in the future the commitment offense and Sass's pre-commitment drunk driving would lose their predictive capacity and thus no longer provide "some evidence" in support of the denial of parole.

The even more recent Ninth Circuit opinion, <u>Irons v. Carey</u>, (9th Cir. 2007) 479 F.3d 658, was authored by the dissenting judge in <u>Sass</u>, yet also denied relief for the prisoner challenging the Board's denial of parole. The court reversed the district court decision which had found a lack of "some evidence" the prisoner's release would represent a present danger to the community. (In <u>Irons v. Warden of California State Prison – Solano</u>, (E.D.Cal.2005) 358 F.Supp.2d 936, 939 a district court judge in the Eastern District (J. Karlton) found a 17-year-old commitment offense insufficient as "some evidence" of the prisoner's continued dangerousness, even though it was coupled with some other pre-conviction criminality. Similar to Lawrence, Irons had both shot and stabbed the victim. (Id. at pages 940-941.) In March 1984, the prisoner and the victim were renting rooms in the same house and the landlords told Irons the victim had stolen some items from them. Irons went to the victim's room and an argument then ensued, with the victim denying the alleged thefts. Irons left and retrieved a rifle from his room. He fired 12 rounds into the victim and then told him he was going to let him bleed to death. Then he pulled out a knife and stabbed the victim twice in the back, rolled him up into a sleeping bag and locked the room. Ten days later he weighted the sleeping bag, drove the body to a deserted coastal area and threw it into the surf. In 2001, some 17 years after Irons's crime and conviction, the Board denied him a release date, a decision that after being upheld in the California state courts came before the federal courts on a habeas corpus petition. The Board's denial was based on a finding Irons had committed the murder in a calculated manner, demonstrated a callous disregard for human life, and for a trivial motive. Furthermore, at the time of the crime Irons was a drug user. (Id. at page 944.) The district court found these factors failed to supply "some evidence" of present dangerousness under the standard of review declared in <u>Biggs</u>, but made a somewhat different point than the judge in <u>Rosenkrantz</u>.

"[I]mportant... in assessing any due process violation is the fact that the continuous reliance on unchanging circumstances transforms an offense for which California law provides eligibility for parole into a de facto life imprisonment without the possibility of parole. The court asks rhetorically – what is it about the circumstances of petitioner's crime or motivation which are going to change? The answer is nothing. The circumstances of the crime will always be what they were,

18

and petitioner's motive for committing them will always be trivial... Given that no one seriously contends lack of seriousness or lack of triviality at the present time, the potential for parole in this case is remote to the point of non-existence. Petitioner's liberty interest should not be determined by such an arbitrary, remote possibility."    .

"In the instant case, the ⌊Board⌋ has apparently relied on these unchanging factors at least four prior times in finding petitioner unsuitable for parole. Petitioner has 'continue⌊d⌋ to "demonstrate exemplary behavior and evidence of rehabilitation."' ⌊Citation.⌋ Under these circumstances, the continued reliance on these factors at the 2001 hearing violated due process." (Id at page 947, footnote omitted).

But this Ninth Circuit opinion, unlike <u>Sass</u>, expressly embraced <u>Biggs</u> rationale and indeed emphasized its denial of relief was only for the time being - indeed predicated on the fact the prisoner had not yet served the minimum time for the offense he committed. (<u>Irons v. Carey</u>, supra, 479 F.3d at pages 664-665.)

The <u>Irons</u> court noted the narrow scope of review allowed federal courts in applying federal due process standards to a denial of parole. "Because <u>Irons</u> filed his petition after the AEDPA [Antiterrorism and Effective Death Penalty Act of 1996], his petition for habeas corpus may be granted only if he demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.' 28 U.S.C. § 2254(d)(1)." Thus, when it came down to determining whether the denial of parole to Irons violated federal due process, the Ninth Circuit felt compelled to invoke the general "some evidence" standard announced by the Supreme Court in <u>Superintendent v. Hill</u>, (1985) 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356), and ask only whether the state court "unreasonably applied" that standard. (<u>Irons v. Carey</u>, supra, 479 F.3d at page 664.)

The Ninth Circuit panel then responded to <u>Irons</u> argument invoking <u>Biggs v. Terhune</u>, for the proposition the Board could no longer rely on the "immutable factor" of his commitment offense to find him unsuitable for parole. Turning to <u>Sass</u>, the <u>Irons</u> court pointed out, "⌊a⌋lthough we acknowledged ⌊in <u>Sass</u>⌋ that <u>Biggs</u> represents the law of this circuit... we nonetheless held that the Board's reliance on the 'gravity' of the... murder..., in combination with prior incidents of unlawful conduct, provided a sufficient basis for the Board to deem <u>Sass</u> unsuitable for parole. Because the murder <u>Sass</u> committed was less callous and cruel than the one committed by <u>Irons</u>,... our decision in <u>Sass</u> precludes us from accepting Iron's [sic] due process argument...." <u>Irons v. Carey</u>, supra, 479 F.3d at pages 664-665.)

But after apparently "taking away" from the <u>Biggs</u> interpretation

19

1  of the federal "some evidence" test, the <u>Irons</u> court "gaveth
2  back" - adding further content to that standard of review,
   suggesting for how long in an inmate's imprisonment a Board
3  or Governor's sole reliance on the commitment offense (and
   pre-commitment behavior) may still satisfy due process. "We
4  note that in all the cases in which we have held that a parole
   board's decision to deem a prisoner unsuitable for parole solely
5  on the basis of his commitment offense comports with due
   process, the decision was made before the inmate had served
6  the <u>minimum number of years required by his sentence</u>.
   Specifically, in <u>Biggs</u>, <u>Sass</u>, and here, the petitioners had
7  not served the minimum number of years to which they had been
   sentenced at the time of the challenged parole denial by the
8  Board. [Citations.] All we held in those cases and all we
   hold today, therefore, is that, given the particular
9  circumstances of the offenses in these cases, due process was
   not violated when these prisoners were deemed unsuitable for
10 parole prior to the expiration of their minimum terms." <u>Irons</u>
   <u>v. Carey</u>, supra, 479 F.3d at page 665 underline substituted
11 for added italics)

12 Importantly, in the instant case, <u>HERNANDEZ v. CURRY</u>, C 07-5455 MMC

13 (PR), Petitioner, who was sentenced to 7 years to life for an offense

14 committed 12 years ago in 1996, has exceeded his minimum term by some 2

15 years (Note: Petitioner's life term did not start unit 1999, after he served

16 his determinate term).

17    [3] Combining the California and federal standards of review,
      as they have been articulated thus far by the California Supreme
18    Court and the Ninth Circuit, respectively, the commitment crime
      can lack the power to supply "some evidence" supporting a denial
19    of parole because of the interplay between two factors - the
      nature of that crime and the passage of time since its
20    commission. That is, the fact there is "some evidence" the
      crime was committed a certain way at a certain time does not
21    mean that crime necessarily represents "some evidence" the
      prisoner's release will pose an unreasonable risk of danger
22    to the public safety at the present time. Whether it possesses
      the necessary predictive value depends both on the nature of
23    the crime and how long ago it happened.

24 The following excerpt is taken from the Fist District Appellate Court

25 Decision <u>In re Barker</u>, 59 Cal.Rptr.3d 746 (Cal.App. 1 Dist. 2007).

26    The overarching consideration in determining whether to grant
      parole is public safety. (<u>In re Scott II</u>, (2005) 133 Cal.App.4th
27    573, 591, 34 Cal.Rptr.3d 905 (<u>Scott II</u>). That is, under the
      applicable "Penal Code section <u>3041</u>, the [Board] 'shall set
28    a release date unless it determines that the gravity of the

20

current convicted offense... is such that consideration of the public safety requires a more lengthy period of incarceration for this individual...'

Review of a decision to deny parole by the Parole Board is under the deferential "some evidence" standard. (In re Rosenkrantz, (2002) 29 Cal.4th 616, 658, In re Elkins, 144 Cal.App.4th 475, 488 ["Court review of the ... is governed by a deferential 'some evidence' standard designed to ensure minimum procedural due process protection."].)

Prisoners possess a protected liberty interest in connection with parole decisions rendered by the Board of Parole Hearings, and imposition of a standard of review less stringent than the "some evidence" test would permit the Board to render a decision without any basis in fact, which would be arbitrary and capricious (Rosenkrantz, supra, (2002) 29 Cal.4th at p. 677), thereby depriving the prisoner of due process of law. (U.S.C.A. Const.Amend. 14

Only a modicum of evidence is required to satisfy the "some evidence" standard necessary to support a decision to deny parole (Rosenkrantz, supra, (2002) 29 Cal.4th at p. 677); However, that evidence must have some indicia of reliability (In re Scott I, (2005) 119 Cal.App.4th 871,899), and suitability determinations must have some rational basis in fact. (In re Elkins, supra, 144 Cal.App.4th at 489).

The test in reviewing a decision by the Board to deny parole is not whether some evidence supports the reasons cited for denying parole, but whether some evidence indicates a parolee's release unreasonably endangers public safety; some evidence of the existence of a particular factor does not necessarily equate to some evidence the parolee's release unreasonably endangers public safety. (In re Lee, (2006) 143 Cal.App.4th 1400, 1408).

Perhaps more relevant to the case before this court is the most recent Ninth Circuit ruling in HAYWARD v. MARSHALL, 512 F.3d 536 (9th Cir. 2008) upholding the determinations made in the state courts in regards to the "some evidence" test and what constitutes "some evidence".

California courts have made clear that the "findings necessary to deem a prisoner unsuitable for parole," Irons, 505 F.3d at 850, are not that a particular factor or factors exist, but that a prisoner's release will unreasonably endanger public safety. (In re Dannenberg, 156 Cal.App.4th at 1400, 68 Cal.Rptr.3d at 198 (Cal.Ct.App. Nov. 16, 2007), modified, 2007 WL 4227229, --- Cal.Ct.App. ---, --- Cal.Rptr.3d --- (Cal.Ct.App. Dec. 3 2007); In re Lee, 143 Cal.App.4th 1400, 1408, 49 Cal.Rptr.3d 931 (Cal.Ct.App. 2006); In re Scott, 133

21

Cal.App.4th 573, 595, 34 Cal.Rptr.3d 905 (Cal.Ct.App.2005); see Cal.Penal Code § 3041(b) (providing that the Board "shall set a release date unless... consideration of the public safety requires a more lengthy period of incarceration for this individual"). For our purposes then, "[t]he test is not whether some evidence supports the reasons cited for denying parole, but whether some evidence indicates a parolee's release unreasonably endangers public safety; some evidence of the existence of a particular factor does not necessarily equate to some evidence the parolee's release unreasonably endangers public safety. (In re Lee, (2006) 143 Cal.App.4th 1400, 1408, 49 Cal.Rptr.3d 931 (citations and footnote omitted); see also In re Elkins, 144 Cal.App.4th 475, 499, 50 Cal.Rptr.3d 503 (Cal.Ct.App.2006) (holding that the "governor, in reviewing a suitability determination, must remain focused... on facts indicating that release currently poses 'an unreasonable risk of danger to society'" (citing Cal.Code Regs. tit. 15, § 2402(a))); Scott, 133 Cal.App.4th at 591, 34 Cal.Rptr.3d 905 ("The factor statutorily required to be considered, and the overarching consideration, is 'public safety.'" (citing Cal.Penal Code § 3041(b))).

In the instant case, the Board's reliance on the circumstances to deny parole violates Petitioner's due process rights as circumstances were not more aggravated or violent than the minimum necessary to sustain his conviction. (U.S.C.A. Const.Amend. 14; In re Rosenkrantz, (2002) 29 Cal.4th 616; West's Ann.Cal.Penal Code § 3041; CCR § 2402). See also: In re Weider, 52 Cal.Rptr.3d 147 (Cal.App. 6 Dist. 2007), In re Rosenkrantz, 80 Cal.App.4th 409, Irons v. Carey, (9th Cir. 2007) 479 F.3d 658, Biggs v. Terhune, (2003) 334 F.3d 910; McQuillion v. Duncan, (2001) 306 F.3d 901, 904; Jancsek v. Bd. of Pardons, 844 F.2d 1390 (adopting the "some evidence standard set forth by the Supreme Court in Superintendent v. Hill, (1985) 472 U.S. 445, 457, 105 S.Ct. 2768, 86 L.Ed.2d 356; see also Caswell v. Calderon, 363 F.3d 832, 839 (9th Cir. 2004); Greenholtz v. Nebraska Penal Inmates, (1979) 442 U.S. 1; Dunn v. Parole Comn., (10th Cir. 1978) 818 F.2d 742; Penal Code § 3041(a).

1. **STATE LAW REQUIRES MORE THAN THE FEDERAL CONSTITUTION DOES ON ITS OWN FORCE WITH RESPECT TO PAROLE DECISIONS IN CALIFORNIA.**

When is a determination by the Board finding a prisoner unsuitable,

22

1  and a state court's decision upholding that determination, an unreasonable
2  application of clearly established federal law?

3      A decision by the Board denying parole may be "otherwise arbitrary"
4  even if supported by some evidence.  Although federal law establishes the
5  "some evidence" standard, case law applying the highest court's decisions
6  informs us of what that evidence may consist and to what it must pertain.
7  If a state court decides the board's decision denying parole is supported
8  by "some evidence" but disregards evidence that the decision was "otherwise
9  arbitrary" as informed by case law, such application constitutes an
10  unreasonable application under <u>Greenholtz</u>, <u>Allen</u>, and <u>Hill</u>, the state court
11  decision must be reversed under the AEDPA and the petition granted.

12      <u>In re Dannenberg</u>, (2005) 34 Cal.4th 1061, is often cited in support
13  of the proposition that under that decision California prisoners have no
14  liberty interest and that the commission of the offense alone is sufficient
15  to deny parole for as long as the board wishes.  However, <u>Dannenberg</u>'s
16  holding only addressed the narrow question whether the Board must engage
17  in a comparative proportionality analysis in setting parole dates pursuant
18  to <u>Penal Code § 3041, subd. (a)</u>, and held that "[n]othing in the statute
19  states or suggests that the Board must evaluate the case under standards
20  of uniformity before exercising its authority to deny a parole date on
21  the grounds the particular offender's criminality presents a continuing
22  public danger." (Id at 1070)

23      <u>Dannenberg</u> also explained that California prisoners have "a liberty
24  interest and expectation to the extent that state law provides it." (Id
25  at 1098 n. 18)  The extent to which prisoners in California have a liberty
26  interest has previously been discussed by the California Supreme Court
27  in <u>In re Rosenkrantz</u>, (2002) 29 Cal.4th 616, setting forth principles at
28  p. 683. <u>Rosenkrantz</u> was not overruled. (<u>Dannenberg</u>, 34 Cal.4th at 1084

23

1    ["our conclusion does not contravene Rosenkrantz," 29 Cal.4th 616.]  Post

2    Dannenberg state courts continue to follow Rosenkrantz.

3          One principle was explained by Justice Moreno in Rosenkrantz in his

4    separate concurring opinion:

5              [t]here will come a point, which already may have arrived,
             when petitioner would have become eligible for parole if he
6              had been convicted of first-degree murder.  Once petitioner
             reaches that point, it is appropriate to consider whether his
7              offense would still be considered especially egregious for
             a first-degree murder in order to promote the parole statute's
8              goal of proportionality between the length of the sentence
             and the seriousness of the offense. (Id at 690.)

9

10         Justice Moreno explained that it would be appropriate at that point,

11   for judicial reappraisal of the Board's decision.  As Petitioner has now

12   served an amount of time commensurate with a conviction for a more severe

13   offense (i.e., murder), this principle applies.

14        **2.   APPLICATION OF THE "OTHERWISE ARBITRARY" PORTION OF THE
         SOME EVIDENCE STANDARD, AND EXTENT OF THE LIBERTY INTEREST.**

15

16         On June 26, 2006, the Los Angeles Superior Court reappraised and

17   reversed the Board's decision denying Robert Rosenkrantz parole. (In re

18   Rosenkrantz,, Los Angeles Superior Court, Case No. BH003529)  The Court

19   of Appeal subsequently refused to stay the decision, July 31, 2006, and

20   on August 3, 2006, the California Supreme Court summarily denied the state's

21   petition for review.  Significantly, the Superior Court cited Biggs and

22   Irons v. Warden, (E.D.Cal. 2005) 358 F.Supp.2d 936, as stating the

23   applicable legal principles and standard first stated by Justice Moreno.

24         Thus, the oft-cited idea that the commitment offense and past convicted

25   offenses alone are sufficient to deny parole forever has been rejected

26   by the California Supreme Court as demonstrated by current state court

27   decisions. In short:

28         Yet, the predictive value of the commitment offense may be

                                    24

1
2
3
4
5
6

> very questionable after a long period of time... The Governor's assumption that a prisoner may be deemed unsuitable for release on the basis of the commitment offense is correct, but the proposition must be properly understood. The commitment offense is one of only two factors indicative of unsuitability a prisoner cannot change (the other being his Previous Record of Violence). Reliance on such an immutable factor without regard to or consideration of subsequent circumstances may be unfair. (In re Scott, (2005) 34 Cal.Rptr.3d 905, 919-920, quoting Irons v. Warden (E.D.Cal. 2005) 358 F.Supp.2d 936, 947).

7  The California Supreme Court has previously advised, even where the

8  passage of time is not a factor and the assessment made by an expert,

9  predictions of future dangerousness are exceedingly unreliable. (People

10  v. Murtishaw, (9181) 29 Cal.2d 733, 768). If such predications are

11  exceeding unreliable then they are an unreasonable basis for making a public

12  safety threat assessment.

13  Application of the principle is exemplified by the recent Superior

14  Court decision in Rosenkrantz, a well-known saga ending with the California

15  Supreme Court's denial of review and the subsequent release of Robert

16  Rosenkrantz. It demonstrates the practical application of the "otherwise

17  arbitrary" portion of the "some evidence" rule and also informs what the

18  extent of the liberty interest is, even in a case such as Rosenkrantz where

19  the circumstances of the offense were arguably more egregious than the

20  typical second-degree murder. Rosenkrantz bought an Uzi, practiced with

21  it, waited outside the victim's house all night and when he came out in

22  the morning, shot him ten times, some five of the shots after the victim

23  lay on the ground mortally wounded, and then bragged about it and posed

24  with the Uzi. Given the decision in this case, it is clear that use of

25  the offense as "some evidence" to deny parole has outer limits.

26  In another affirmative statement of what state law requires the

27  California Supreme Court recently remanded a case to the Court of Appeal

28  with direction to address specific issues. The Court of Appeal was

25

1  instructed to vacate its summary denial and to issue an order to show cause

2  why the Governor did not abuse his discretion in reversing the Board's

3  finding that the Petitioner was suitable for parole, why "some evidence"

4  in the record supported the determination, and why the Petitioner was not

5  entitled to release on parole. In re Wen Lee, (2006) 143 Cal.App.4th 1400,

6  the Court of Appeal, ordering the Petitioner released explained:

7      [T]he test is not whether some evidence supports the reasons
       the Governor cites for denying parole, but whether some evidence
8      indicates a parolee's release unreasonably endangers public
       safety. (Id at 1408) (Underline substituted for added italics)

9

10  Similarly, in yet another case, the court explained that continued

11  reliance on aggravating facts of the crime violated due process and no

12  longer amounted to "some evidence" supporting denial of parole. In re

13  Jeffrey David Elkins, (2006) 144 Cal.App.4th 475. Like the Superior Court

14  in Rosenkrantz, Elkins cited Irons v. Warden (E.D.Cal. 2005) 358 F.Supp.2d

15  936 (app. pending sub nom.) Irons v. Carry, (9th Cir. 2005) 408 F.3d 1165,

16  No. 05-15275).

17  Many federal courts have also found Biggs to correctly apply Supreme

18  Court law; e.g., Rosenkrantz v. Marshall (C.D.Cal.2006) 444 F.Supp.2d 1063

19  [Nobody elected the BPT commissioners as sentencing judges.]; Martin v.

20  Marshall, (N.D.Cal.2006) 431 F.Supp.2d 1038 [the Board has capitulated

21  to the no-parole policy, denial of parole under California Governor's no

22  parole policy for murderers denied inmate his due process right to be heard

23  by an impartial decision-maker] (citing Coleman v. Board of Prison Terms,

24  No. 96-0783 LKK PAN (E.D.Cal.2005); Sanchez v. Kane, (C.D.Cal.2006) 444

25  F.Supp.2d 1049.

26  It is clear that both state and federal courts agree with Biggs an

27  the United States Supreme Court principles Biggs relied on, Morrissey v.

28  Brewer, 408 U.S. 471 (1972), Greenholtz, Allen, Hill, and Lankford v. Idaho,

26

1   500 U.S. 110 (1991) (quoting <u>Joint Anti-Fascist Refugee Comm. v. McGrath</u>,

2   341 U.S. 123 (9151). As the Supreme Court explained:

3       ...rules of law may be sufficiently clear for habeas corpus
        purposes even when they are expressed in terms of a generalized
4       standard rather than as a bright-line rule. (<u>Williams v. Taylor</u>,
        529 U.S. 362, 382 (2000)).

5

6       As Petitioner argued in his state petitions and the instant petition,

7   the Board found, and the state courts upheld, the determination that based

8   on the circumstances of the life crime and related offenses, limited self-

9   help programming, a 10-year old disciplinary, and need for therapy, there

10  was "some evidence" that Petitioner was unsuitable for parole.

11      However, the psychological evaluation prepared for the board indicates

12  that Petitioner is <u>currently</u> no more risk of threat to public safety than

13  the average citizen.  Furthermore, there is not a modicum or scintilla

14  of evidence in the record that provides a nexus between the circumstances

15  of Petitioner's conviction and his present rehabilitative state that

16  indicates he is <u>currently</u> an <u>unreasonable</u> risk of threat to public safety.

17      Stated another way, the Board did not point to one thing that indicated

18  Petitioner is <u>currently</u> an <u>unreasonable</u> risk of threat to public safety.

19  <u>Rosenkrantz v. Marshall</u> held:

20      Second, in this case, the circumstances of Petitioner's crime
        do not amount to some evidence supporting the conclusion that
21      Petitioner poses an unreasonable risk of danger if released.
        As discussed ante, "in the parole context, the requirements
22      of due process are met if some evidence supports the decision."
        Significantly, the evidence underlying the decision must be
23      supported by "some indicia of reliability." <u>Biggs</u>, 334 F.3d
        at 914 (internal quotations omitted); <u>Caswell</u>, 363 F.3d at
24      839; see <u>Hill</u>, 472 U.S. at 455-456.  Otherwise it does not
        constitute "some evidence."  See <u>Gerald L. Neuman, The</u>
25      <u>Constitutional Requirement of Some Evidence, San Diego L.Rev.</u>
        631, 663-664 (1988) (noting that "[e]vidence that the respondent
26      was alive at the time in question is usually relevant to any
        charge against her.  The [due process] protection of 'some
27      evidence' requirement demands more than that - less than legal
        'sufficiency' of evidence, but more than a trivial charade.").
28      <u>Rosenkrantz</u>, 444 F.Supp.2d at 1083-1084)

                                27

1    While only Supreme Court precedent is controlling under the AEDPA,

2   other case law is persuasive authority for purposes of determining whether

3   a particular state court decision is an unreasonable application of Supreme

4   Court law. (Vlasak v. Superior Court of California ex rel. County of Los

5   Angeles, 329 F.3d 683, 687 (9th Cir. 2003) (quoting Luna v. Cambra, 306

6   F.3d 954, 960 (9th Cir. 2002) (Internal quotation marks and citations

7   omitted), amended 311 F.3d 928 (9th Cir. 2002)); see Bruce v. Terhune,

8   376 F.3d 950, 956 (9th Cir. 2004) ("Although only the Supreme Court's

9   precedents are binding on state courts under AEDPA, our precedents may

10  provide guidance as we review state court determinations.")

11    The following series of recent state and federal court rulings clarify

12  how and why reliance upon circumstances of more than a decade of years

13  past to predict present dangerousness amounts to a due process violation

14  (Please note: represented herein are 3 of the U.S. Districts of California

15  as well as the Ninth Circuit and the U.S. Supreme Court and 3 State

16  Appellate Courts and the California Supreme Court). It is also of paramount

17  importance to note that Petitioner is not convicted of murder and that

18  no one was injured in his offense.

19      While relying upon petitioner's crime as an indicator of his
        dangerousness may be reasonable for some period of time, in
20      this case, continued reliance of such unchanging circumstances
        - after nearly two decades of incarceration and half a dozen
21      parole suitability hearings [for a murderer] - violates due
        process because petitioner's commitment offense has become
22      such an unreliable predictor of his present and future
        dangerousness that it does not satisfy the "some evidence"
23      standard. (Rosenkrantz, supra, 334 F.3d at 1084.)

24      After nearly twenty years of rehabilitation, the ability to
        predict a prisoner's future dangerousness based simply on the
25      circumstances of his or her crime is nil. See Johnson v. Finn,
        2006 WL 195159 *8 n. 3 (E.D.Cal.2006) (stating that "the
26      seriousness of the crime had predictive value for the
        dangerousness of petitioner's release for the petitioner's
27      release for the first, second, perhaps third suitability hearing
        [for a murderer]. But as the years go by, this factor loses
28      its predictive value in light of the growing experience to

28

1    the contrary (assuming petitioner's record in prison is
     exemplary); Irons, 358 F.Supp.2d at 947 n. 2 ("To a point,
2    it is true, the circumstances of the crime and the motivation
     for it may indicate a Petitioner's instability, cruelty,
3    impulsiveness, violent tendencies and the like. However, after
     fifteen or so years in the caldron of prison life, not exactly
4    an ideal therapeutic environment to say the least, and after
     repeated demonstrations that despite the recognized hardships
5    of prison, this petitioner does not possess those attributes,
     the predictive ability of the circumstances of the crime is
6    near zero.") (Id)

7    Even the California courts have said as much. Shaputis, 135
     Cal.App.4th at 231-232, 37 Cal.Rptr.3d 324 ("The only evidence
8    before the BPT was that [the inmate] had more than a decade
     of demonstrated commitment to remaining sober, and there was
9    not a scintilla of violence in his nearly two decades of
     incarceration. Accordingly, the BPT's conclusion the inmate
10   remained a danger to society, to the extent it was premised
     on a former lifestyle that all of the evidence showed was a
11   historical relic, is so lacking in any medical, psychological
     or behavioral evidentiary support that it is arbitrary and
12   capricious within the deferential standards...") (Id at 1084)

13   Scott, 133 Cal.App.4th at 595, 34 Cal.Rptr.3d 905 ("The
     commitment offense can negate suitability only if circumstances
14   of the crime reliably established by evidence in the record
     rationally indicate that the offender will present an
15   unreasonable public safety risk if released from prison. Yet,
     the predictive value of the commitment offense may be very
16   questionable after a long period of time.") (Id at 1085)

17   Petitioner's case is exactly what Biggs envisioned when it
     stated that repeated refusals to grant a parole release date
18   to an inmate with an exemplary post-conviction record may
     violate the prisoner's due process rights. Biggs, 334 F.3d
19   at 913. (Id at 1086)

20   The evidence of Petitioner's outstanding performance while
     incarcerated is particularly significant. As the Supreme Court
21   has recognized, "[t]he behavior of an inmate during commitment
     is critical in the same sense that it reflects the degree to
22   which the inmate is prepared to adjust to parole release"
     Greenholtz, 442 U.S. at 15, 99 S.Ct. 2100. (Id)
23

24        It is important to note at this juncture that Respondent's reference

25   to "Hernandez's limited self-help programming" (Answer p. 9:3), is an

26   absolute contradiction of the record. In the hearing transcripts (Answer,

27   Exhibit 2), beginning at page 37 through and including page 41, the Board

28   recites a long and distinguished record of accomplishments:

                                    29

1997-98 Completion of Anger Management Class
1997-98 Completion of Success After Parole Program
January 1999 Vocational Certificate - Small Engine Repair
May of 1999 Laudatory Chrono - Vocational Assignment
October 1999 Laudatory Chrono - Work Assignment
July 2000 Laudatory Chrono - Work Assignment
March 2002 Certificate of Completion - Clerk Training
September 2004 Laudatory Chrono - Work Assignment
August 2005 Laudatory Chrono - Work Assignment
September 2005 - Completion of 12 week Christian Basic class.
December 2005 Laudatory Chrono - Work Assignment
January 2006 Laudatory Chrono - Work Assignment

The various court rulings on "some evidence" is continued:

Regardless of whether the BPT ever was entitled to rely upon the commitment offense to find that this particular petitioner posed an unreasonable risk of danger and was unsuitable for parole, under these unusual circumstances, the BPT's continued reliance of the commitment offense violates due process because it resulted in an arbitrary decision because the facts surrounding the offense do not now constitute "some evidence" with "some indicia of reliability" of petitioner's dangerousness. See Hill, 472 U.S. at 455, 105 S.Ct. 2768; Biggs, 334 F.3d at 917; Irons, 358 F.Supp.2d at 947. (Rosenkrantz, supra, 334 F.3d at 1086)

Masoner v. State, 2004 WL 1080177 *1-2 (C.D.Cal.2004) ("Although the gravity of the commitment offense and other pre-conviction factors alone may be sufficient to justify denial of a parole date at a prisoner's initial hearing [for a murderer], subsequent BPT decisions to deny a parole date must be supported by some post-conviction evidence that the release of an inmate is against the interest of public safety. Masoner's successful rehabilitation and spotless prison record, in combination with his having served 21 years and the type of crime usually associated with such a sentence under the Universal Terms Matrix indicate that there is no legitimate post-conviction justification for the BPT's repeated refusal to grant him a parole date.") (Id)

Johnson, 2006 WL 195159 at *8 ("The characterization of Petitioner's crime as an execution style murder is accurate. However, as discussed above, the 2001 hearing was Petitioner's twelfth suitability hearing. It had been 24 years since petitioner committed the murder. As found by the 2001 hearing panel, petitioner had done everything he could in prison to better himself. Under these circumstances, the nature of the offense had lost any predictive value and the continued reliance upon it to find petitioner unsuitable violated due process. Accordingly, the court find that this factor was not supported by "some evidence") (Id at 1086-87)

Because there is no reliable evidence supporting the BPT's

30

1    conclusion that petitioner is unsuitable for parole, that
     determination violates due process. See Hill, 472 U.S. at
2    455, 105 S.Ct. 2768. (Id at 1087)

3    The state court's determination to the contrary was based upon
     an unreasonable determination of the facts in light of the
4    evidence presented during the parole hearing and amounted to
     an unreasonable application of clearly established Supreme
5    Court precedent. See Hill, 472 U.S. at 455, 105 S.Ct. 2768;
     Taylor v. Maddox, 366 F.3d 992, 999-1000 (9th Cir.) cert.
6    denied, 543 U.S. 1038, 125 S.Ct. 809, 160 L.Ed.2d 605 (2004).
     (id)
7
     Accordingly, petitioner is entitled to relief. Irons, 358
8    F.Supp.2d at 947-951 (granting habeas relief where the BPT
     improperly relied upon the unchanging circumstances of the
9    commitment offense in finding petitioner unsuitable for parole
     in his fifth parole suitability hearing, and also asserted
10   that Petitioner needed more therapy, a conclusion that lacked
     any support in the record. (Id)
11
     Saif 'Ullah, 2005 WL 1555389 at *13-16 (granting relief where
12   the record contained no evidence supporting the BPT's decision
     that petitioner was a danger to society and unsuitable for
13   parole based on (a) his commitment offense, (b) his prior
     criminal history, and (c) a rules violation which resulted
14   when, based upon his religious beliefs, petitioner refused
     to cut his hair). (Id)
15

16       As in each of the cases listed above, the question is not whether or

17   not there is "some evidence" supporting the board's reliance on the

18   circumstances of the offense, but rather whether there is "some evidence

19   bearing an indicia of reliability" that the circumstances cited by the

20   Board reliably indicate that Petitioner is a Current, Unreasonable Threat

21   to Public Safety.

22       At issue in the instant petition is that the Board relied upon disputed

23   facts in its determination and not relevant, reliable information.

24   Additionally, as in 99% of all parole hearings, the Board merely

25   contradicted the "facts" they read into the record in the DECISION phase

26   in a make-weight fashion in order to give their final assessment the

27   appearance of validity.

28       Specifically, the Board complemented Petitioner on his discipline record

                                    31

1  and then used it as a reason for denial. Likewise, the Board acknowledged

2  Petitioner's positive program and numerous achievements and then claimed

3  he had limited programming without stating what sort of programming (and

4  how much of it) they need to see before ruling it is enough of the right

5  kind. They did acknowledge that Petitioner is also on waiting lists to

6  do more programming and that they know it is not readily available.

7                              **CONCLUSION**

8     Petitioner has presented several 'colorable claims' addressing

9  violations of Constitutional Due Process protections:

10  1. The unchanging circumstances of the offense and prior conduct do not
       amount to "some evidence bearing an indicia of reliability" that he
11      is currently an unreasonable risk to public safety.

12  2. He belongs to a class of prisoners which the state and federal courts
       have ruled were victims of a blanket sub rosa No Parole Policy.

13  3. Because he has been denied an Evidentiary Hearing by the state courts
       their decisions were an unreasonable determination of the facts in
       light of the evidence presented.

14

15     The issues involved in this case are complex. Too complex for a pro

16  per litigant to address adequately. Based upon recent Ninth Circuit

17  findings (upheld by the U.S. Supreme Court), AGYEMAN v. Corrections Corp.

18  of America, (9th Cir. 2004) 390 F.3d 1101 and BAJA v. DUCHARME, (9th Cir.

19  1999) 187 F.3d 1075, cert. denied 528 U.S. 1079 (2000), appointment of

20  counsel is warranted in this case.

21     Petitioner therefore respectfully prays this Honorable Court will ignore

22  Respondent's request to deny his petition, appoint counsel, order an

23  evidentiary hearing, and ultimately grant him the relief to which he is

24  entitled, i.e., a ruling that there is no reliable evidence that he is

25  unsuitable for parole and therefor he should be released from custody

26  forthwith.

27     Respectfully submitted this 27 day of July, 2008.

28  JESSE HERANANDEZ
    Petitioner in pro per

                              32

7/27/08

gal Mail

Legal Mail

Legal Mail

JESSE HERNANDEZ                    K-21116
P.O. BOX 689                       G-W334U
SOLEDAD, CALIF                     93960-0689

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
450 GOLDEN GATE AVENUE
SAN FRANCISCO, CALIF   94102-3483


